## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) JOHN R. SHOTTON, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) |
| (2) HOWARD F. PITKIN, in his individual and official capacity as the former Commissioner of the Department of Banking; and | ) ) ) ) |
| | ) Civil Action No. __CIV-15-241-L__ |
| (3) BRUCE ADAMS, in his individual and official capacity as Acting Commissioner of the Department of Banking, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

## **COMPLAINT**

Plaintiff John R. Shotton requests judgment in his favor against Defendants Howard F. Pitkin and Bruce Adams for money damages and declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983. In support of these claims, Plaintiff states the following:

### NATURE OF ACTION, JURISDICTION, AND VENUE

1. This is a civil action under 42 U.S.C. §1983 seeking damages and declaratory and injunctive relief against Defendants for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States.

2. This Court has jurisdiction over Plaintiff's claims in accordance with 28 U.S.C. §§1331 and 1343. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§2201 and 2202, 42 U.S.C. §1983, and Fed.R.Civ.P. 57.

3. Plaintiff brings this action as a result of unlawful enforcement actions taken by Defendants against Plaintiff and Defendants' entry of a state administrative order imposing a civil penalty of $700,000 against Plaintiff in his individual capacity and unlawfully restraining his conduct without due process of law and in violation of his individual right to immunity as a tribal official.

4. Venue is appropriate in this District in accordance with 28 U.S.C. §1391(b)(2), as this District is the District in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

## PARTIES

5. John R. Shotton ("Plaintiff" or "Chairman Shotton") is the duly elected Chairman of the Tribal Council of the Otoe-Missouria Tribe of Indians, a federally recognized Indian tribe headquartered in Red Rock, Oklahoma. He has served in this capacity since 2007. In addition, pursuant to the Tribal law and authorization of the Tribal Council, Plaintiff serves as the Secretary and Treasurer of Great Plains Lending, LLC, a limited liability company wholly owned and operated by, and formed and regulated under the laws of, the Otoe-Missouria Tribe; and is Secretary and Treasurer of Clear Creek Lending, a d/b/a of American Web Loan, Inc., a corporation wholly owned and operated by, and formed and regulated under the laws of, the Otoe-Missouria Tribe.

Plaintiff was appointed to these corporate positions by the Tribal Council pursuant to applicable Tribal law. Both Great Plains Lending and Clear Creek Lending have their principal place of business in Red Rock, Oklahoma. Plaintiff served in his official capacity as Chairman of the Tribe and Secretary and Treasurer of Great Plains and Clear Creek at all relevant times. He resides within the State of Oklahoma and his personal assets are located in that state.

6.  Defendant Howard F. Pitkin is the former Commissioner of the Connecticut Department of Banking and served as Presiding Officer in certain contested cases at the department level, including the actions taken against Plaintiff. He held those positions until his retirement in January, 2015. At all relevant times, Defendant exercised control over the administrative action against Plaintiff.

7.  Defendant Bruce Adams is the Acting Commissioner of the Connecticut Department of Banking and serves as Presiding Officer in certain contested cases at the departmental level. At all relevant times, Defendant Adams has been personally involved in the matter wrongfully brought against Plaintiff.

8.  At all relevant times, Defendants acted under color of state law. Pursuant to Connecticut statutory authority, Defendants sought to impose monetary and equitable penalties against Plaintiff, but without jurisdiction or affording due process, in violation of Plaintiff's constitutional rights.

## FACTUAL ALLEGATIONS

### A.  Tribal Sovereignty and Sovereign Immunity

9. Indian tribes are self-governing entities which have existed in North America since before European contact and they exercise inherent sovereignty.

10. Tribal sovereignty, though inherent, is still subject to defeasance at the hands of Congress, as Congress exercises plenary power over Indian affairs. *See* U.S. Const., Art. I, §8, cl. 2; *United States v. Kagama*, 118 U.S. 375 (1886). However, it is Congress alone that has the ability to diminish tribal sovereignty in any capacity. Unless authorized by Congress, state government agencies have no authority to invade the sovereignty of an Indian tribe by unilaterally imposing their laws upon the tribe. *See* Pub.L. 83-280, codified in part at 18 U.S.C. §1162 (congressional authorization for certain states to exercise criminal jurisdiction in Indian country).

