## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN R. SHOTTON, an individual, | : | CIV-15-241-L |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| HOWARD F. PITKIN, in his individual | : | |
| and official capacity as the former | : | |
| Commissioner of the Department of | : | |
| Banking; and BRUCE ADAMS, in his | : | |
| individual and official capacity as | : | |
| Acting Commissioner of the Department | : | |
| of Banking, | : | |
| *Defendants*. | : | APRIL 3, 2015 |

## <u>OPENING MOTION TO DISMISS ON BEHALF OF DEFENDANTS PITKIN AND ADAMS IN THEIR INDIVIDUAL AND OFFICIAL CAPACITES AND BRIEF IN SUPPORT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

FACTUAL BACKGROUND.............................................................................................1

PROCEDURAL BACKGROUND....................................................................................4

I.     PLAINTIFF'S ONGOING CONNECTICUT ACTION........................................4

II.    PROCEDURAL BACKGROUND OF THIS ACTION........................................4

ARGUMENT....................................................................................................................5

I.     *YOUNGER* ABSTENTION IS REQUIRED IN LIGHT OF THE ONGOING
       CONNECTICUT PROCEEDINGS........................................................................5

II.    THIS COURT LACKS PERSONAL JURISDICTION OVER
       DEFENDANTS.........................................................................................................9

III.   PLAINTIFF'S DUE PROCESS CLAIM IS NOT RIPE........................................14

IV.   THE ELEVENTH AMENDMENT BARS MANY OF PLAINTIFF'S
       CLAIMS..................................................................................................................16

V.    ABSOLUTE IMMUNITY BARS ANY INDIVIDUAL CAPACITY CLAIMS
       FOR MONEY DAMAGES....................................................................................17

VI.   PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM LACKS MERIT.......18

VII.  VIOLATION OF TRIBAL OFFICER IMMUNITY IS NOT A VALID § 1983
       CLAIM....................................................................................................................22

VIII. VENUE IN OKLAHOMA IS IMPROPER............................................................23

IX.   CONCLUSION.......................................................................................................25

CERTIFICATE OF SERVICE.........................................................................................26

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Miami, Okla.*, 2011  WL 2792300 (N.D. Okla. July 18, 2011)......... 14

*Beachum v. Tansy*, 903 F.2d 1321 (10th Cir. 1990)........................................................... 21

*Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, 2010 WL 582205 (N.D. Okla. Feb. 10, 2010)....................................................................................................24

*Benton v. Cameco Corp.*, 375 F.3d 1070 (10th Cir. 2004) ................................................. 9

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985)...........................................................11-12

*Coffey v. Schweiker*, 559 F. Supp. 1375 (D. Kan. 1983).................................................... 21

*D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223 (10th Cir. 2004)............................... 5, 9

*Dawson v. Astrue*, 2012 WL 5932055 (E.D. Okla. Sept. 27, 2012), *report and recommendation adopted*, 2012 WL 5941589 (E.D. Okla. Nov. 27, 2012)................. 18

*Graves v. Colvin*, No. CIV-12-375-M, 2013 WL 3992424 (W.D. Okla. Aug. 2, 2013) .. 21

*Great Plains Lending, LLC et al. v. State of Connecticut Department of Banking et al.*, HHB-CV15-6028096-S (Conn. Super.)......................................................... 4, 5, 7, 14

*Guttman v. Khalsa*, 446 F.3d 1027 (10th Cir. 2006)........................................................ 17

*Hedges v. Trailer Express, Inc.*, 2015 WL 402857 (W.D. Okla. Jan. 29, 2015) ............... 9

*Hill v. Whetsel*, 2007 WL 963216 (W.D. Okla. Mar. 28, 2007) ......................................... 5

*Horwitz v. State Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508 (10th Cir. 1987) ............................................................................................................................. 18

*Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701 (2003)....................................................................................................... 23

*Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979) .................................................... 24

*Lyman v. San Juan Cnty.*, 588 F. App'x 764 (10th Cir. 2014) ........................................... 5

*Muhammad v. United States*, 2010 WL 551413 (D. Colo. Feb. 11, 2010) ...................... 10

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) ............................ 18

*Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222 (10th Cir. 2010)... 16

*Nagim v. Jackson*, 2010 WL 4318896 (D. Colo. Aug. 10, 2010), *report and recommendation adopted*, 2010 WL 4318888 (D. Colo. Oct. 25, 2010)..............24

*Oltremari by McDaniel v. Kansas Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331 (D. Kan. 1994) ........................................................................................................ 8

*Omaha Tribe of Nebraska v. Barnett*, 245 F. Supp. 2d 1049 (D. Neb. 2003)................... 13

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987) ................................................................ 7

*Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) .................................................... 17

*Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) ......................................................... 7

*Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319 (3d Cir. 1998) .......................... 15

*Pounds v. Dep't of Interior*, 9 F. App'x 820 (10th Cir. 2001) ......................................... 18

*Proud Veterans, LLC v. Ben-Menashe*, 2014 WL 791200 (D. Kan. Feb. 27, 2014) ........ 12

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)...... 16

*Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415 (10th Cir.1988))................................................. 9

*Rockwood Select Asset Fund XI(6)-1, LLC v. Devine*, 750 F.3d 1178 (10th Cir. 2014)... 10

*Rocky Mountain Gun Owners v. Gessler*, 2014 WL 7177383 (D. Colo. Dec. 16, 2014) ... 6

*Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253 (D. Kan. 2004)........................ 23

*Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013) ..................................... 6, 7

*Stafford v. Briggs*, 444 U.S. 527 (1980) .................................................................... 10, 24

iii

*Stroman Realty, Inc. v. Antt*, 528 F.3d 382 (5th Cir. 2008)................................................13

*Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) .............................. 12, 13

*The Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services*, 769 F.3d 105 (2d Cir. 2014) ..................................................................... 14, 20