11. Among the "core aspects" of tribal sovereignty is immunity from suit. *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2030 (2014). Like all aspects of tribal sovereignty, immunity is subject to congressional action, meaning that Congress has the ability to abrogate tribal sovereign immunity, but until Congress takes action to do so, that immunity remains intact.

12. Tribal sovereign immunity extends to a tribe's commercial activities, whether those activities take place on or off reservation. *Kiowa Tribe of Okla. v. Mfg. Techs.*, 523 U.S. 751 (1990). It further extends to tribal officers acting in their official capacity. *Fletcher v. U.S.*, 116 F.3d 1315, 1324 (10th Cir. 1997).

13. Tribal sovereignty also extends to state enforcement actions. *See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991) (rejecting a state tax enforcement action); *Cash Advance & Preferred Case Loans v. State*, 242 P.3d 1099,

1103 (Col. 2010) (tribal sovereignty precluded enforcement of a state attempt to enforce administrative orders and investigatory subpoenas against a tribal lending entity).

14. "It is clear that a plaintiff generally may not avoid the operation of tribal immunity by suing tribal officials; 'the interest in preserving the inherent right of self-government in Indian tribes is equally strong when suit is brought against individual officers of the tribal organization as when brought against the tribe itself.' *Nero v. Cherokee Nation of Okla.,* 892 F.2d 1457, 1462 (10th Cir.1989) (citation and quotation marks omitted). Accordingly, a tribe's immunity generally immunizes tribal officials from claims made against them in their official capacities." *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296 (10th Cir. 2008), citing *Fletcher v. United States,* 116 F.3d 1315, 1324 (10th Cir.1997).

### B. The Tribe's Wholly-Owned Businesses

15. On February 10, 2010, pursuant to its authority under the Tribe's Constitution and the Otoe-Missouria Tribe of Indians Corporation Act, the Otoe-Missouria Tribal Council enacted Tribal law through Resolution OMTC #210561, creating American Web Loan, Inc. as a wholly owned corporate entity of the Tribe and arm of the Tribe, which does business as Clear Creek Lending.

16. On May 4, 2011, pursuant to its authority under the Tribe's Constitution and the Otoe-Missouria Tribe of Indians Limited Liability Compact Act, the Otoe-Missouria Tribal Council passed Resolution OMTC #54293, creating Great Plains Lending, LLC as a wholly owned corporate entity of the Tribe and arm of the Tribe.

17. As their primary business activity, Great Plains and Clear Creek offer small-dollar loans over the internet to certain consumers who meet the businesses' underwriting criteria.

18. To ensure that any lending activities conducted by the Tribe are properly authorized and regulated under the Tribe's laws, the Tribe enacted the Otoe-Missouria Consumer Finance Services Regulatory Ordinance ("Ordinance"), which vests proper oversight and jurisdiction for the Tribe's lending activities in the Otoe-Missouria Consumer Finance Services Regulatory Commission ("Commission"). The Commission is the governmental regulatory entity responsible for the enforcement of the Tribe's laws, including adherence to applicable federal consumer protection laws.

19. The Commission enforces the Ordinance through proper oversight and enforcement mechanisms authorized under Tribal law.

20. Both Great Plains and Clear Creek were formed as arms of the Tribe and were established to further the Tribe's interest in self-sufficiency, a goal that Congress has formally codified as federal policy. *See* 25 U.S.C. §4301(a)(6) ("[T]he United States has an obligation to guard and preserve the sovereignty of Indian tribes in order to foster strong tribal governments, Indian self-determination, and economic self-sufficiency among Indian tribes.").

21. Tribal law specifies that businesses wholly owned by the Tribe "shall be considered to be instrumentalities and arms of the Tribe, and their officers and employees considered officers and employees of the Tribe, created for the purpose of carrying out authorities and responsibilities of the Tribe for economic development of the Tribe and

advancement of its citizens." *See* Otoe-Missouria Tribe Limited Liability Company Act, §913, attached as **Exhibit 1**.