*Thomas v. City of New York*, 143 F.3d 31 (2d Cir. 1998) ................................................ 15

*Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006)...............................................9, 10, 13

*Walden v. Fiore*, 134 S. Ct. 1115 (2014)......................................................................... 11

*White v. Schweiker*, 725 F.2d 91 (10th Cir. 1984) .......................................................... 21

*Winnebago Tribe of Nebraska v. Kline*, 297 F. Supp. 2d 1291 (D. Kan. 2004) .............. 23

*Wise v. Lindamood*, 89 F. Supp. 2d 1187 (D. Colo. 1999) ....................................... 11, 12

*Yancey v. Bonner*, 323 F. App'x 674 (10th Cir. 2009) ...................................................... 8

*Zinermon v. Burch*, 494 U.S. 113 (1990) .................................................................. 14, 15

**Statutes**

Conn. Gen. Stat. § 4-183 .................................................................................................. 14

Conn. Gen. Stat. § 36a-50(a)(2) ...................................................................................... 22

Conn. Gen. Stat. § 36a-52(a) ........................................................................................... 22

Conn. Gen. Stat. § 36a-52(d) .......................................................................................... 22

**Rules**

Fed. R. Civ. P. 4(k)(1)(A)................................................................................................... 9

Fed. R. Civ. P. 12(b)(1) ................................................................................... 1, 5, 14, 18

Fed. R. Civ. P. 12(b)(2) .............................................................................................. 1, 9

iv

Fed. R. Civ. P. 12(b)(3) ............................................................................... 1, 23

Fed. R. Civ. P. 12(b)(6). ....................................................................... 1, 18, 22

Fed. R. Civ. P. 25(d)(1) ................................................................................. 17

*LCvR* 3.7(a).................................................................................................. 4, 5

## Regulations

Department of Banking Regulations Section 36a-1-53...................................... 22

## Constitutional Provisions

42 U.S.C. § 1983 ..................................................................................... passim

Plaintiff has brought this putative 42 U.S.C. § 1983 action against Connecticut state officials who dared to question Plaintiff's ability to participate in issuing loans to Connecticut residents with interest rates that dwarf the rates permitted under Connecticut law.   Plaintiff claims that Defendants violated his right to due process and his tribal officer immunity because Plaintiff claims that in issuing the loans he was acting as an officer of the Otoe-Missouria Tribe of Indians ("the Tribe").

As to the due process claim, Plaintiff conveniently neglects to mention that he has a pending action in the Connecticut Superior Court raising effectively the same claims. That deprives this Court of jurisdiction and, even if it did not, it more than satisfies due process.   As to Plaintiff's tribal officer immunity claim, the Supreme Court has made clear that such immunity does not give rise to a valid § 1983 claim.   Ultimately, there is no basis for this Court to exercise subject matter or personal jurisdiction over Defendants and, in any event, Plaintiff's claims lack merit.   Defendants respectfully move this Court to dismiss this action pursuant to Rule 12(b)(1), (2), (3) and (6) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

In October 2014, the Department issued a Temporary Order[1] to Great Plains, Clear Creek Lending ("Clear Creek") and Plaintiff John R. Shotton as Great Plains' Secretary/Treasurer.   (Doc. No. 1-2, p. 5).   The Tribe was not a respondent to the

---

[1] The Temporary Order was entitled "Temporary Order to Cease and Desist/Order to Make Restitution/Notice of Intent to Issue Order to Cease and Desist/Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing."   (Doc. No. 1-2, p.2).

1

Temporary Order.  The Temporary Order noted that Great Plains alleged that it was organized under tribal law and that both Great Plains and Clear Creek alleged that they operated within the boundaries of the Tribe's Reservation.  *Id*.  The Temporary Order also noted that Plaintiff was the Tribe's Chairman as well as the Secretary/Treasurer for Great Plains.  *Id*.

The Temporary Order advised the recipients, including Plaintiff, that Connecticut law limits interest rates on consumer loans of less than $15,000 to no more than 12%.  *Id*. at 8.  It also indicated that Great Plains had entered into agreements with Connecticut residents for loans at rates ranging from 199.44% to 398.20%.  *Id*. at 5.

Based on those findings, the Department informed Plaintiff that the Department had reason to believe Plaintiff was participating in violations of Connecticut law and that the Department was issuing a Temporary Order that he cease and desist from doing so. *Id*.  The Order explicitly stated that it was temporary and advised Plaintiff that "[a] hearing will be granted to each Respondent if a written request for hearing is received by the Department . . . within fourteen days following each Respondent's receipt" of the Temporary Order.  *Id*. at 13.

Included with the Temporary Order were Instructions directed to Plaintiff and an Appearance and Request for Hearing Form.  (Doc. No. 1-2, pp. 1, 20).  The Instructions informed Plaintiff that "[i]f you wish to request a hearing . . . you or your attorney *must* complete and return the enclosed Appearance and Request for Hearing Form."  *Id*. at 20 (emphasis in Instructions).  They further advised Plaintiff that he needed to make a timely

2

request for a hearing in order to preserve his right to a hearing.  *Id*.

Plaintiff did not request a hearing in the time provided.  Instead, his counsel appeared—without using the Appearance and Request for Hearing form the Department provided—and filed a motion to dismiss arguing that the Tribe's sovereign immunity barred the Department's efforts to enforce Connecticut law, even though the Tribe was not a respondent in the proceedings.  (Doc. No. 1-3).  No hearing was requested in that motion or the supporting memorandum.  *Id*.

The Department's prosecuting attorney opposed the motion to dismiss.  Plaintiff sought—and was granted—leave to file a reply.  On the last page of that reply, filed well after the deadline for requesting a hearing, Plaintiff's counsel "reserve[d] their right to rebut" the Department's arguments "at a later stage of the proceedings, if and when necessary, to the extent the Commissioner fails to apply the law and grant Respondents' Motion to Dismiss."  (Doc. No. 1-4, p. 10).  Plaintiff also argued in a footnote that to rule on the merits without further proceedings would violate due process.  *Id*.  At no point during the administrative proceedings, either before or after filing his Reply, did Plaintiff file an actual request for a hearing, even though an Appearance and Request for Hearing form was included in the materials sent to Plaintiff.  (Doc. No. 1-2, p. 1).