22. All revenues of the Tribe's lending businesses inure to the benefit of the Tribal government and, in turn, are used for the benefit of the Tribe's citizens pursuant to Tribal law and the formation documents of Great Plains and Clear Creek.

23. The Tribe exercises ultimate control over both Great Plains and Clear Creek. Members of the Boards of Directors for both Great Plains and Clear Creek may be removed by the Tribal Council, the Tribe's governing body, at any time, with or without cause.

24. Chairman Shotton, as Secretary/Treasurer of Great Plains and Clear Creek, and as Chairman of the Tribe, is not an individual owner of the businesses and in no manner individually profits from the businesses; rather, it is the Tribe that is the sole owner of both Great Plains and Clear Creek, and it is the Tribal government that realizes the profits, ultimately for the benefit of its Tribal members, collectively, not Plaintiff (or any other Tribal member), individually. Chairman Shotton's only duties with respect to Great Plains and Clear Creek are those delegated to him expressly by Tribal law. Chairman Shotton also serves as the elected leader of the Tribe's governing body, its Tribal Council, and is vested with decision-making and governance authority pursuant to the Tribe's Constitution.

### C. The Connecticut Department of Banking's Attempt to Exercise Jurisdiction Over Tribal Entities and the Tribe's Elected Official Acting Solely In His Official Capacity

25. Beginning on or about late 2013, the Connecticut Department of Banking ("Department") began its attempts to assert regulatory jurisdiction over Great Plains, Clear Creek and Plaintiff.

26. The Departments' regulatory efforts initially consisted of sending a letter to Great Plains in Oklahoma concerning a single consumer loan, and alleging violations of Connecticut law related to that consumer loan.

27. Upon receipt of this correspondence, Great Plains, through counsel, responded to the Department in writing, and explained that Great Plains is "regulated pursuant to the laws of the Tribe and, accordingly, maintains its own regulated process. . . .".

28. In its response, Great Plains further informed the Department that it sought "to maintain a productive government to government relationship with the state of Connecticut to ensure that the complaints of its constituents are appropriately resolved. In doing so, Great Plains offers to meet with the Department of Banking to discuss how to establish a protocol that will best address these issues moving forward."

29. Despite the Tribe's attempt to build a productive government-to-government relationship with the State of Connecticut, neither the Department nor any other agency or subdivision of the State of Connecticut attempted to establish a cooperative protocol or mechanism to address the Department's issues.

30. Instead, on October 24, 2014, the Department, through Defendant Pitkin, initiated an administrative action against Great Plains, Clear Creek, and Chairman Shotton through the issuance of a Temporary Order to Cease and Desist; Order to Make Restitution; Notice of Intent to Issue Order to Cease and Desist; Notice of Intent to Impose Civil Penalty; and Notice of Right to Hearing ("Initial Order," attached as **Exhibit 2**).

31. The Initial Order was sent to Chairman Shotton at his tribal office on trust land in Red Rock, Oklahoma. The Initial Order specifically provides that Chairman Shotton shall cease and desist from engaging in certain activities in Oklahoma, and it provides that it "shall become effective upon receipt by John R. Shotton." Therefore, the Initial Order was specifically addressed and sent to Chairman Shotton in Oklahoma, and was designed to affect Chairman Shotton's actions in Oklahoma.

32. The Initial Order sent to Chairman Shotton at his tribal office address in Oklahoma also specifically directed Chairman Shotton to take certain action while in Oklahoma, *i.e.*, to provide the Department with certain information located only in Oklahoma.

33. The Initial Order also provided that Chairman Shotton may request a hearing within the time prescribed in the Initial Order, and encloses a form entitled "Appearance and Request for Hearing". The Initial Order states that the enclosed Appearance and Request for Hearing form, which was sent to Chairman Shotton at his Red Rock, Oklahoma office address, must be completed by Chairman Shotton and mailed from Oklahoma to the Department. The Initial Order provides that if Chairman Shotton

does not complete the Appearance and Request for Hearing form and return it within the time prescribed, the Commissioner will issue an Order that Chairman Shotton cease and desist from certain activities and may order a civil penalty against Chairman Shotton.