The Department denied Plaintiff's motion to dismiss on January 6, 2015.  (Doc. No. 1-5).  The Department issued its Order to Cease and Desist and Order Imposing Civil Penalty the same day.  (Doc. No. 1-6).  The Department's Order required that Plaintiff cease and desist his violations of Connecticut law and imposed $700,000 in civil

3

penalties on Plaintiff.  *Id*. at 5-6.

**PROCEDURAL BACKGROUND**

## I.      PLAINTIFF'S ONGOING CONNECTICUT ACTION

Under Connecticut law, Plaintiff had the right to appeal the Department's decision by filing a valid appeal with the Connecticut Superior Court within 45 days.  Plaintiff filed a putative appeal and an *ex parte* application for an injunction on January 23, 2015, within that 45 day period.  *See* Docket Sheet in *Great Plains Lending, LLC et al. v. State of Connecticut Department of Banking et al.*, HHB-CV15-6028096-S (Conn. Super.) ("the Connecticut Action") (Exh. 1).  That appeal is currently pending.

## II.     PROCEDURAL BACKGROUND OF THIS ACTION

Plaintiff filed this putative 42 U.S.C. § 1983 action on March 9, 2015.  It names former Commissioner Howard F. Pitkin and former Acting Commissioner Bruce Adams as Defendants, both in their individual and official capacities.  *Compl.*, caption.  Plaintiff alleges that Defendants' efforts to enforce Connecticut law violated due process and tribal officer immunity.  *Id*. at pp. 12-15.  Plaintiff asks this Court to award Plaintiff declaratory relief, injunctive relief, money damages and fees and costs.  *Id*. at 15.

Although Plaintiff is claiming that he was denied due process and Local Rule 3.7(a) required Plaintiff to notify this Court of any related cases pending in any court, Plaintiff did not disclose the pending Connecticut Action in either his Complaint in this case or his Civil Cover Sheet.  *See Civil Cover Sheet* (Doc. No. 1-7).

4

## ARGUMENT

### I.   *YOUNGER* ABSTENTION IS REQUIRED IN LIGHT OF THE ONGOING CONNECTICUT PROCEEDINGS[2]

Even though the Local Rules expressly required Plaintiff to notify this Court "of any . . . related case(s) filed in any court," *LCvR* 3.7(a), and Plaintiff is claiming a due process violation based on a claimed inability to raise his arguments, Plaintiff left the "Related Cases" section on his Civil Cover Sheet blank and failed to mention anywhere in his Complaint that he is presently a party to an administrative appeal he filed in Connecticut Superior Court challenging the Department's administrative rulings and orders. *See* Docket Sheet in the Connecticut Action (Exh. 1).  Like Plaintiffs' Complaint in this action, Plaintiff's Complaint in the Connecticut Action names Defendants Pitkin and Adams as defendants and alleges that the Department's actions violated tribal sovereignty and due process.  *See Compl. in Connecticut Action*, pp. 9-10 (Exh. 2).

"Abstention under *Younger* is mandatory once the[] requirements have been met." *Lyman v. San Juan Cnty.*, 588 F. App'x 764, 768 (10th Cir. 2014) (unpublished).[3]  The requirements are met here.  The Supreme Court recently identified the three categories of

---

[2] *Younger* abstention is properly raised pursuant to a Rule 12(b)(1) motion.  In addressing the jurisdictional issue, this Court may properly consider the existence of the Connecticut Action.  *See, e.g.*, *Hill v. Whetsel*, 2007 WL 963216, at *1 (W.D. Okla. Mar. 28, 2007) (Bacharach, M.J.).

[3] Although Defendants raise a variety of arguments, including other jurisdictional arguments, the Tenth Circuit has indicated that it is appropriate to address *Younger* abstention first.  *See, e.g.*, *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228-29 (10th Cir. 2004) (holding that *Younger* is jurisdictional and addressing it before other jurisdictional arguments).

cases to which *Younger* abstention applies: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) (quotation marks omitted).

The underlying Connecticut case falls within two of those three categories.  It is a quintessential example of a civil enforcement proceeding in the second *Younger* category. Plaintiff's Complaint makes evident that the Department's administrative proceeding was initiated by the Department—a state agency—through a formal complaint "to sanction the federal plaintiff, *i.e.* the party challenging the state action, for some unlawful act." *Id*. at 592; *see Complaint*, ¶¶ 25-33.  That alone requires *Younger* abstention. *See, e.g.*, *Rocky Mountain Gun Owners v. Gessler*, 2014 WL 7177383, at *3-5 (D. Colo. Dec. 16, 2014) (Blackburn, J.) (applying *Jacobs* to state civil enforcement proceeding).

But this action also comes within the third *Younger* category.  Plaintiff applied for an injunction in the Connecticut Action seeking to enjoin the Department and Defendants from enforcing the Department's cease and desist Order and monetary penalties. *See* Docket Sheet in Connecticut Action, No. 101.00 (Exh. 1).  The court heard argument on Plaintiff's Application.  During argument, the court granted Plaintiffs' Application to stay enforcement of the monetary penalties contingent on the agreement of Plaintiff—and the other plaintiffs in the Connecticut Action—to a means of ensuring the Department would be able to recover on any monetary judgment that may ultimately issue in the

Department's favor in the Connecticut Action.  *See Transcript of Feb. 4, 2015 Hearing in Connecticut Action*, p. 3, ls. 13-14 (Exh. 3) ("*Transcript*").  Plaintiff's counsel agreed to that condition on the record.  *Id*. at p. 3, ls. 19-22.  Based on that agreement, the court granted Plaintiff's Application as to the monetary penalties premised on the Department having "a means of ensuring that the plaintiffs will satisfy any final monetary judgment or order entered against them." Order No. 101.01 in Connecticut Action (Exh. 4).