34. On November 10, 2014, Chairman Shotton, Great Plains, and Clear Creek filed a motion to dismiss the administrative proceedings for lack of personal and subject matter jurisdiction ("Motion to Dismiss"). *See* Memorandum of Points and Authorities in Support of Motion to Dismiss, attached as **Exhibit 3.**

35. Within the pleadings filed to dismiss the Departments' actions on jurisdictional grounds, Chairman Shotton expressly reserved the right to later make arguments in response to the merits of the Department's claims, stating that for the Department to render a decision on the merits, based on acceptance of their own allegations as truth, would constitute a clear violation of his procedural due process rights. *See* Reply in Support of Motion to Dismiss, attached as **Exhibit** 4, at p. 10, fn. 3.

36. On January 6, 2015, Defendant Pitkin issued two things: (1) a Commissioner's Ruling on Motion to Dismiss ("Ruling" attached as **Exhibit** 5), in which he denied the Motion to Dismiss, and (2) an Order to Cease and Desist and Order Imposing Civil Penalty ("Order" attached at **Exhibit 6)**. In the Ruling denying the Motion to Dismiss, Defendant Pitkin held that tribal sovereign immunity did not apply because the administrative proceedings could not be considered a "suit," and are instead "purely administrative and outside of any judicial process." *See* Exhibit 5, at p. 8. This reasoning was well-outside the scope of applicable and controlling case law regarding federal Indian law and sovereign immunity.

37. In addition to finding that sovereign immunity did not apply, and despite the fact that Chairman Shotton was never given an opportunity brief the issue, Defendant Pitkin also found that Connecticut substantive law applied to the lending activities of tribal businesses. Of course, this issue is separate and apart from the issue presented in the Motion to Dismiss – the defense of sovereign immunity – and cannot and should not have been considered in the analysis as to Chairman Shotton's immunity from the Department's administrative actions.

38. In addition to issuing the Ruling, Defendant Pitkin simultaneously issued the Order. Despite the fact Chairman Shotton had not addressed the Department's claims on the merits, Defendant Pitkin ordered that Chairman Shotton cease and desist from engaging in certain activity that Defendant Pitkin deemed to be in violation of Connecticut statutes, and imposed a civil penalty of $700,000 on Chairman Shotton. *See* Exhibit 6, p. 6-7. This monetary value was assessed without any evidence to support Great Plains' or Clear Creek's lending volumes within the State, let along Chairman Shotton's alleged personal involvement in the businesses.

39. After he issued his Ruling and Order on January 6, 2015, imposing a $700,000 penalty upon Chairman Shotton, Defendant Pitkin retired.

40. Upon Defendant Pitkin's January 2015 retirement, Defendant Bruce Adams became the Acting Commissioner of the Department of Banking.

41. From his previous role as General Counsel of the Connecticut Department of Banking, Defendant Adams was familiar with Defendant Pitkin's stance toward Chairman Shotton and possessed full knowledge of the Department's posture toward and

action against the Otoe-Missouria Tribe of Indians, its tribal entities, and Chairman John Shotton when he assumed the Acting Commissioner position in January 2015.

42. Since taking the helm of the Connecticut Department of Banking, Defendant Adams has adopted Defendant Pitkin's position, endorsed his Ruling and Orders of January 6, 2015 and has refused to rescind those actions against Chairman Shotton.

## FIRST CAUSE OF ACTION
## (DENIAL OF PROCEDURAL DUE PROCESS)

43. Plaintiff incorporates by reference the allegations in paragraphs 1-42 above.

44. Chairman Shotton filed the Motion to Dismiss on the grounds that he is entitled to the protection of the Tribe's sovereign immunity from suit on the basis of well-settled and binding case law. Chairman Shotton specifically reserved his right to address the merits of the claims if Defendants found he did not share in the Tribe's (and Great Plains' and Clear Creek's) sovereign immunity.

45. Defendant Pitkin issued the Ruling and the Order, which simultaneously ruled on the Motion to Dismiss and the merits of the Department's allegations, despite the fact that Chairman Shotton was not provided with an opportunity to contest the merits of the claims made against him. Defendant Pitkin levied a civil penalty of $700,000 against Chairman Shotton without giving him the opportunity to address the merits of the claim. Defendant Adams has, knowingly and actively endorsed these decisions.