The court's Order requiring Plaintiff to post a bond or escrow pending his administrative appeal falls squarely within the third *Younger* category.  Indeed, in *Jacobs*, the Supreme Court specifically referred to a "requirement for posting bond pending appeal" as an example of a proceeding that "touch[es] on a state court's ability to perform its judicial function."  *Jacobs*, 134 S. Ct. at 592 (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987)).  Therefore, this Court should abstain under *Younger*.[4]

There are exceptions to *Younger* for "bad faith, harassment or a patently invalid state statute," *id*. at 591, but the "exceptions only provide for a very narrow gate for federal intervention."  *Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir. 1995).[5]

---

[4] Plaintiffs attempted to withdraw their Application on March 30, 2015 and have claimed that their withdrawal moots out the Connecticut court's Orders that Plaintiffs post a bond or escrow.  Docket Sheet in the Connecticut Action, No. 117.00 (Exh. 1).  Defendants disagree that Plaintiffs' putative withdrawal impacts the Connecticut court's existing Orders under Connecticut law and plan to litigate the issue in the Connecticut Action.  In the event the Connecticut court agrees with the plaintiffs that its bond or escrow Orders are no longer operative, that would not deprive those Orders of their *Younger* effect.  *See, e.g.*, *Pennzoil Co.*, 481 U.S. at 17 (holding that *Younger* is measured at the time suit is filed).

[5] There is no exception to *Younger* that would apply solely because Plaintiff claims that

Plaintiff has not met—and cannot meet—his heavy burden to show that this case comes within them.  Plaintiff does not allege bad faith or harassment, and does not challenge any Connecticut statute in his Complaint.  Plaintiff's Complaint is insufficient to overcome *Younger*; even if he had alleged harassment or bad faith, "[a]llegations of harassment and innuendoes of bad faith do not suffice to carry the burden which plaintiff has to transfer this litigation from state to federal court. []he must allege specific facts to support an inference of bad faith." *Oltremari by McDaniel v. Kansas Soc. & Rehabilitative Serv.*, 871 F. Supp. 1331, 1360 (D. Kan. 1994) (quotation marks omitted).

No such facts exist for Plaintiff to allege.  The Department found that Plaintiff was an officer of entities that made loans to Connecticut residents featuring interest rates that dwarf the maximum allowed under Connecticut law by orders of magnitude; anywhere from over 16 times the maximum to over 37 times the maximum.  In the Connecticut Action, the court concluded that it appeared that the loans at issue "flagrantly violated" Connecticut law, but nonetheless granted Plaintiff's request to stay enforcement of the monetary aspects of the Department's Order to give Plaintiff the opportunity to make his argument that the Department could not protect Connecticut citizens from such loans because of the claimed tribal affiliation of the entities that offer them.  *Transcript*, p. 12, ln. 17 (Exh. 3).  At the same time, the court declined to hold that the Department's argument that it could protect Connecticut citizens was without merit, or that Plaintiff had

---

this case implicates tribal interests.  *See, e.g.*, *Yancey v. Bonner*, 323 F. App'x 674, 676 (10th Cir. 2009) (unpublished) (affirming district court's decision finding *Younger* abstention applicable to case under the Indian Child Welfare Act).

established a likelihood of success on the merits at that stage of the proceedings.  Order

No. 101.01 in Connecticut Action (Exh. 4).[6]  Under the circumstances, there is no basis

to conclude that this case falls within one of *Younger*'s narrow exceptions and this Court

must abstain.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS[7]

Whether a federal district court may exercise personal jurisdiction over a non-

resident defendant is governed by a two-step analysis; first the Court determines whether

the forum state's long arm statute allows for jurisdiction and then, if the statute does, the

Court determines whether the exercise of jurisdiction would comport with due process.

*See, e.g.*, *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).  Here, "[b]ecause

the Oklahoma long-arm statute[8] extends jurisdiction to the maximum extent permitted by

due process, 'this two-part inquiry collapses into a single due process analysis.'"  *Hedges*

*v. Trailer Express, Inc.*, 2015 WL 402857, at *4 (W.D. Okla. Jan. 29, 2015) (Russell, J.)

(quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir.1988)).

---

[6] If this Court concludes that *Younger* abstention is required, it would apply to all of Plaintiffs' claims, whether for declaratory relief, injunctive relief or money damages.  *See, e.g.*, *D.L.*, 392 F.3d at 1227-28.

[7] Defendants move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). Plaintiff can survive such a motion only if the materials he submitted establish a *prima facie* basis for jurisdiction in light of all relevant policy concerns.  *See, e.g.*, *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).  Plaintiff asserts no facts to support a claim of general jurisdiction over Defendants.  Rather, Plaintiff's claims are based only on specific jurisdiction.

[8] "Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims, Fed. R. Civ. P. 4(k)(1)(A) refers" this Court to the Oklahoma long arm statute.  *Trujillo*, 465 F.3d at 1217.

Exercising personal jurisdiction over Defendants in this case would violate due process.  To survive a motion to dismiss on personal jurisdiction grounds, a plaintiff bears the burden of alleging facts to establish that each defendant has the "minimum contacts" with the forum state necessary for an exercise of jurisdiction to comport with due process.  *See, e.g.*, *Trujillo*, 465 F.3d at 1217-18 (discussing minimum contacts); *Rockwood Select Asset Fund XI(6)-1, LLC v. Devine*, 750 F.3d 1178, 1179 (10th Cir. 2014) (plaintiff bears the burden).  Plaintiff has not met that burden, nor could he credibly.