46. Defendants' actions, if enforced, will deprive Chairman Shotton of his constitutionally protected liberty and property interests without procedural due process of

the law in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

47. Chairman Shotton was deprived of his property in a process that was substantively unfair and which was devoid of constitutionally adequate procedures.

48. The Defendants' actions were insufficient to properly protect Chairman Shotton's ownership rights and they denied him an opportunity to be heard.

49. Defendants' actions were taken under color of state law.

50. Defendant Pitkin's Rulings and Orders represented a final, definitive administrative action on the part of the Connecticut Department of Banking.

51. This final action inflicted an actual, concrete injury upon Chairman Shotton by jeopardizing his personal assets, subjecting him to threat of continuing enforcement measures, infringing upon his individual rights, and adversely impacting his ability to fulfill his duties as tribal Chairman, which include providing for the health, safety, and welfare of the Tribe.

52. The actions of Defendants Pitkin violated federal law that was clearly established at the time they acted, and the subsequent conduct of Defendant Adams in adopting Pitkin's Ruling and Order also violated federal law and it continues to do so.

## SECOND CAUSE OF ACTION
## (VIOLATION OF TRIBAL OFFICER IMMUNITY)

53. Plaintiff incorporates by reference the allegations in paragraphs 1-52 above.

54. Defendants have violated Chairman Shotton's federally recognized immunity as an officer of the Otoe-Missouria Tribe of Indians.

55. The Otoe-Missouria Tribe of Indians is sovereign and enjoys sovereign immunity.

56. A sovereign tribe's "immunity extends to tribal officials, so long as they are acting within the scope of their official capacities." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011).

57. Under clearly established federal law, Chairman Shotton is protected by tribal sovereign immunity against suits for damages, the imposition of civil monetary penalties and unlawful injunctions.

58. At all times during the pendency of the Department's regulatory action and in all of his interactions with the Department, Chairman Shotton has acted only in his official capacity and within his lawful authority as a tribal official of the Otoe-Missouria Tribe of Indians.

59. At no time with respect to the conduct for which the Defendants have penalized him, did Chairman Shotton act in his individual capacity or in any way separate and apart from his role as Tribal leader, and he has never stepped outside the scope of the powers and authority lawfully delegated him by the Otoe-Missouria Tribe of Indians and its Government.

60. The Tribe's sovereign immunity – which extends to Great Plains, Clear Creek, and Chairman Shotton – remains intact.  The Otoe-Missouria Tribe of Indians has never waived its sovereign immunity in connection with this regulatory action and Chairman Shotton has never waived his sovereign immunity as a tribal official of the Otoe-Missouria Tribe of Indians.

61. Similarly, Congress has never abrogated the sovereign immunity of the Otoe-Missouria Tribe of Indians or the personal immunity Chairman Shotton possesses as one of that Tribe's officials.

62. The Defendants' imposition of a $700,000 fine upon Chairman Shotton in his individual capacity and their unlawful injunctions restraining his behavior are baseless and in violation of federal and tribal law.

63. Defendants' actions are the direct and proximate cause of substantial injury to Plaintiff.

## RELIEF REQUESTED

Chairman Shotton requests relief from this Court to address these wrongs, to wit: a declaratory judgment that the Orders of January 6, 2015 are void and unenforceable against Plaintiff for violations of his procedural due process rights; an injunction prohibiting Defendants from enforcing those Orders; money damages for the injuries sustained by Chairman Shotton as a result of Defendants' conduct; costs and attorney fees; and all other relief to which Plaintiff is entitled at law and in equity.

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL
 & ANDERSON, L.L.P.

*/s/Stuart D. Campbell*
Stuart D. Campbell, OBA No. 11246
Jon E. Brightmire, OBA No. 11623
Two West Second Street, Suite 700
Tulsa, OK  74103-3117
(918) 582-1211 – *Telephone*
(918) 925-5258 – *Facsimile*
*scampbell@dsda.com*
*jbrightmire@dsda.com*

*Attorneys for John R. Shotton*

3360037v1