Plaintiff brings both individual and official capacity claims, but alleges only contacts with Oklahoma that Defendants made in the course of their government employment.  Those contacts are *per se* insufficient to support personal jurisdiction over Defendants for any individual capacity claims.  "[A]bsent minimum contacts other than those arising from [government] employment, [a] court may not exercise personal jurisdiction over [a government] official in his individual capacity."  *Muhammad v. United States*, 2010 WL 551413, at *9 (D. Colo. Feb. 11, 2010) (citing *Stafford v. Briggs*, 444 U.S. 527, 543–45 (1980)).  That alone requires dismissal of Plaintiff's individual capacity claims based on a lack of personal jurisdiction.

Even if Defendants' contacts with Oklahoma were not categorically unable to support individual capacity personal jurisdiction, they would still be insufficient to establish either individual or official capacity personal jurisdiction.  Plaintiff does not allege that Defendant Adams took any actions directed at Oklahoma at all.  Rather,

10

Plaintiff alleges only that Defendant Adams declined to reverse the Department's position as to Plaintiff's conduct upon succeeding Defendant Pitkin as Commissioner. *Compl.*, ¶¶ 40-42. Plaintiff does not allege any connection between that conduct and Oklahoma, and the mere fact that Plaintiff has connections with Oklahoma cannot support personal jurisdiction over Defendants. *See, e.g.*, *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014).

Plaintiff's allegations as to Defendant Pitkin are likewise insufficient to subject Defendant Pitkin to personal jurisdiction in Oklahoma, either individually or officially. Plaintiff alleges the following actions directed at Oklahoma: (1) the Department sending a letter to Great Plains alleging violations of Connecticut law with regard to a loan, *Compl.* ¶ 26; and (2) "the Department, through Defendant Pitkin" initiating an administrative action and sending a Temporary Order to Cease and Desist and related notices to Plaintiff, which required Plaintiff to provide information located in Oklahoma and to submit an appearance and request for hearing form from Oklahoma to Connecticut. *Id.* at ¶¶ 31-33.

"The *dispute* in this case results from the alleged tortious conduct of the plaintiff," not "from the . . . cease and desist" notices. *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1191 (D. Colo. 1999) (emphasis in original). "[P]ermitting the mailing of cease and desist letters to trigger personal jurisdiction in this case would effectively permit Defendants to be 'haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or third person.'" *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 474

11

(1985) and citing several cases to same effect).   That would be inconsistent with due process; an individual does not expose himself "to personal jurisdiction in a forum solely by informing a party who happens to be located there" that his conduct violates the law. *Id*. (quotation marks omitted).

*Wise* involved a cease and desist letter issued by a private entity; the policy concerns it raises apply with even greater force where, as here, a state agency sends a notice to an out-of-state entity doing business in the state that the entity's conduct violates state law.   The Fifth Circuit's decision in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008), is directly on point.   There, as here, the plaintiff sought to obtain personal jurisdiction in the forum state over an out-of-state regulator that sent a cease and desist order into the forum state.   *Id*. at 484.

The Fifth Circuit held "that exercising personal jurisdiction over the [Arizona] Commissioner in the Southern District of Texas would violate due process."   *Wercinski*, 513 F.3d at 483.   Although the Commissioner had sent her order into Texas and the plaintiff felt its effects there, "[b]y seeking to regulate [the plaintiff's] activities involving Arizona residents or property, the Commissioner is not expressly aiming her actions at Texas."   *Id*. at 486.   "Rather, her intent is to uphold and enforce the laws of Arizona." *Id*.; *see also Proud Veterans, LLC v. Ben-Menashe*, 2014 WL 791200, at *6 (D. Kan. Feb. 27, 2014) ("The Tenth Circuit, as well as other courts, requires a plaintiff to present 'something more' than the injuries a plaintiff allegedly suffered in order to show that a defendant aimed or targeted its conduct at the forum state.").

12

The same is true here.  Defendants' alleged contacts with Oklahoma were all to uphold and enforce Connecticut law as to Plaintiff's commercial activities directed at Connecticut residents.  Defendants' actions were purely reactive and "based entirely on the unilateral decisions of" Plaintiff, not Defendants.  *Id*.  To the extent Defendants took any actions involving Oklahoma, "[i]t could be said that" they were "forced" to do so by Plaintiff's activities that flagrantly violated Connecticut law.  *Wercinski*, 513 F.3d at 487.

If this Court were to adopt Plaintiff's conception of personal jurisdiction, "any state official seeking to enforce her state's laws . . . could potentially be subjected to suit in any state where the validity of her state laws were in question."  *Id*. at 486; *see also Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386-87 (5th Cir. 2008) (in related case to *Wercinski*, rejecting claim of personal jurisdiction despite claim of additional contacts). That "would offend traditional conceptions of fair play and substantial justice."  *Trujillo*, 465 F.3d at 1221-22 (quotation marks omitted) (holding that New Mexico court could not exercise personal jurisdiction over New Mexico prisoner's claims against prison officials based in Virginia).  Other courts have rejected arguments such as Plaintiff's, and Defendants respectfully submit that this Court should as well.  *Cf. Omaha Tribe of Nebraska v. Barnett*, 245 F. Supp. 2d 1049, 1054-55 (D. Neb. 2003) (holding that court lacked jurisdiction over out-of-state attorneys general in suit by Indian tribe claiming that state statutes infringed on tribal sovereignty).  That is particularly important given that Plaintiff and the entities for which he is an officer do business throughout the United States, and the interest rates they charge may contravene the law in many of those states,

13

just as they do Connecticut law.  *See, e.g.*, *The Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services*, 769 F.3d 105 (2d Cir. 2014) (affirming denial of preliminary injunction sought by the Tribe and entities at issue in the Department's action here against New York regulator in district court in New York).

## III.    PLAINTIFF'S DUE PROCESS CLAIM IS NOT RIPE

Plaintiff claims that he was denied procedural due process in Connecticut, but he is still in the midst of the judicial review process he is allowed under Connecticut law. Specifically, under Connecticut law, Plaintiff had the opportunity to appeal the Department's Orders to the Connecticut Superior Court.  Conn. Gen. Stat. § 4-183 (Exh. 5).  Plaintiff filed an appeal, and has made the same procedural due process claim he makes in this action in his Connecticut appeal.  *See Compl. in Connecticut Action*, pp. 9-10 (Exh. 2).[9]

That renders Plaintiff's procedural due process claim in this case unripe and deprives this Court of jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A procedural due process violation "actionable under § 1983 is not complete when the [claimed] deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

*Anderson v. City of Miami, Okla.*, 2011 WL 2792300 (N.D. Okla. July 18, 2011),

---

[9]  Defendants moved to dismiss Plaintiff's appeal because it did not comply with procedural requirements under Connecticut law and Plaintiff failed to timely cure the procedural defects even after having been advised by Defendants of the defects in writing with ample time to correct them.  Defendants' motion is pending before the Connecticut Superior Court.

is instructive.  There, as here, the plaintiff brought a procedural due process claim in federal court but had already filed an appeal of the underlying state administrative (employment) decision.  *Id*. at *4.  When the plaintiff brought his federal suit, the administrative appeal had not been completed; the parties had agreed to hold it "in abeyance" pending "direction by the court."  *Id*.

The court raised jurisdictional ripeness *sua sponte* and held that the plaintiff's procedural due process claim was not ripe.  *Id*.  The court reasoned that "'to determine whether a constitutional violation has occurred, it is necessary to ask what process the State has provided, and whether it was constitutionally adequate.'"  *Id*. (quoting *Zinermon*, 494 U.S. at 125).  "'As a result, where courts are asked to declare constitutionally deficient procedures that have yet to be applied[,] [s]uch a judgment would be premature.'"  *Id*. (quoting *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 324 (3d Cir. 1998)).

The court's reasoning applies with greater force here given that Plaintiff has invoked a formal judicial remedy in Connecticut and judicial review is not complete. Procedural due process claims require a careful examination of the process given and the interests at stake.  *Id*. Where that process is not complete, the court cannot "make an advance judgment about exactly what form the process w[ill] take" and the "procedural due process claim is not ripe for review."  *Id*. at *5 (discussing *Thomas v. City of New York*, 143 F.3d 31-35 (2d Cir. 1998)).  That requires dismissal of Plaintiff's procedural due process claim.  *Id*. at *7.

15

IV.    **THE ELEVENTH AMENDMENT BARS MANY OF PLAINTIFF'S CLAIMS**

Plaintiff brings claims against both Defendants in their official and individual capacities and seeks declaratory, injunctive and monetary relief without specifying which relief is sought in which capacity as to which Defendant. *Complaint*, p. 15. The Eleventh Amendment bars Plaintiff's Complaint to the extent it seeks official capacity monetary relief; it is well-established that "[w]hen a state official is sued in his or her official capacity, the Eleventh Amendment bars retrospective relief, usually in the form of money damages." *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1233 (10th Cir. 2010).

The Eleventh Amendment also bars Plaintiff's demand for "a declaratory judgment that the Orders of January 6, 2015 are void and unenforceable against Plaintiff for violations of his procedural due process rights." *Complaint*, p. 15. The Supreme Court has made clear that the *Ex Parte Young* "exception [to the Eleventh Amendment] is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). That is precisely what Plaintiff seeks here.

Plaintiff's claims for prospective relief against Defendants are also barred because the named Defendants are not proper Defendants for such relief. For a state official to be a proper defendant under *Ex Parte Young*, he must be connected with the alleged future

enforcement the plaintiff seeks to avoid.  *See, e.g.*, *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013).  Plaintiffs acknowledge in their Complaint that Defendant Pitkin retired in January 2015.  *Complaint*, ¶¶ 39-40.  Therefore, he no longer has any connection with any alleged ongoing violations of federal law and is not a proper defendant under *Ex Parte Young*.

Similarly, Defendant Adams is no longer a proper defendant for prospective equitable relief.  Defendant Adams was Acting Commissioner of the Department of Banking when Plaintiff filed his Complaint, but was replaced by Commissioner Jorge Perez on March 13, 2015.  By operation of the Federal Rules, Acting Commissioner Adams was therefore automatically replaced by Commissioner Perez as Defendant for any claims Plaintiff may be making for prospective equitable relief.  Fed. R. Civ. P. 25(d)(1).

## V.   ABSOLUTE IMMUNITY BARS ANY INDIVIDUAL CAPACITY CLAIMS FOR MONEY DAMAGES

Plaintiff's claims arise out of administrative actions Defendants took to enforce Connecticut law and to adjudicate Plaintiff's challenge to the Department's jurisdiction. *Compl.* ¶¶ 31-42.  The Tenth Circuit has made clear that absolute prosecutorial immunity protects both administrative prosecutors and administrative adjudicators from individual capacity claims for money damages.  *See, e.g.*, *Guttman v. Khalsa*, 446 F.3d 1027, 1032-34 (10th Cir. 2006).  In so holding, the court has found that "[t]here exists a strong need to insure that individual Board members perform their functions for the public good

17

without harassment or intimidation." *Horwitz v. State Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508, 1515 (10th Cir. 1987). This case illustrates that need. Plaintiff is presently in the process of seeking review of the Department's decision in Connecticut Superior Court. Plaintiff was apparently dissatisfied with that court's refusal to immediately agree with Plaintiff's position and Defendants' refusal to immediately comply with Plaintiff's demands, and felt the need to bring this action against Defendants in their individual capacities in the hope that it would weaken their resolve to protect Connecticut residents. Absolute immunity exists to protect against precisely such conduct. Fed. R. Civ. P. 12(b)(1); *see also Pounds v. Dep't of Interior*, 9 F. App'x 820, 821 (10th Cir. 2001) (unpublished) (holding that Rule 12(b)(1) motion is appropriate means of raising absolute immunity).

## VI. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM LACKS MERIT

As discussed above, Plaintiff's procedural due process claim is not ripe and this Court lacks subject matter jurisdiction over it. Plaintiff's due process claim also utterly lacks merit. Fed. R. Civ. P. 12(b)(6).

"All that due process requires is 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Dawson v. Astrue*, 2012 WL 5932055, at *3 (E.D. Okla. Sept. 27, 2012), *report and recommendation adopted*, 2012 WL 5941589 (E.D. Okla. Nov. 27, 2012) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339

U.S. 306, 314 (1950)).  Plaintiff received all that and more.

The Department initiated the administrative proceeding against Plaintiff by sending him a document entitled *inter alia* a "**TEMPORARY ORDER TO CEASE AND DESIST . . . AND *NOTICE OF RIGHT TO HEARING*.**" (italics added) (Doc. No. 1-2, p. 2).  That document referenced Plaintiff's right to a hearing on the merits multiple times and expressly informed him that "[a] hearing will be granted to each Respondent [including Plaintiff] if a written request for a hearing is received by the Department . . . within fourteen (14) days following each Respondent's receipt of" the Temporary Order.  *Id*. at 14.  The Temporary Order was accompanied by instructions for Plaintiff that reiterated his right to a hearing and that he "*must*" submit a request form to request a hearing and that if he "request[ed] a hearing within the time specified" he would receive one.  *Id*. at 20 (emphasis in Instructions).  Also included was an Appearance and Request for Hearing Form for Plaintiff to complete, if he so chose.  *Id*. at 1.

Plaintiff does not deny that he received the Temporary Order early enough to timely request a hearing on the merits, or claim that he did not understand the Instructions.  Indeed, Plaintiff acknowledges that he was required to "request a hearing *within the time prescribed in the Initial Order*."  *Compl.*, ¶ 33 (emphasis added).  But Plaintiff chose not to make a timely request.  Instead, his counsel submitted their own appearance forms, to avoid returning the Appearance and Request for Hearing form the Department provided, and filed a motion to dismiss raising tribal sovereign immunity. (Doc. No. 1-3).  No hearing was requested anywhere in that motion.  *Id*.

19

The latest possible date for Plaintiff to timely request a hearing was November 14, 2014.[10]  Plaintiff does not allege that he ever submitted the Appearance and Request for Hearing form, which the Instructions indicated Plaintiff was required to submit to request a hearing. *Compl.*, ¶ 33.  Nor does he allege that he filed any other request for a hearing prior to the deadline.

Plaintiff did file a Reply to the Department's opposition to his motion to dismiss on December 1, 2014, well outside the deadline.  On the last page of that Reply, Plaintiff and the other administrative defendants—for the first time, *Compl.*, ¶ 35—"reserve[d] their right to rebut the[ ] argument[]" that Connecticut law applies to their activity involving Connecticut residents "at a later stage of the proceedings, if and when necessary, to the extent the Commissioner fails to apply the law and grant Respondents' Motion to Dismiss"[11] and in a footnote indicated—again for the first time—that issuing

---

[10] The Instructions sent to Plaintiff provided that "[i]n order to preserve your right to a hearing, the Department . . . must receive the Appearance and Request for Hearing Form no later than fourteen (14) days after the date you received the Order.  (The Order is deemed received on the date you received it or seven days after mailing or sending, whichever date is earlier.)" (Doc. No. 1-2, p. 20).  Plaintiff's Complaint does not specify when he received the Order, so for purposes of this Motion Defendants will assume the deadline was November 14th though it likely was earlier.

[11] Plaintiff does not specify what, if any, additional facts he would have sought to present at any hearing.  At no point has Plaintiff claimed that the loans offered in Connecticut complied with Connecticut law and Plaintiff's counsel in the Connecticut action has consistently taken the position that the issue of applicable law is "irrelevant" to Plaintiff's arguments.  *Transcript*, p. 10, ls. 18-24 (Exh. 3).  It is worth noting that the entities at issue had the opportunity to establish a factual record for an applicable law argument following the Second Circuit's remand in *The Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services*, 769 F.3d 105 (2d Cir. 2014), but instead

an Order without a hearing would violate due process.  (No. 1-4, p. 11 & n.3).

A statement and footnote at the end of a reply brief is not a proper request for a hearing, or a proper way to present or preserve an argument.  This Court "follows the general rule that an argument raised for the first time in a reply brief is deemed abandoned or waived." *Graves v. Colvin*, No. CIV-12-375-M, 2013 WL 3992424, at *4 (W.D. Okla. Aug. 2, 2013) (Miles-LaGrange, J.).

Even Plaintiff's language at the end of his Reply not expressly requesting a hearing could be construed as a putative request for a hearing (which it cannot properly), the request was untimely.  Agencies have unreviewable discretion to deny untimely requests for a hearing and, indeed, it is unclear under Connecticut law whether the Department has authority to waive or extend the statutory fourteen day deadline.  *See, e.g., Coffey v. Schweiker*, 559 F. Supp. 1375, 1377 (D. Kan. 1983).  Regardless of the Department's authority, Plaintiff has never attempted to establish good cause for his failure to file a timely request.  Nor would any attempt be credible; Plaintiff admits that he was represented by counsel, had ample notice and time to properly request a hearing and was aware that any request had to be timely.  *Compl.*, ¶ 33.

The denial of an untimely hearing request in no way violates due process.  *See, e.g., White v. Schweiker*, 725 F.2d 91, 94 (10th Cir. 1984).  Indeed, it is surprising Plaintiff is arguing otherwise; the rules governing proceedings before the Otoe-Missouria

withdrew their case.  Denying Plaintiff a hearing where there is no meaningful factual dispute does not violate due process; "[d]ue process does not require the rote performance of futile exercises." *Beachum v. Tansy*, 903 F.2d 1321, 1330 (10th Cir. 1990).

21

Tribe's own Regulatory Commission mirror Connecticut law and provide that if a timely written request for a hearing is not made "the order of the Commission shall automatically become final." (Exh. 6); *see also* Conn. Gen. Stat. §§ 36a-50(a)(2) & 36a-52(a) (Exh. 7).

Plaintiff could have gone directly to Connecticut Superior Court to challenge the Department's initial Temporary Order. Conn. Gen. Stat. § 36a-52(d) (Exh. 8). Plaintiff also could have sought reconsideration of the Department's final Order on the ground that it violated due process. Department of Banking Regulations, § 36a-1-53 (Exh. 9). Those options—and the option for judicial review in Connecticut which Plaintiff is presently invoking—offered Plaintiff all the process he was due, and more.

Plaintiff chose not to take advantage of many of his available options. Instead, Plaintiff chose to disregard the Department's procedures and then attack the Department in the Connecticut courts and ultimately in this Court for not granting a hearing Plaintiff never expressly requested, and certainly never requested in the proper format and in a timely manner. Plaintiff's due process claim utterly lacks merit and should be dismissed.

## VII.   VIOLATION OF TRIBAL OFFICER IMMUNITY IS NOT A VALID § 1983 CLAIM

"This is a civil action under 42 U.S.C. § 1983." *Compl.*, ¶ 1. Count Two of Plaintiff's Complaint asserts a Violation of Tribal Officer Immunity. But that is not a valid 42 U.S.C. § 1983 claim. Fed. R. Civ. P. 12(b)(6).

The Supreme Court has held that tribes cannot bring § 1983 claims as plaintiffs to

vindicate sovereign interests.   *Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 711-12 (2003).   In so holding, the Court also held that individual tribal members can bring § 1983 claims to the same extent as other individuals, but cannot bring them to claim a derivative benefit from the tribe's sovereignty.   *Id*.; *see also Winnebago Tribe of Nebraska v. Kline*, 297 F. Supp. 2d 1291, 1298 (D. Kan. 2004) (holding under *Inyo Cnty.* that non-tribe plaintiffs could not bring § 1983 claims "wholly derivative" of the tribe's sovereignty).   That requires dismissal of Plaintiff's § 1983 claim, as does the fact that the tribal sovereign immunity on which Plaintiff relies is not one of the "'rights, privileges, or immunities secured by the Constitution and laws' within the meaning of § 1983" because it is a "judge-made doctrine" that is not of "the same status as the 'laws' referenced in § 1983." *Inyo Cnty.*, 538 U.S. at 713 (Stevens, J., concurring) (quoting 42 U.S.C. § 1983).

## VIII.   VENUE IN OKLAHOMA IS IMPROPER

Defendants believe that this Court lacks jurisdiction and that Plaintiff's claims lack any merit and should be dismissed.   *Cf. Schecher v. Purdue Pharma L.P.*, 317 F. Supp. 2d 1253, 1256 (D. Kan. 2004) ("Because a court may only transfer a case to a venue where the case could have been brought originally, this Court must necessarily address plaintiff's contention that subject matter jurisdiction is lacking before reaching the motion to transfer.").   Should this Court disagree, Defendants respectfully submit that this case should be dismissed because Oklahoma is not a proper venue for these proceedings.   *See* Fed. R. Civ. P. 12(b)(3).

Plaintiff bears the burden of establishing that this Court is a proper venue for this action.  *See, e.g.*, *Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, 2010 WL 582205, at *3 (N.D. Okla. Feb. 10, 2010).  "[V]enue statutes are generally designed for the benefit of defendants, and in determining what events or omissions give rise to a claim the focus [is] on relevant activities of the defendant, not of the plaintiff." *Nagim v. Jackson*, 2010 WL 4318896, at *3 (D. Colo. Aug. 10, 2010), *report and recommendation adopted*, 2010 WL 4318888 (D. Colo. Oct. 25, 2010) (quotation marks omitted).  None of the named Defendants reside in Oklahoma, and the Complaint "concern[s] actions that occurred or arose in" Connecticut.  *Id*.  Therefore, "venue is clearly improper in" Oklahoma.  *Id.*

The Supreme Court addressed an analogous venue issue in *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185-86 (1979), and held that where a claim arises out of *inter alia* the enforcement of state law against an entity located in another state venue is proper only in the enforcing state, here Connecticut.  Under those circumstances, it is the actions in the enforcing state that that provide the basis for the federal claim and it is preferable for the federal court addressing the issues to be familiar with the state's law. *Id*. at 186.

The Supreme Court's decision in *Stafford v. Briggs*, 444 U.S. 527 (1980), likewise supports a holding that Connecticut is the only proper venue for this action.  In *Stafford*, the Court recognized the unique venue concerns posed by "[s]uits for money damages for which an individual officeholder may be found liable," and held that they counseled

24

against forcing those officeholders—especially retired ones such as Defendant Pitkin—from being forced to defend in distant venues. *Id*. at 544-45.

## IX.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss this action in its entirety.

Respectfully submitted,

s/ Amy J. Pierce
JOE M. HAMPTON, OBA No. 11851
AMY J. PIERCE, OBA No. 17980
**Corbyn Hampton, PLLC**
One Leadership Square, Suite 1910
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone:  (405) 239-7055
Facsimile:  (405) 702-4348
jhampton@corbynhampton.com
apierce@corbynhampton.com

Robert J. Deichert (ctdc24956)
Assistant Attorney General
Connecticut Attorney General's Office
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
860-808-5020 (phone)
        860-808-5347 (fax)
Robert.Deichert@ct.gov
(pending *pro hac vice* motion)

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2015, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*/s/ Amy J. Pierce*_____
Amy J. Pierce