Robert Rosette (*Pro Hac Vice pending*)
Saba Bazzazieh (*Pro Hac Vice pending*)
ROSETTE, LLP
1100 H St. N.W., Ste. 400
Washington, D.C. 20005
(202) 652-0579
(202) 525-5261
rosette@rosettelaw.com
sbazzazieh@rosettelaw.com

Anthony Jannotta (CT Bar No. 411982)
Dentons US LLP
1301 K Street, N.W.
Ste. 600, East Tower
Washington, D.C. 20005
(202) 408-5546
anthony.jannotta@dentons.com

Attorneys for Plaintiffs

| | | |
|---|---|---|
| **GREAT PLAINS LENDING, LLC;** | : | **Case No.** |
| **JOHN R. SHOTTON; CLEAR** | : | |
| **CREEK LENDING,** | : | **SUPERIOR COURT** |
| | : | |
| Plaintiffs, | : | **JUDICIAL DISTRICT OF NEW BRITAIN** |
| **vs.** | : | |
| | : | |
| | : | **JANUARY 23, 2015** |
| **CONNECTICUT DEPARTMENT OF** | : | |
| **BANKING; HOWARD F. PITKIN**, in | : | |
| his official capacity as the Commissioner | : | |
| of the Department of Banking; **BRUCE** | : | |
| **ADAMS**, in his official capacity as | : | |
| Acting Commissioner of the Department | : | |
| of Banking, | : | |
| | : | |
| Defendants. | | |

## COMPLAINT
### (Conn. Gen. Stat. § 4-183(a))

Plaintiffs Great Plains Lending, LLC ("Great Plains"), Clear Creek Lending ("Clear

Creek"), and John R. Shotton (collectively, "Plaintiffs"), hereby bring this action, pursuant to

Section 4-183(a) of the Connecticut General Statutes, to contest an unlawful decision of the Commissioner of the State of Connecticut Department of Banking ("Department"), denying Plaintiffs' Motion to Dismiss administrative enforcement proceedings and the Department's Order to Cease and Desist and Order Imposing Civil Penalties, issued in conjunction therewith, dated January 6, 2015.  Because the Department's actions against Plaintiffs—the elected Chairman of the Otoe-Missouria Tribe of Indians, a federally-recognized Indian tribe ("Tribe") and two of the Tribe's wholly owned and operated businesses—were taken in direct contravention of applicable federal and state law, this Court must vacate the underlying administrative action and permanently enjoin the Department's unjustified and impermissible exercise of regulatory jurisdiction.

## NATURE OF THE ACTION

1.    On January 6, 2015, the Department's Commissioner, Howard F. Pitkin ("Commissioner"), issued a ruling denying Plaintiffs' Motion to Dismiss, stating that the Department "may proceed with [the administrative] action" against Plaintiffs ("Decision," attached hereto as **Exhibit A**).  Hours later, the Department issued to Plaintiffs' legal counsel an Order to Cease and Desist and Order Imposing Civil Penalty ("Order," attached hereto as **Exhibit B**) (the Decision and Order are collectively referred to as the "Final Decision").  The Final Decision held that the Department had regulatory and adjudicative jurisdiction over Plaintiffs—notwithstanding the fact that one named Plaintiff is an elected Tribal official who, at all times relevant hereto, was acting in his official capacity, and the other two named Plaintiffs which are wholly owned entities of a federally recognized Indian tribe.  Finding that he had jurisdiction over Plaintiffs, the Commissioner further found that Plaintiffs committed various violations of Connecticut banking law, and subsequently ordered Plaintiffs to cease and desist operation of their businesses in the state of Connecticut and purported to impose civil penalties upon each of the Plaintiffs, including the Tribe's Chairman—who once again at all times, has acted solely in his official capacity.  As the Commissioner fundamentally erred in the denial of

the Plaintiffs' dispositive Motion to Dismiss and the Department lacked and continues to lack regulatory jurisdiction over Plaintiffs, the instant action is brought to seek judicial relief from the Final Decision pursuant to the Connecticut Uniform Administrative Procedures Act ("UAPA") and § 36a-1-54 of the Regulations of Connecticut State Agencies.[1]

## JURISDICTION

2.    This Court has subject matter jurisdiction over this administrative appeal pursuant to § 4-183 of the UAPA.

## PARTIES

3.    Plaintiff Great Plains Lending, LLC ("Great Plains") is a limited liability company wholly owned and operated by, and formed and regulated under the laws of, the Otoe-Missouria Tribe of Indians (the "Tribe"), which is a federally recognized Indian tribe located in Red Rock, Oklahoma.

4.    Plaintiff Clear Creek Lending ("Clear Creek") is a d/b/a of American Web Loan, Inc., a corporation wholly owned and operated by, and formed and regulated under the laws of the Tribe.

5.    Plaintiff John R. Shotton is the Secretary and Treasurer of Great Plains and Clear Creek, as well as the duly elected Chairman of the Tribal Council, the Tribe's governing body. He has served in such official capacity at all relevant times related to the Final Decision and the Department's unlawful assertion of jurisdiction.

---

[1] Great Plains Lending, LLC, Clear Creek Lending and John R. Shotton, bring this action for the limited purpose of contesting the Department's jurisdiction in the underlying administrative proceeding.  Such limited or special appearance shall not be construed as waiving any arguments that the Plaintiffs have with regard to their sovereign immunity or the Department's lack of jurisdiction. Indeed, courts have routinely recognized that a sovereign's limited appearance in legal proceedings for the purpose of seeking dismissal for lack of jurisdiction does not waive any claims to sovereign immunity.  *See e.g., Kansas v. United States,* 249 F.3d 1213, 1220 (10th Cir. 2001); *Zych v. Wrecked and Abandoned Vessel*, 960 F.2d 665, 667-68 (7th Cir. 1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians, et al. v. Norton,* 327 F.Supp.2d 995, 1000 (W.D. Wis. 2004); *Wyandotte v. Kansas City,* 200 F.Supp.2d 1279, 1287 (D.Kan. 2002); *Miami Tribe of Okla. v. Walden,* 206 F.R.D. 238 (D. Ill. 2001).

COMPLAINT

(Conn. Gen. Stat. § 4-183(a))

6.      Defendant Connecticut Department of Banking ("Department") is an executive branch agency of the State of Connecticut subject to the UAPA, whose principal place of business is located at 260 Constitution Plaza, Hartford, Connecticut.

7.      Defendant Howard F. Pitkin, sued in his official capacity, is the Commissioner of the Department and serves as the Presiding Officer in certain contested cases at the departmental level, whose principal place of business is located at 260 Constitution Plaza, Hartford, Connecticut.

8.      Defendant Bruce Adams, sued in his official capacity, is the Acting Commissioner of the Department and serves as the Presiding Officer in certain contested cases at the departmental level, whose principal place of business is located at 260 Constitution Plaza, Hartford, Connecticut.

## FACTUAL ALLEGATIONS

### A.    Tribal Sovereignty and Immunity

9.      Indian tribes, as self-governing entities that have existed in North America since before European contact, exercise inherent sovereignty.  That is, their authority to self-govern predates and is not derived from, or dependent upon, the United States Constitution.

10.     Tribal sovereignty, though inherent, is still subject to defeasance at the hands of Congress, as Congress exercises plenary power over Indian affairs.  *See* U.S. Const., Art. I, § 8, cl. 2; *United States v. Kagama*, 118 U.S. 375 (1886).  However, it is Congress alone that has the ability to diminish tribal sovereignty in any capacity.  Unless authorized by Congress, state government agencies have no authority to invade the sovereignty of an Indian tribe by unilaterally imposing their laws upon the tribe.  *See* Pub. L. 83-280, codified in part at 18 U.S.C. § 1162 (congressional authorization for certain states to exercise criminal jurisdiction in Indian country).

11.     Among the "core aspects" of tribal sovereignty is immunity from suit.  *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2030 (2014).  Like all aspects of tribal

sovereignty, immunity is subject to congressional action, meaning that Congress has the ability to abrogate tribal sovereign immunity, but until Congress takes action to do so, that immunity remains intact.

12.     Tribal sovereign immunity extends to a tribe's commercial activities, whether those activities take place on- or off-reservation. *Kiowa Tribe of Okla. v. Mfg. Techs.*, 523 U.S. 751.   It further extends to tribal officers acting in their official capacity. *See Romanella v. Hayward*, 933 F. Supp. 163, 167 (D. Conn. 1996).

**B.      The Tribe's Wholly-Owned Businesses**

13.     On February 10, 2010, pursuant to its authority under the Tribe's Constitution and the Otoe-Missouria Tribe of Indians Corporation Act, the Tribal Council enacted Tribal law through Resolution OMTC #210561, creating American Web Loan, Inc. as a wholly owned corporate entity of the Tribe and arm of the Tribe, which does business as Clear Creek Lending ("Clear Creek").

14.     On May 4, 2011, pursuant to its authority under the Tribe's Constitution and the Otoe-Missouria Tribe of Indians Limited Liability Compact Act, the Tribal Council passed Resolution OMTC #54293, creating Great Plains Lending, LLC as a wholly owned corporate entity of the Tribe and arm of the Tribe ("Great Plains").

15.     As their primary business activity, Great Plains and Clear Creek offer small-dollar loans over the Internet to certain consumers who meet the businesses' underwriting criteria.

16.     To ensure that any lending activities conducted by the Tribe were properly authorized and regulated under the Tribe's laws, the Tribe enacted the Otoe-Missouria Consumer Finance Services Regulatory Ordinance ("Ordinance"), which vests proper oversight and jurisdiction for the Tribe's lending activities in the Otoe-Missouria Consumer Finance Services Regulatory Commission ("Commission")—a governmental regulatory entity responsible for the enforcement of the Tribe's laws, including adherence to applicable federal consumer protection laws.

17.    The Commission enforces the Ordinance through proper oversight and enforcement mechanisms authorized under Tribal law.

18.    Both Great Plains and Clear Creek were formed as arms of the Tribe and were established to further the Tribe's interest in self-sufficiency, a goal that Congress has formally codified as federal policy. *See* 25 U.S.C. § 4301(a)(6) ("[T]he United States has an obligation to guard and preserve the sovereignty of Indian tribes in order to foster strong tribal governments, Indian self-determination, and economic self-sufficiency among Indian tribes.").

19.    Tribal law specifies that businesses wholly owned by the Tribe "shall be considered to be instrumentalities and arms of the Tribe, and their officers and employees considered officers and employees of the Tribe, created for the purpose of carrying out authorities and responsibilities of the Tribe for economic development of the Tribe and advancement of its citizens." *See* Otoe-Missouria Tribe Limited Liability Company Act, § 913, attached as **Exhibit C**.

20.    The Tribe exercises ultimate control over both Great Plains and Clear Creek. Members of the Boards of Directors for both Great Plains and Clear Creek may be removed by the Tribal Council, the Tribe's governing body, at any time, with or without cause.

21.    Chairman Shotton, as Secretary/Treasurer of Great Plains and Clear Creek, and as Chairman of the Tribe, is responsible for ensuring that Great Plains and Clear Creek engage in business in a responsible and profitable manner for the benefit of the Tribe. He is not an owner of the businesses and in no manner individually profits from the businesses; rather, it is the Tribe that is the sole owner of both Great Plains and Clear Creek, and it is the Tribal government that realizes the profits, ultimately for the benefit of its Tribal members. Chairman Shotton's only duties with respect to Great Plains and Clear Creek are those delegated to him expressly by Tribal law. Chairman Shotton also serves as the elected leader of the Tribe's governing body, its Tribal Council, and is vested with decision-making and governance authority pursuant to the Tribe's Constitution.

COMPLAINT
(Conn. Gen. Stat. § 4-183(a))

22.    All revenues of the Tribe's lending businesses inure to the benefit of the Tribal government and, in turn, are used for the benefit of the Tribe's citizens pursuant to Tribal law and the formation documents of Great Plains and Clear Creek.

**C.    *The Department's Attempt to Exercise Jurisdiction Over Tribal Entities and the Tribe's Elected Official Acting Solely In His Official Capacity***

23.    Beginning around or before late 2013, the Department began its attempts to assert regulatory jurisdiction over the Tribe and its lending entities.

24.    The Department's regulatory efforts initially consisted of sending a single letter to Great Plains concerning a single consumer loan, and alleging violations of Connecticut law related thereto.

25.    Upon receipt of this correspondence, Great Plains, through counsel, responded to the Department via written correspondence, explaining to it that Great Plains is "regulated pursuant to the laws of the Tribe and, accordingly, maintains its own regulated process . . . ." .

26.    In its response, Great Plains further informed the Department that it sought "to maintain a productive government to government relationship with the state of Connecticut to ensure that the complaints of its constituents are appropriately resolved.  In doing so, Great Plains offered to meet with the Department of Banking to discuss how to establish a protocol that will best address these issues moving forward."

27.    Despite the Tribe's attempt to build a productive government-to-government relationship with the State of Connecticut, neither the Department nor any other agency or subdivision of the State attempted to establish a cooperative protocol or mechanism to address the Department's grievances.

28.    Instead, on October 24, 2014, the Department initiated an administrative action against Great Plains, Clear Creek, and Chairman Shotton, through the issuance of a "Temporary Order to Cease and Desist; Order to Make Restitution; Notice of Intent to Issue Order to Cease

and Desist; Notice of Intent to Impose Civil Penalty; and Notice of Right to Hearing" ("Initial Order," attached hereto as **Exhibit D**).

29.     On November 10, 2014, Plaintiffs filed a motion to dismiss the administrative proceedings for lack of personal and subject matter jurisdiction ("Motion to Dismiss").  *See* Memorandum of Points and Authorities in Support of Motion to Dismiss, attached hereto as **Exhibit E**.

30.     The Department filed an objection on November 19, 2014, and Plaintiffs filed their reply on November 26, 2014.

31.     It is important to note that within their pleadings filed to dismiss the Department's actions on jurisdictional grounds, Plaintiffs expressly reserved the right to later make arguments in response to the merits of the Department's claims, stating that for the Department to render a decision on the merits, based on acceptance of their own allegations as truth, would constitute a clear violation of the Plaintiffs' procedural due process rights.  *See* Reply in Support of Motion to Dismiss, p. 10, fn. 3, attached hereto as **Exhibit F**.

32.     On January 6, 2014, Commissioner Pitkin issued a ruling denying the Motion to Dismiss, holding that sovereign immunity did not protect Plaintiffs because the administrative proceedings against them could be considered a "suit," and are instead "purely administrative and outside of any judicial process."  *See* Exhibit A, Decision at 8.

33.     In addition to finding that sovereign immunity did not apply—and despite the fact that Plaintiffs were never given an opportunity to brief the issue—the Commissioner found that Connecticut substantive law applied to the lending activities of tribal businesses.  Of course, this issue is separate and apart from the issue presented in the Motion to Dismiss—the defense of sovereign immunity—and cannot and should not be considered in the analysis as to Plaintiffs' immunity from the Department's administrative actions.

…

…

### FIRST CAUSE OF ACTION

**(Arbitrary, Capricious, and Clearly Erroneous Refusal to Recognize Tribal Immunity)**

34.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 33 above as if fully set forth herein.

35.    Under long-standing state and federal authority, Plaintiffs Great Plains and Clear Creek, as arms of a federally recognized Indian tribe, and Plaintiff Chairman Shotton, as a Tribal official acting in his official capacity, have immunity from administrative enforcement actions, including "contested cases" initiated by the Department.

36.    The refusal of the Commissioner to recognize Plaintiffs' immunity has prejudiced Plaintiff's substantial rights.    This refusal to recognize Plaintiffs' immunity is arbitrary, capricious, and an error of law that has severely damaged Plaintiffs' sovereign rights, inflicting governmental, financial and reputational harm, directly and proximately caused by Defendants and the Final Decision.

### SECOND CAUSE OF ACTION

**(Violation of Procedural Due Process)**

37.    Plaintiffs hereby incorporate by reference the allegations in paragraphs 1 through 36 above as if fully set forth herein.

38.    Plaintiffs' Motion to Dismiss was limited to jurisdictional issues, namely, sovereign immunity from administrative enforcement actions.  Plaintiffs expressly reserved their right to contest the charges against them in the event their Motion to Dismiss would be denied.

39.    The Commissioner issued the Decision and Order simultaneously despite the fact that Plaintiffs were not provided with an opportunity to contest the merits of the claims made against them.

40.    The Order, if enforced, will deprive Plaintiffs of their constitutionally protected liberty and property interests.

41.    In issuing the Order, the Department has prejudiced Plaintiffs' right to contest the charges against them, violating their rights to procedural due process under the Fourteenth Amendment to the United States Constitution and Article First, §§ 8 and 10 of the Connecticut Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request from this Court:

1.    An order vacating Commissioner Pitkin's Ruling on Motion to Dismiss and the Department's Order to Cease and Desist and Order Imposing Civil Penalty directed toward Plaintiffs, for lack of personal and subject matter jurisdiction.

2.    An order enjoining Defendants from pursuing enforcement actions over the Plaintiffs related to the Department's Order to Cease and Desist and Order Imposing Civil Penalty.

3.    An award of costs, expenses and reasonable attorneys' fees and expenses pursuant to C.G.S.A. § 4-184a; and

4.    Such other costs as the Court may deem just and equitable.

5.    Such additional relief as the Court may conclude is equitable and appropriate.

Dated:    January 23, 2015          RESPECTFULLY SUBMITTED,


                                    ROSETTE, LLP
                              By:  /s/ Saba Bazzazieh
                                    Robert Rosette (*Pro Hac Vice pending*)
                                    Saba Bazzazieh (*Pro Hac Vice pending*)
                                    ROSETTE, LLP
                                    1100 H St., NW, Suite 400
                                    Washington, D.C. 20005
                                    (480) 240-0238
                                    rosette@rosettelaw.com
                                    sbazzazieh@rosettelaw.com

COMPLAINT
(Conn. Gen. Stat. § 4-183(a))

1

/s/ Anthony Jannotta
Anthony Jannotta (CT Bar No. 411982)
Dentons US LLP
1301 K. Street, NW
Suite 600, East Tower
Washington, D.C.  20005
(202) 408-5546
anthony.jannotta@dentons.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT
(Conn. Gen. Stat. § 4-183(a))

# EXHIBIT A



STATE OF CONNECTICUT

## DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800

Howard F. Pitkin
Commissioner

```
* * * * * * * * * * * * * * * * * * * * * * *
                                            *
IN THE MATTER OF:                           *
                                            *
GREAT PLAINS LENDING, LLC                   *
("Great Plains")                            *
                                            *
JOHN R. SHOTTON                             *      COMMISSIONER'S RULING
("Shotton")                                 *      ON MOTION TO DISMISS
                                            *
CLEAR CREEK LENDING                         *
("Clear Creek")                             *
                                            *
    (collectively, "Respondents")           *
                                            *
* * * * * * * * * * * * * * * * * * * * * * *
```

On October 24, 2014, I issued a Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing (collectively, "Notice") in the Matter of: Great Plains Lending, LLC, John R. Shotton and Clear Creek Lending. On November 12, 2014, Respondents filed a Notice of Motion and Motion to Dismiss Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing together with a Memorandum of Points and Authorities in Support of Specially Appearing Respondents' Motion to Dismiss Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty, and Notice or Right to Hearing, for Lack of Personal and Subject Matter Jurisdiction ("Motion to Dismiss"). On November 19, 2014, the Department of Banking ("Department") filed an Objection to Motion to Dismiss ("Objection") and, on November 26, 2014, Respondents requested leave and filed a Reply in Support of Motion to Dismiss Administrative Proceedings ("Reply"). I have considered the Reply in deciding this Motion to Dismiss,

although I am not required to do so under the Connecticut Uniform Administrative Procedure Act or applicable regulations. As discussed below, the Motion to Dismiss is **denied**.

This administrative action stems from the Department's allegations that Respondents violated Connecticut's small lending laws by engaging or participating in the following conduct in the state of Connecticut: (1) making, offering or assisting Connecticut residents to obtain loans in amounts less than $15,000 with annual interest rates ranging from 199.44% to 448.76% that far exceed what is allowed under Sections 36a-555 and 36a-573 of the Connecticut General Statutes,[1] and (2) issuing such loans to at least three Connecticut residents. (Notice at 4-5.) Respondents seek dismissal claiming that the Department lacks jurisdiction over Respondents because tribal sovereign immunity "extends to all aspects of the judicial process, including administrative proceedings" and shields Respondents from this administrative action (Mot. Dismiss at 6.)[2] The Department counters that tribal sovereign immunity "applies to 'suits' instituted against tribes, and does not apply to orders issued by a regulatory body, such as this Department, that demand compliance by . . . [a tribe] with generally applicable state laws." (Obj. at 2.) Respondents reply that "this case very clearly is an adversarial action brought in a judicial forum" and, notably, further assert that the Department's action is both an "attempt to circumvent the protections of tribal sovereign immunity" and an "affront to tribal sovereignty." (Reply at 1.)

I have the authority to decide a motion to dismiss pursuant to Section 36a-1-27(5) of the Regulations of Connecticut State Agencies. In the absence of any regulatory or statutory standard of review for such motions in a contested case in this forum, the Department has traditionally adopted the standard utilized for such motions when they are made in Connecticut courts. The standard for a motion to dismiss has been articulated by the Connecticut Supreme Court as follows: "A motion to dismiss . . .

---

[1]"No person shall (1) engage in the business of making loans of money or credit; [or] (2) make, offer, broker or assist a borrower in Connecticut to obtain such a loan . . . through any method . . . in the amount . . . of fifteen thousand dollars or less . . . and charge . . . a greater rate of interest . . . than twelve per cent per annum . . . ." Conn. Gen. Stat. Sec. 36a-555. "No person . . . shall . . . charge . . . any interest . . . greater than twelve per cent per annum upon the loan . . . of . . . fifteen thousand dollars or less . . . ." Conn. Gen. Stat. Sec. 36a-573(a).

[2]Respondents argue that Great Plains and Clear Creek, as instrumentalities of the Otoe-Missouria Tribe of Indians, and Mr. Shotton, as the Tribal Chairman, are entitled to the same immunities as the Tribe. I need not address this argument for purposes of deciding this motion because I find that the Department has jurisdiction over each Respondent irrespective of tribal status.

properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court . . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." *State v. Haight,* 279 Conn. 546, 550, 903 A.2d 217 (2006).[3] "Moreover, [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . ." *McIntosh v. Sullivan,* 274 Conn. 262, 267 (2005) (quoting *Filippi v. Sullivan,* 273 Conn. 1, 8 (2005)). When a court "decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light" and "must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." *Id.*

## DISCUSSION

As the Second Circuit recently noted in a case remarkably similar in almost every factual respect to this one, this case "arises from a conflict between two sovereigns' attempts to combat poverty within their borders." *Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services,* 769 F.3d 105, 107 (2014) ("*Otoe II*"). In this case, Respondents include Shotton, the Tribal Chairman of the Otoe-Missouria Tribe of Indians ("Tribe"), and two online lending companies that appear to be established by the Tribe "for the purpose of Tribal economic development and to aid in addressing issues of public health, safety, and welfare." (Mot. Dismiss at 3.) On the other hand, Connecticut's consumer transaction and small loans interest rate statutes embody a "general policy . . . 'to prevent overbearing lenders and commercial entrepreneurs from exploiting impecunious borrowers and consumers who lack bargaining power.'" *Gilmore v. Pawn King, Inc.,* 313 Conn. 535, 546 (2014), quoting *Rhodes v. City of Hartford,* 201 Conn. 89, 98-99 (1986).

---

[3]Respondents also cite authority for the proposition that the party asserting jurisdiction must allege all facts necessary to establish it. (Mot. Dismiss at 4, citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). I find that the Department's factual allegations are sufficient to establish jurisdiction.

The Respondents argue very broadly that "tribal sovereign immunity" destroys the Department's jurisdiction to maintain this administrative action. Immunity from suit, as a necessary corollary of tribal sovereignty, obligates me to discuss the more general protections afforded Respondents by tribal sovereignty before discussing any particular impact that immunity from suit may have on this action. As discussed below, neither tribal sovereignty nor immunity from suit supports the Motion to Dismiss.

## Tribal Sovereignty

In this case, the protections afforded by tribal sovereignty rest upon "whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee*, 358 U.S. 217, 220 (1959). "The traditional notions of Indian sovereignty provide a crucial 'backdrop' against which any assertion of state authority must be assessed." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334 (1983) (internal citation omitted) ("*New Mexico*"). Tribal sovereignty, however, "contains a 'significant geographical component.'" *Id.* at 336 n. 18 (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 151 (1980).

> [T]he State's power to regulate activity will differ depending on where a statute applies and whom the statute targets. For example, absent specific permission from Congress, states have no power to regulate the affairs of Indians on a reservation. On the other hand, absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State. Between these two poles, if a state seeks to regulate non-Indians doing business with a tribe on the tribe's reservation, state law will apply unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law.

*Otoe-Missouria Tribe of Indians v. New York State Dept. of Fin. Services*, 974 F. Supp. 2d 353, 359-60 (S.D.N.Y. 2013) *aff'd*, 769 F.3d 105 (2d Cir. 2014) *("Otoe I")* (internal citations, quotes, and punctuation omitted).

"Thus, the off-reservation activities of Indians are generally subject to the prescriptions of a 'nondiscriminatory state law' in the absence of 'express federal law to the contrary.'" *New Mexico*, 462 U.S. at 336 n. 18 quoting *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-149 (1973) ("*Mescalero*"). The Second Circuit has stated this rule most recently:

> The breadth of a state's regulatory power depends on two criteria—the location of the targeted conduct and the citizenship of the participants in that activity. <u>Native Americans "going beyond the reservation boundaries" must comply with state laws</u> as long as those laws are "non-discriminatory . . . [and] otherwise applicable to all citizens of [that] State."

*Otoe II*, 769 F.3d 105 at 113 (emphasis added).

### Location and Effects of Alleged Conduct

The "first step in assessing the State's regulatory power is to determine whether the activity that the State is seeking to regulate is taking place on Tribal land or off it." *Otoe I*, 974 F. Supp. 2d at 360. Respondents have elected to remain silent as to the location and effects of their Connecticut lending activity, choosing instead to rely on the more diffuse argument that their "sovereign immunity" destroys the Department's jurisdiction. (Reply at 8 n. 1 and 9-10.) Their failure to argue—even in the alternative—that their activity does not take place in Connecticut leaves the Department's allegations to stand alone unchallenged.

Taking the factual allegations in the Notice as true and viewing them in the light most favorable to the Department:

1) Connecticut consumers received offers from Great Plains offered via U.S. Mail, e-mail and its website at their Connecticut residences (Notice at 4, ¶ 7);

2) Connecticut consumers received solicitations at their Connecticut addresses from Clear Creek via its website (Notice at 5, ¶ 13);

3) Connecticut consumers received loan proceeds by electronic deposit into their bank accounts (Notice at 5, ¶¶ 9-11);

4) Great Plains electronically withdrew money from Connecticut consumers' bank accounts (Obj. at 4);

5) Connecticut consumers signed their loan agreements electronically while physically present in the state of Connecticut (Notice at 5, ¶ 12); and

6) "[A]t no time did Connecticut residents leave the physical boundaries of this state or enter the physical boundaries of the Reservation to receive a Consumer loan." (Notice at 5, ¶ 12.)

Therefore, for purposes of this Motion to Dismiss, this activity occurs off-reservation and in Connecticut.

*McIntosh*, supra 274 Conn. 262.

Connecticut's regulatory interest will not be destroyed even if some related conduct occurs on-reservation. *New Mexico*, 462 U.S. at 336 (State's regulatory interest is <u>particularly substantial</u> if State can point to off-reservation <u>effects</u> that necessitate State intervention.)  I make special mention of the Court's discussion on this point in *Otoe II*.  There, the Court stated that "[e]ven if we concluded that the loan is made where it is approved, the transaction New York seeks to regulate involves the collection as well as the extension of credit, and that collection clearly takes place in New York."  Here in Connecticut, as in New York, Respondents (at least with respect to Great Plains Lending) reach into borrowers' bank accounts to make withdrawals.  See *Otoe II* 769 F.3d 105 at 115.

### General Applicability of State Laws at Issue

In order for the Department's jurisdiction to remain intact, the state laws at issue must be laws of general applicability, cannot be discriminatory, and must apply to all citizens of the state.  *New Mexico*, 462 U.S. at 336 n.18; *Mescalero*, 411 U.S. at 148-49; *Otoe II*, 769 F.3d at 113.

In this case, the Department alleges violations of Sections 36a-555(1), 36a-555(2) and 36a-573(a) of the Connecticut General Statutes.  Subdivisions (1) and (2) of Section 36a-555 of the Connecticut General Statutes, plainly stated, prohibit anyone without the required license from making loans in the amount of $15,000 or less through any method (specifically including the Internet) at an interest rate greater than 12% per year to borrowers in Connecticut.  (Notice at 7, ¶¶ 1-3, 7.)  Section 36a-573 of the Connecticut General Statutes, plainly stated, prohibits any person from enforcing or participating in any way in the enforcement of a loan in the amount of $15,000 or less and charging an interest rate greater than 12% per year.  These laws set limits on the type of loans unlicensed persons can make to Connecticut borrowers and the enforceability of such loans, but are generally applicable to all lenders and operate to protect all Connecticut borrowers.[4]

Accordingly, the Department has alleged sufficient facts and law to defeat Respondents' assertion of tribal sovereignty as an absolute jurisdictional defense.  Perhaps most fundamentally, neither the

---

[4]In an ironic twist, Section 36a-555 would also prohibit a Connecticut company from making similar loans over the Internet to tribal borrowers on tribal land.

present action nor the application of these statutes to Respondents infringe on the "right of reservation Indians to make their own laws and be ruled by them." *Williams*, 358 U.S. at 220. The lending activities at issue here are online lending companies. At this point in this case, they appear indistinguishable from any other online lender but for the fact that a tribe created them by passing a law. To say that it is a valid exercise of sovereign power for a tribe to endow those companies with the competitive advantage of immunity from regulation inside the sovereign states where they operate is to say a tribe has sovereign right to legislate the reach of its own sovereign immunity. Tribal legislation of this sort appears far "beyond what is necessary to protect tribal self-government or to control internal relations . . . ." *See, e.g., Montana v. United States*, 450 U.S. 544, 546 (1981).

### Immunity from Suit

The question remains as to the impact of tribal immunity from suit on the Department's jurisdiction. "Among the core aspects of sovereignty that tribes possess—subject, again, to congressional action—is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" *Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Immunity from suit stands for the proposition that even if the conduct at issue violates a law, the immune actor cannot be sued in a court of law for the violation. It is not a justification for their conduct. It is, in playground-speak, the "You Can't Catch Me" defense. Immunity from suit, however, does not give a tribe permission to break the law; it still remains obligated to comply with the law whether or not the state has the power to enforce it. "[A] State may have authority to tax or regulate tribal activities occurring within the State but outside Indian country. . . . There is a difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 755 (1998). Accordingly, if the present administrative action is something other than a suit, the Department's jurisdiction to "catch" the Respondents remains intact. I have already found that tribal sovereignty does not protect the Respondents

from the administrative reach of the Department and I find no compelling reason to conclude that the present administrative action is a suit from which Respondents can claim immunity.

As noted above, the Supreme Court, in defining immunity from suit, has clearly articulated that there is a "difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa*, 523 U.S. at 755. Immunity from suit limits the enforcement options a state may have against a tribe by removing litigation in a court of law as an option. In the context of this administrative action as well as that of Connecticut state agencies in general, my authority to issue the Notice against Respondents is purely administrative and outside of any judicial process. To the extent that I issue an order against a respondent and the respondent fails to comply with the order, I could refer the matter to the State Attorney General to enforce my order in the judicial forum. Every step before referral to the Attorney General, however, remains entirely within the Department and does not use or expend any judicial resources.

Respondents assert a distinction between the Department's *regulatory* jurisdiction and its *adjudicatory* jurisdiction in order to argue, in essence, that there is no difference between an actual suit and any other attempt by an administrative agency to require compliance with state laws. (Reply at 10.)[5] This is a false distinction that grossly contorts the Supreme Court precedent expressly recognizing a state's authority to regulate off-reservation commercial activity occurring within its borders. To agree with Respondents is to pretend that the Supreme Court never recognized a state's authority to regulate tribal activities. In more visceral terms, Respondents' untenable position here would, with one hand, give Connecticut some illusory authority to "regulate" certain off-reservation tribal activity, but with the other

---

[5]Respondents rely heavily on *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743 (2002), for the proposition that this administrative action is legally indistinguishable from a suit because "proceedings before the Department bear striking similarity to civil litigation." (Reply at 3.) I am not persuaded that *Federal Maritime* is applicable here. The fact that this administrative action is called a "contested case," has an "adversarial nature," uses a neutral fact finder called a "presiding officer" and employs Rules of Practice that lay out procedures bearing a "strong resemblance to civil litigation" do not make this action more than it is. *Id.* Black's Law Dictionary defines "suit" as "[a]ny proceeding by a party . . . against another *in a court of law.*" *Black's Law Dictionary* 1448 (7th ed. 1999) (emphasis added). Black's defines "administrative proceeding" as a "hearing, inquiry, investigation, or trial before an administrative agency . . . [usually] adjudicatory in nature. . . ." *Black's* at 46. Just because two things look "strikingly similar" (such as the homoglyph rn next to the letter m) does not make them the same. Such is the case here; the key differences are easily revealed upon a closer look.

hand, rip from Connecticut's sovereign mouth any teeth sharp enough to hold a tribe, its officials or its commercial entities accountable for illegal activity in Connecticut.

## CONCLUSION

Respondents accuse Connecticut of unlawfully ignoring the Tribe's independent status and hindering the Tribe's ability to provide for its members and manage its own internal affairs. (Motion to Dismiss at 1.) Such an accusation could just as easily have been levied at Respondents. Could it be they who are unlawfully ignoring *Connecticut's* independent status and its ability to provide for its citizens and manage its own affairs? The attempts by each sovereign to manage its own internal affairs by combating poverty within its borders have collided in this case. While Congress and the courts may in the future decide to permit tribes to be sued in a court for off-reservation commercial activity, Respondents remain obligated to comply with the state laws at issue here and the Department may proceed with this action.

On the face of the record and as a matter of law, the Department has alleged sufficient facts to state a claim for violations of Connecticut law under its jurisdiction. In my view of the law regarding tribal sovereignty and tribal immunity from suit, the Department has also made sufficient allegations to establish its jurisdiction over Respondents. For these reasons and pursuant to the authority granted to me by Section 36a-1-27(5) of the Regulations of Connecticut State Agencies, Respondents' Motion to Dismiss is **DENIED.**

So ordered at Hartford, Connecticut
this _6th_ day of January 2015.

Howard F. Pitkin
Banking Commissioner

**EXHIBIT B**



STATE OF CONNECTICUT

**DEPARTMENT OF BANKING**

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800



Howard F. Pitkin
Commissioner

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|                                              |     |                                      |
|----------------------------------------------|-----|--------------------------------------|
| **IN THE MATTER OF:**                        | \*  |                                      |
| **GREAT PLAINS LENDING, LLC** ("Great Plains") | \*  | **ORDER TO CEASE AND DESIST**        |
| **JOHN R. SHOTTON** ("Shotton")              | \*  | **AND**                              |
| **CLEAR CREEK LENDING** ("Clear Creek")      | \*  | **ORDER IMPOSING CIVIL PENALTY**     |
| (collectively, "Respondents")                | \*  |                                      |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. PRELIMINARY STATEMENT

**WHEREAS,** the Banking Commissioner ("Commissioner") is charged with the administration of Part III of Chapter 668, Sections 36a-555 to 36a-573, inclusive, of the Connecticut General Statutes, "Small Loan Lenders", and the regulations adopted thereunder, Sections 36a-570-1 to 36a-570-17, inclusive, of the Regulations of Connecticut State Agencies;

**WHEREAS,** the Commissioner, through the Consumer Credit Division of the Department of Banking, conducted an investigation of the activities of Respondents, pursuant to the authority granted by Section 36a-17 of the Connecticut General Statutes, as amended by Public Acts 14-7 and 14-89, to determine if they had violated, were violating or were about to violate the provisions of the Connecticut General Statutes within the jurisdiction of the Commissioner;

**WHEREAS,** on October 24, 2014, the Commissioner, acting pursuant to Sections 36a-52(b), 36a-50(c), 36a-573(c), 36a-52(a) and 36a-50(a) of the Connecticut General Statutes, issued a Temporary Order to Cease and Desist, Order to Make Restitution ("Order to Make Restitution"), Notice of Intent to

Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing (collectively "Notice") against Respondents, which Notice is incorporated herein by reference;

**WHEREAS,** on October 24, 2014, the Notice was sent by certified mail, return receipt requested, to Great Plains (Certified Mail Nos. 70120470000147896800, 70121010000172646981 and 70121010000172646998), Shotton (Certified Mail No. 70120470000147896794), Clear Creek (Certified Mail No. 70120470000147896817) and Great Plains' attorney (Certified Mail No. 70121010000172647001);

**WHEREAS,** the Notice provided Great Plains with the opportunity for a hearing and stated that if a hearing was not requested within 14 days of its receipt, the Order to Make Restitution shall remain in effect and become permanent and that the Commissioner would issue an order that Great Plains cease and desist from violating subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, including but not limited to, enforcing such loans by any means, and the Commissioner may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Great Plains;

**WHEREAS,** the Notice provided Shotton with the opportunity for a hearing and stated that if a hearing was not requested within 14 days of its receipt, the Commissioner would issue an order that Shotton cease and desist from participating in the violation of subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, and the Commissioner may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Shotton;

**WHEREAS,** the Notice provided Clear Creek with the opportunity for a hearing and stated that if a hearing was not requested within 14 days of its receipt, the Commissioner would issue an order that Clear Creek cease and desist from violating Section 36a-555(2) of the Connecticut General Statutes, and the Commissioner may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Clear Creek;

three unsecured consumer loans to Connecticut residents in amounts less than $15,000 constitutes at least three violations of Section 36a-573(a) of the Connecticut General Statutes. Such violations form the basis to issue an order to cease and desist against Great Plains pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes, issue an order to make restitution against Great Plains pursuant to Sections 36a-573(c) and 36a-50(c) of the Connecticut General Statutes and impose a civil penalty against Great Plains pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes;

**WHEREAS,** the Commissioner alleged in the Notice, with respect to the activity described therein, that, pursuant to Section 36a-573(a) of the Connecticut General Statutes, Shotton's participating in Great Plains' violations of Sections 36a-555(1), 36a-555(2) and 36a-573(a) of the Connecticut General Statutes subjects Shotton to the provisions of such sections and forms the basis to issue an order to cease and desist against Shotton pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes and impose a civil penalty against Shotton pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes;

**WHEREAS,** the Commissioner alleged in the Notice, with respect to the activity described therein, that Clear Creek's offering or assisting Connecticut borrowers to obtain small loans in Connecticut without obtaining the required license constitutes at least one violation of Section 36a-555(2) of the Connecticut General Statutes, which forms the basis to issue an order to cease and desist against Clear Creek pursuant to Section 36a-52(a) of the Connecticut General Statutes and impose a civil penalty against Clear Creek pursuant to Section 36a-50(a) of the Connecticut General Statutes;

**WHEREAS,** also in the Notice, the Commissioner ordered pursuant to Sections 36a-573(c) and 36a-50(c) of the Connecticut General Statutes, that, not later than thirty (30) days from the date the Order to Make Restitution becomes permanent, Great Plains shall repay any interest received on or after October 1, 2009, from the Connecticut residents identified in Exhibit A to the Notice or any other Connecticut resident in connection with an unsecured consumer loan, plus interest, and provide evidence of such repayments to the Director of the Consumer Credit Division;

**WHEREAS,** the Order to Make Restitution remains in effect and became permanent against Great Plains on November 13, 2014;

**WHEREAS,** no evidence of repayments by Great Plains has been provided to the Director of the Consumer Credit Division;

**WHEREAS,** Section 36a-52(a) of the Connecticut General Statutes provides, in pertinent part, that "[i]f the person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner shall issue an order to cease and desist against the person. No such order shall be issued except in accordance with the provisions of chapter 54";

**WHEREAS,** Section 36a-50(a)(2) of the Connecticut General Statutes provides, in pertinent part, that "[i]f such person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner may, as the facts require, order that a civil penalty not exceeding one hundred thousand dollars per violation by imposed upon such person";

**WHEREAS,** Section 36a-50(a)(3) of the Connecticut General Statutes provides that "[e]ach action undertaken by the commissioner under this subsection shall be in accordance with the provisions of chapter 54";

**AND WHEREAS,** Section 36a-1-31(a) of the Regulations of Connecticut State Agencies provides, in pertinent part, that "[w]hen a party fails to request a hearing within the time specified in the notice, the allegations against the party may be deemed admitted. Without further proceedings or notice to the party, the commissioner shall issue a final decision in accordance with section 4-180 of the Connecticut General Statutes and section 36a-1-52 of the Regulations of Connecticut State Agencies".

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The Commissioner finds that the matters asserted, as set forth in paragraphs 1 through 14, inclusive, of Section II of the Notice, shall constitute findings of fact within the meaning of Section 4-180(c) of the Connecticut General Statutes, and that the conclusions, as set forth in paragraphs 1 through 7, inclusive, of Section III of the Notice shall constitute conclusions of law within the meaning of

Section 4-180(c) of the Connecticut General Statutes and Section 36a-1-52 of the Regulations of Connecticut State Agencies.

2. The Commissioner finds that Great Plains has engaged in acts or conduct which, pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes, forms the basis to issue an order to cease and desist against Great Plains, and, pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes, forms the basis to impose a civil penalty upon Great Plains.

3. The Commissioner finds that Shotton has engaged in acts or conduct which, pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes, forms the basis to issue an order to cease and desist against Shotton, and, pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes, forms the basis to impose a civil penalty upon Shotton.

4. The Commissioner finds that Clear Creek has engaged in acts or conduct which, pursuant to Section 36a-52(a) of the Connecticut General Statutes, forms the basis to issue an order to cease and desist against Clear Creek, and, pursuant to Section 36a-50(a) of the Connecticut General Statutes, forms the basis to impose a civil penalty upon Clear Creek.

5. The Commissioner finds that the Notice was given in compliance with Sections 36a-52(a), 36a-50(a) and 4-177 of the Connecticut General Statutes.

### III. ORDER

Having read the record, **I HEREBY ORDER**, pursuant to Sections 36a-573(c), 36a-52(a) and 36a-50(a) of the Connecticut General Statutes, that:

1. Great Plains Lending, LLC **CEASE AND DESIST** from violating subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, including, but not limited to, enforcing such loans by any means;

2. A **CIVIL PENALTY** of Seven Hundred Thousand Dollars ($700,000) be imposed upon Great Plains Lending, LLC to be remitted to the Department of Banking by cashier's check, certified check or money order, made payable to "Treasurer, State of Connecticut", no later than thirty (30) days from the date this Order is mailed;

3. John R. Shotton **CEASE AND DESIST** from participating in the violation of subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes;

- 6 -

4. A **CIVIL PENALTY** of Seven Hundred Thousand Dollars ($700,000) be imposed upon John R. Shotton to be remitted to the Department of Banking by cashier's check, certified check or money order, made payable to "Treasurer, State of Connecticut", no later than thirty (30) days from the date this Order is mailed;

5. Clear Creek Lending **CEASE AND DESIST** from violating Section 36a-555(2) of the Connecticut General Statutes;

6. A **CIVIL PENALTY** of One Hundred Thousand Dollars ($100,000) be imposed upon Clear Creek Lending to be remitted to the Department of Banking by cashier's check, certified check or money order, made payable to "Treasurer, State of Connecticut", no later than thirty (30) days from the date this Order is mailed;

7. This Order shall become effective when mailed.

Dated at Hartford, Connecticut,
this _6th_ day of January 2015.

_____
Howard F. Pitkin
Banking Commissioner

This Order was sent by certified mail,
return receipt requested, to
Respondents' attorneys on
January _7_, 2015.

Anthony Jannotta, Esq.                    Certified Mail No. 7012 1010 0001 7264 8336
Dentons US LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005

Saba Bazzazieh, Esq.                      Certified Mail No. 7012 1010 0001 7264 8343
Rosette, LLP
1100 H. Street, NW, Suite 400
Washington, DC 20005

# EXHIBIT C



## OTOE·MISSOURIA
### TRIBE OF INDIANS

8151 HIGHWAY 177
RED ROCK, OK 74651-0348

### RESOLUTION

"A Resolution to Adopt Limited Liability Company (llc) Codes for the Otoe-Missouria Tribe of Indians"

OMTC # _54292_ FY- 2011

NOW, THEREFORE, BE IT RESOLVED BY THE TRIBAL COUNCIL OF THE OTOE-MISSOURIA TRIBE OF INDIANS, and

WHEREAS, the Otoe-Missouria Tribal Council, the Governing Body of the Otoe-Missouria Tribe of Oklahoma, in accordance with the Tribal Constitution, Article VIII-Powers, Section I. Tribal Council, duly convened to discuss, review and approve Tribal business, and

WHEREAS, the Otoe-Missouria Tribal Council has been vested with authority to enact Tribal law and adopt regulations to administer governmental functions of the Tribe, and

WHEREAS, the Otoe-Missouria Tribal Council has reviewed the Otoe-Missouria Limited Liability Code

THEREFORE, BE IT RESOLVED, the Otoe-Missouria Tribal Council hereby adopt and approve the attached Otoe-Missouria Limited Liability Code for the betterment of the Tribe.

### CERTIFICATION

We, the undersigned Chairman and Secretary of the Otoe-Missouria Tribal Council, do hereby certify, by signature, that the above and foregoing Resolution was approved and adopted on this 4th day of May, 2011, with a quorum present, and a vote of _6_ for, _0_ against, _0_ absent, and _1_ abstaining.

John R. Shotton
Chairman

(SEAL)

ATTEST: Barbara Childs-Walton
Secretary

**An Act**

To provide regulations for organizing limited liability companies within the Otoe-Missouria Tribe of Indians.

*Be it enacted by the Tribal Council of the Otoe-Missouria Tribe of Indians:*

## Table of Contents

**PART 1. GENERAL PROVISIONS**      4

     *SECTION 101. SHORT TITLE*      4
     *SECTION 102. AUTHORITY AND PURPOSES*      4
     *SECTION 103. SCOPE*      4
     *SECTION 104. APPLICABLE LAW*      5
     *SECTION 105. DEFINITIONS*      5
     *SECTION 106. NAME*      6
     *SECTION 107. REGISTERED OFFICE AND REGISTERED AGENT*      6
     *SECTION 108. TRIBE AS MEMBER*      7
     *SECTION 109. NATURE OF BUSINESS*      7
     *SECTION 110. EXECUTION OF DOCUMENTS*      9
     *SECTION 111. FILING*      9
     *SECTION 112. CERTIFICATE OF STATUS*      10
     *SECTION 113. EXECUTION BY JUDICIAL ACT*      10
     *SECTION 114. INTERSTATE APPLICATION*      10

**PART 2. ARTICLES OF ORGANIZATION AND DEALING WITH LLC**      10

     *SECTION 201. ARTICLES OF ORGANIZATION*      10
     *SECTION 202. AGENCY POWER OF MEMBERS AND MANAGERS*      11
     *SECTION 203. ADMISSIONS OF MEMBERS AND MANAGERS*      12
     *SECTION 204. KNOWLEDGE OF OR NOTICE TO MEMBER OR MANAGER*      12
     *SECTION 205. LIABILITY OF MEMBERS TO THIRD PARTIES*      12
     *SECTION 206. PARTIES TO ACTION*      13
     *SECTION 207. AUTHORITY TO SUE*      13

**PART 3. MEMBERS AND MANAGERS**      13

     *SECTION 301. MANAGEMENT*      13
     *SECTION 302. DUTIES*      14
     *SECTION 303. LIMITATION OF LIABILITY AND INDEMNIFICATION*      14
     *SECTION 304. VOTING*      15
     *SECTION 305. RECORDS AND INFORMATION*      16
     *SECTION 306. ADMISSION OF MEMBERS*      17
     *SECTION 307. DISSOCIATION*      17

**PART 4. FINANCE**      18

SECTION 401. CONTRIBUTIONS                                          18
SECTION 402. LIABILITY FOR CONTRIBUTION                             18
SECTION 403. ALLOCATION OF PROFITS AND LOSSES                       19

**PART 5. NON-LIQUIDATING DISTRIBUTIONS**                           **19**

SECTION 501. INTERIM DISTRIBUTIONS                                  19
SECTION 502. ALLOCATION OF DISTRIBUTIONS                            19
SECTION 503. DISTRIBUTION UPON PARTIAL REDEMPTION                   19
SECTION 504. DISTRIBUTION UPON DISSOCIATION                         19
SECTION 505. DISTRIBUTION IN KIND                                   19
SECTION 506. RIGHT TO DISTRIBUTION                                  20
SECTION 507. LIMITATIONS OF DISTRIBUTIONS                           20
SECTION 508. LIABILITY FOR WRONGFUL DISTRIBUTION                    20

**PART 6. OWNERSHIP AND TRANSFER OF PROPERTY**                      **21**

SECTION 601. OWNERSHIP OF LLC PROPERTY                              21
SECTION 602. TRANSFER OF PROPERTY                                   21
SECTION 603. NATURE OF INTEREST                                     21
SECTION 604. ASSIGNMENT OF LLC INTEREST                             21
SECTION 605. RIGHTS OF JUDGMENT CREDITOR                            22
SECTION 606. RIGHT OF ASSIGNEE TO BECOME A MEMBER                   22
SECTION 607. POWERS OF LEGAL REPRESENTATIVE                         22

**PART 7. DISSOLUTION**                                             **23**

SECTION 701. DISSOLUTION                                            23
SECTION 702. JUDICIAL DISSOLUTION                                   23
SECTION 703. WINDING UP                                             23
SECTION 704. DISTRIBUTION OF ASSETS                                 24
SECTION 705. ARTICLES OF DISSOLUTION                                25
SECTION 706. KNOWN CLAIMS AGAINST DISSOLVED LLC                     25
SECTION 707. UNKNOWN OR CONTINGENT CLAIMS                           25

**PART 8. MERGER**                                                  **26**

SECTION 801. MERGER                                                 26
SECTION 802. APPROVAL OF MERGER                                     26
SECTION 803. PLAN OF MERGER                                         26
SECTION 804. ARTICLES OF MERGER                                     26
SECTION 805. EFFECTS OF MERGER                                      27
SECTION 806. RIGHT TO OBJECT                                        28

**PART 9. LIMITED LIABILITY COMPANIES WHOLLY OWNED BY THE TRIBE**   **28**

SUBPART 1. GENERAL PROVISIONS FOR TRIBALLY-OWNED LLCS              28
SECTION 911. LLCS DIRECTLY OWNED BY THE TRIBE                       28
SECTION 912. TRIBAL SUBSIDIARY COMPANIES                            28
SECTION 913. PRIVILEGES AND IMMUNITIES                              28

SECTION 914. OWNERSHIP                                                                  29
SECTION 915. PROJECT COMPANIES WITH NON-TRIBAL OWNERS                                   29
SECTION 916. PURPOSE OF LLC'S DIRECTLY AND INDIRECTLY OWNED BY TRIBE                    30

SUBPART 2. SPECIAL FORMATION REQUIREMENTS FOR LLC'S WHOLLY OWNED BY
THE TRIBE                                                                              30
SECTION 921. FORMATION                                                                 30
SECTION 922. ADDITIONAL REQUIREMENTS FOR ARTICLES OF ORGANIZATION                      30

SUBPART 3. MANAGEMENT OF TRIBALLY-OWNED LLCS                                           31
SECTION 931. BOARD OF DIRECTORS AS MANAGER                                             31

SUBPART 4. DISTRIBUTIONS TO TRIBE AS MEMBER                                            31
SECTION 941. DISTRIBUTIONS OF INCOME TO TRIBE AS MEMBER                                31

SUBPART 5. ADDITIONAL REPORTS AND AUDITS                                               31
SECTION 951. AUDIT                                                                     31
SECTION 952. FINANCIAL, BUSINESS, AND BUDGET INFORMATION FOR THE TRIBE                 31

SUBPART 6. ACTIONS AGAINST LLCS WHOLLY OWNED BY THE TRIBE                              32
SECTION 961. COURT ACTIONS AUTHORIZED                                                  32
SECTION 962. APPROVAL OF TRIBE REQUIRED                                                33
SECTION 963. RELIEF AVAILABLE                                                          33

PART 10. REGISTRATION OF FOREIGN LIABILITY COMPANIES                                   33

PART 11. SEVERABILITY CLAUSE                                                           33

## LIMITED LIABILITY COMPANIES

# PART 1. GENERAL PROVISIONS

### SECTION 101. SHORT TITLE

This act shall be known as the Otoe-Missouria Tribe of Indians Limited Liability Company Act (the "Act").

### SECTION 102. AUTHORITY AND PURPOSES

1. This Act is enacted pursuant to the Otoe-Missouria Tribe of Indians inherent sovereign powers and as specifically authorized by the Constitution of the Otoe-Missouria Tribe of Indians.

2. The Otoe-Missouria Tribe of Indians Tribal Council finds that the regulation of persons engaged in trade and business is necessary to safeguard and promote the peace, safety, morals, and general welfare of the Otoe-Missouria Tribe of Indians.

3. The purposes of this Act are to provide for economic development for the Otoe-Missouria Tribe of Indians and its citizens by providing the legal framework for organizing business entities under Otoe-Missouria Tribe of Indians law in order to expand the private business sector, and to provide for the organization of arms of the tribe into entities to promote economic development and the general welfare of the Otoe-Missouria Tribe of Indians.

4. This Act is enacted pursuant to the inherent sovereign tribal powers expressly outlined in the Constitution that recognizes the jurisdiction of the Otoe-Missouria Tribe of Indians to extend over all persons, subjects, property, and over all activities that occur within the territory of the Otoe-Missouria Tribe of Indians and over all Otoe-Missouria citizens, subjects, property, and activities outside such territory affecting the rights and laws of the Otoe-Missouria Tribe of Indians.

5. By the adoption of this Act, except as provided herein, the Otoe-Missouria Tribe of Indians does not waive its sovereign immunity or consent to suit in any court, federal tribal or state, and neither the adoption of this Act, nor the incorporation of any limited liability company hereunder, shall be construed to be a waiver of the sovereign immunity of the Otoe-Missouria Tribe of Indians or a consent to suit against the Otoe-Missouria Tribe of Indians in any court.

### SECTION 103. SCOPE

This Act shall apply to all limited liability companies organized under Otoe-Missouria Tribe of Indians law or which elect to accept the provisions of this Act, including all LLCs wholly owned by the Otoe-Missouria Tribe of Indians, whether directly or as a wholly-owned subsidiary of another LLC or an Entity wholly owned by the Otoe-Missouria Tribe of Indians.

## SECTION 104. APPLICABLE LAW

The companies organized and created under this Act shall be subject to this Act and all other laws of the Otoe-Missouria Tribe of Indians.

## SECTION 105. DEFINITIONS

Terms used in this Act have the following meaning:

1. "Articles of Organization" means the articles of organization filed under Section 201 (and Section 922, if applicable) and those articles as amended or restated from time to time.

2. "Corporation" means any corporation for profit organized under the laws of the Tribe or a foreign corporation formed under the laws of any other jurisdiction.

3. "Court" means the Tribal Court as established by the Constitution of the Otoe-Missouria Tribe of Indians.

4. "Distribution" means a direct or indirect transfer by an LLC of money or other property to or for the benefit of its Members in respect of their interests.

5. "Domestic Limited Liability Company" means an LLC formed under this Act.

6. "Entity" means any general partnership, limited partnership, LLC, trust, estate, association, Corporation, the Tribe, or any other legal or commercial entity.

7. "Foreign" refers to any Entity organized under the laws of a jurisdiction other than the Tribe.

8. "LLC" means a limited liability company.

9. "LLC Interest" means a Member's rights in the LLC, including rights to distributions, profits and losses, and to participate in management of the LLC, as specified in this Act and the Operating Agreement (if any).

10. "Majority in Interest" means Member(s) that have contributed more than fifty percent (50%) of the value of all total capital contributions to the LLC, excluding any interest which is not to be counted as voting on a matter as described elsewhere in this Act.

11. "Manager" or "Managers" means the Person(s) designated to manage the LLC pursuant to the Articles of Organization or Operating Agreement.

12. "Member" means a Person who has been admitted to membership in an LLC and who has not dissociated from the LLC.

13. "Organizer(s)" means the Person(s) that signs and delivers the Articles of Organization for filing to the Secretary.

14. "Operating Agreement" means an agreement in writing among all of the Members as to the conduct of the business of an LLC and the relationships among its Members.

15. "Person" means any individual or Entity.

16. "Secretary" means the individual duly appointed or elected to serve in the administrative capacity with all the rights, duties, obligations, and authority as authorized by the Tribe.

17. "State" includes a state, territory, or possession of the United States and the District of Columbia.

18. "Tribal Council" means the legislative branch of the government of the Tribe as established under Constitution of the Tribe.

19. "Tribe" means the Otoe-Missouria Tribe of Indians, a federally recognized Indian tribe.

## SECTION 106. NAME

1. The name of an LLC as set forth in its Articles of Organization must contain the words "limited liability company" or end with the abbreviation "L.L.C." or "LLC". The words "limited" and "company" may be abbreviated as "ltd." and "co.", respectively. The name may not contain language stating or implying that the LLC is organized for any purpose other than that permitted under Section 109, below.

2. The name of a Domestic LLC shall be distinguishable from any other Domestic LLC or Tribal Corporation.

## SECTION 107. REGISTERED OFFICE AND REGISTERED AGENT

1. An LLC's registered agent is the LLC's agent for receiving service of process, notice, or demand required or permitted by law to be served on the LLC under the laws of the Tribe.

2. Each LLC shall continuously maintain a registered office and a registered agent. The registered office may, but need not, be the same as any of its places of business. The registered agent may be a designated office of the Tribe rather than a specified individual,

provided that the Tribe is a Member of the LLC in which the Tribal officer is the registered agent.

3. An LLC may change its registered office or registered agent, or both, by filing a written notice of change containing the name of its registered agent and the street address of its registered office, as changed, with the Secretary and paying the requisite filing fee.

4. The registered agent of an LLC may resign as registered agent by delivering to the Secretary, with a copy to each Member of the LLC, for filing a written statement of resignation and the appointment by the LLC of another registered agent.

## SECTION 108. TRIBE AS MEMBER

1. The Tribe shall form or become a Member of an LLC formed under this Act only upon approval of such action by resolution of the Tribal Council.

2. If the Tribe is a Member of any LLC formed under this Act, any action which the Tribe is required or permitted to take with respect to any vote, approval, consent, appointment, direction, or other matter shall be taken as specified in Section 931 of this Act or, as to actions related to the managers of a manager-managed LLC, as stated in the LLC's Articles of Organization approved by the Tribal Council and the Chairman.

3. In no event shall any manager not a Member of an LLC in which the Tribe is a Member, bind the Tribe in any manner; provided that the Tribe's interest as a Member may be bound by Manager or Member actions as stated in this Act or the Operating Agreement of the LLC.

4. Nothing contained in this Act shall be construed as creating any liability or waiving of sovereign immunity of the Tribe in any manner; provided that the assets of the LLC in which the Tribe holds an interest may be subject to liabilities and claims unless otherwise provided herein. In no event shall any action taken by the Tribe as Member concerning the exercise of any right or privilege or discharge of any duty with respect to an interest in an LLC be construed as a waiver of immunity or creation of a liability on the part of the Tribe separate and apart from its interest as a Member of the LLC.

5. If the Tribe is the sole Member of an LLC formed under this Act, such LLC shall possess the Tribe's sovereign immunity from suit except to the extent otherwise provided in its Articles of Organization or Operating Agreement, or as expressly waived pursuant to Section 913.

6. If the Tribe is the sole Member of an LLC formed under this Act, the additional provisions of Part 9 of this Act shall apply.

## SECTION 109. NATURE OF BUSINESS

An LLC may be organized under this Act for any lawful purpose. Unless otherwise provided in its Operating Agreement, an LLC organized and existing under this Act has the same powers as an

individual to do all things necessary and convenient to carry out its business, including, but not limited to, the following:

1. Sue and be sued, complain, and defend in its name; provided that if an LLC is wholly owned by the Tribe, or wholly owned by a Domestic LLC or Tribal Corporation, or other Entity which itself is wholly owned by the Tribe, it shall be entitled to and shall enjoy the Tribe's sovereign immunity from suit unless the Articles of Organization otherwise provide.

2. Purchase, take, receive, lease, or otherwise acquire and own, hold, improve, use, and otherwise deal in or with real or personal property, or any legal or equitable interest in real or personal property, wherever situated.

3. Sell, convey, mortgage, pledge, create a security interest in, lease, exchange, or otherwise dispose of all or any part of its property.

4. Lend money, property, and services to, and otherwise assist, its Members and Managers, if any.

5. Purchase, take, receive, subscribe for, or otherwise acquire and own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of and deal in and with shares or other interests in, or obligations of, any other enterprise or Entity.

6. Make contracts and guarantees; incur liabilities; borrow money; issue notes, bonds, and other obligations; and secure any of its obligations by mortgage or pledge of all or part of its property, franchises, and income.

7. Lend money, invest and reinvest its funds, and receive and hold real or personal property as security for repayment.

8. Conduct its business, locate offices, and exercise the powers granted by this Act.

9. Be a promoter, incorporator, partner, member, associate, or manager of any enterprise or Entity.

10. Elect or appoint Managers, agents, and employees, define their duties, and set their compensation.

11. Pay pensions and establish pension plans, pension trusts, profit-sharing plans, and benefit or incentive plans for any or all of its current or former Members, Managers, employees, and agents.

12. Make donations to and otherwise devote its resources for the public welfare or for charitable, scientific, educational, humanitarian, philanthropic, or religious purposes.

13. Indemnify a Member, Manager, employee, officer or agent, or any other Person.

14. Provide benefits or payments to Members, Managers, employees, and agents of the LLC, and to their estates, families, dependants, or beneficiaries in recognition of the past services of the Members, Managers, employees, and agents of the LLC.

15. Make payments or donations, or do any other act not prohibited by law, that furthers the business of the LLC.

16. Transact any lawful business that the Members or the Managers find to be appropriate to promote and further the business and affairs of the LLC.

## SECTION 110. EXECUTION OF DOCUMENTS

1. Except as otherwise provided in this Act, any document required or permitted by this Act to be delivered for filing to the Secretary shall be executed by any of the following:

   a. Any Manager, if management of the LLC is vested in a Manager or Managers, or by a Member, if management of the LLC is reserved to theM.

   b. All Organizer(s) of the LLC if the LLC has not been organized. The name and address of each Organizer shall be provided.

   c. The name of the drafter of the document.

2. The Person executing the document shall sign it and state beneath or opposite the signature the Person's name and capacity in which the Person signs.

3. The Person executing the document may do so as an attorney-in-fact. Except as provided in Section 305.1.b, powers of attorney relating to the executing of the document need not be shown to nor filed with the Secretary.

## SECTION 111. FILING

1. The office of the Secretary shall receive all filings required under this Act and maintain the records of such filings pursuant to this Act, including, but not limited to, Articles of Organization, amended or restated Articles of Organization, annual reports, names and addresses of registered offices and registered agents, and all other reports as required by this Act.

2. Upon receipt of a document for filing under this Act, the Secretary shall ensure it meets the requirements herein and then shall stamp or otherwise endorse the date and time of receipt of the original, the duplicate copy, and, upon request, any additional copy received.

3. If the Secretary refuses to file any requested document, the Secretary shall return it to the Person tendering such document for filing within five (5) business days after the date on

Page **9** of **33**

which such document is received by the Secretary for filing, together with a brief written explanation of the reason for refusal.

4. Any document accepted by the Secretary shall be effective at the time of receipt unless a delayed effective date and/or time not more than ninety (90) days after receipt by the Secretary is specified in the document.

5. The Secretary shall impose a reasonable filing fee for each document filed, initially not to exceed the sum of $100.00, and an annual renewal fee initially not to exceed the sum of $25.00. The Secretary shall post a schedule of all fees or otherwise promptly communicate the amount of any fee upon request.

## SECTION 112. CERTIFICATE OF STATUS

Any individual may obtain from the Secretary, upon request, a certificate of status for either a Domestic LLC or a Foreign LLC.

## SECTION 113. EXECUTION BY JUDICIAL ACT

Any Person who is adversely affected by the failure or refusal of any Person to execute and file the Articles of Organization or any other document to be filed under this Act may petition the Court to direct the execution and filing of the Articles of Organization or such other document.

## SECTION 114. INTERSTATE APPLICATION

An LLC may conduct its business, carry on its operations, and have and exercise the powers granted by this Act, in any sovereign Native American nation, any State or in any Foreign jurisdiction.

# PART 2. ARTICLES OF ORGANIZATION AND DEALING WITH LLC

## SECTION 201. ARTICLES OF ORGANIZATION

1. One or more Persons may organize an LLC by signing and delivering Articles of Organization to the Secretary for filing. The Organizer(s) need not be Members of the LLC at the time of organization or at any time thereafter.

2. An LLC shall have one or more Members.

3. The Articles of Organization shall contain all of, and only, the following information:

   a. A statement that the LLC is organized under this Act.

   b. A name for the LLC that satisfies the provisions of this Act.

   c.  The street address of the registered office and the name of the registered agent at such registered office. In the case of an LLC wholly owned by the Tribe, such registered office and agent shall be located within the boundaries of the Otoe-Missouria Tribe of Indians Indian Country.

   d.  If management of the LLC is vested in one or more Managers or a Board of Directors, a statement to that effect.

   e.  Whether the LLC is wholly owned by the Tribe.

   f.  If wholly owned by the Tribe, whether the LLC is to enjoy the Tribe's sovereign immunity and the scope of any waiver of that immunity.

4.  The Secretary shall assign to each LCC formed by filing Articles of Organization a unique identification number.

5.  An LLC may amend or restate its Articles of Organization at any time by delivering an amendment or restatement, as applicable, with the requisite filing fee, for filing to the Secretary.

6.  Effect of Delivery or Filing.

   a.  An LLC is formed when the Articles of Organization become effective under Section 111.4.

   b.  The Secretary filing of the Articles of Organization is conclusive proof that the LLC is organized and formed under this Act.

## SECTION 202. AGENCY POWER OF MEMBERS AND MANAGERS

1.  Except as provided in subsection 2, below:

   a.  Each Member is an agent of the LLC, but not of the other Members or any of them, for the purpose of the business of the LLC.

   b.  The act of any Member, including the execution in the name of the LLC of any instrument for apparently carrying on in the ordinary course of business the business of the LLC, binds the LLC in the particular matter, unless the Person with whom such Member is dealing has knowledge that such Member has no authority to act for such matter.

   c.  If the Tribe is a Member, the Tribe's authority therefor shall be exercised pursuant to Section 931.

2.  If management of the LLC is vested in one or more Managers:

a. Each Manager is an agent of the LLC, but not of the other Members, for the purpose of its business. The act of any Manager, including the execution in the name of the LLC of any instrument for apparently carrying on the ordinary course of business of the LLC, binds the LLC, unless the manager has, in fact, no authority to act for the LLC in the particular matter, and the Person with whom such Manager is dealing has knowledge that such Manager has no authority to act for such matter.

## SECTION 203. ADMISSIONS OF MEMBERS AND MANAGERS

1. Except as provided in Section 203.2, an admission or representation made by any Member concerning the business of an LLC within the scope of the Member's actual authority may be used as evidence against the LLC in any legal proceeding.

2. If management of the LLC is vested in one or more Managers:

   a. An admission or representation made by a Manager concerning the business of an LLC within the scope of the Manager's authority may be used as evidence against the LLC in any legal proceeding.

   b. The admission or representation of any Member, acting solely in the Member's capacity as a Member, is not evidence against the LLC in any legal proceeding.

## SECTION 204. KNOWLEDGE OF OR NOTICE TO MEMBER OR MANAGER

1. Except as provided in Section 204.2), notice to any Member of any matter relating to the business of an LLC, and the knowledge of a Member acting in the particular matter, acquired while a Member or known by the Person at the time of becoming a Member, and the knowledge of any Member who reasonably could and should have communicated it to the acting Member, operates as notice to or knowledge of the LLC.

2. If management of the LLC is vested in one or more managers:

   a. Notice to any Manager of any matter relating to the business of the LLC, and the knowledge of the Manager acting in the particular matter acquired while a Manager or known by the Person at the time of becoming a Manager and the knowledge of any other Manager who reasonably could and should have communicated it to the acting Manager, operates as notice to or knowledge of the LLC.

   b. Notice to or knowledge of any Member while the Member is acting solely in the capacity of a Member is not notice to or knowledge of the LLC.

## SECTION 205. LIABILITY OF MEMBERS TO THIRD PARTIES

The debts, obligations, and liabilities of an LLC, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the LLC. Except as otherwise specifically provided for in this Act, a Member or Manager of an LLC is not personally liable for any debt, obligation, or liability of an LLC. Nothing in this Section 205 is intended to waive the LLC's sovereign immunity as provided in Sections 108.4 and 108.5.

## SECTION 206. PARTIES TO ACTION

A Member of an LLC is not a proper party to a proceeding by or against an LLC solely by reason of being a Member of such LLC, except if any of the following exist:

1.  The object of the proceeding is to enforce a Member's right against or liability to the LLC.

2.  The action is brought by a Member under Section 207.

## SECTION 207. AUTHORITY TO SUE

Unless otherwise provided in the Operating Agreement, an action on behalf of an LLC may be brought in the name of the LLC by:

1.  One or more Members of the LLC, if authorized by a Majority in Interest, excluding the vote of any Member who has an interest in the outcome of the action that is adverse to the interest of the LLC.

2.  One or more Managers of an LLC if the management of the LLC is vested in one or more Managers, or if the Managers are authorized to sue by a Majority in Interest.

# PART 3. MEMBERS AND MANAGERS

## SECTION 301. MANAGEMENT

1.  Unless the Articles of Organization vest management in one or more Managers, management of the LLC shall be vested in the Members subject to any provision in the Operating Agreement or this Act restricting or enlarging the management rights and duties of any Member or group of Members.

2.  If the Articles of Organization vest management in one or more Managers, management of the business or affairs of the LLC shall be invested in the Manager or Managers subject to any provisions in the Operating Agreement or this Act restricting or enlarging the management rights and duties of any Manager or group of Managers. Unless otherwise provided in Operating Agreement, the Manager or Managers:

a.  Shall be designated, appointed, elected, removed, or replaced by a vote of a Majority in Interest.

b.  Need not be Members of the LLC nor individuals.

c.  Unless earlier removed or earlier resigned, shall hold office until a successor is elected and qualified.

## SECTION 302. DUTIES

Unless otherwise provided in the Operating Agreement:

1.  No Member or Manager shall act or fail to act in a manner that constitutes any of the following:

    a.  A willful failure to deal fairly with the LLC or its Members in connection with a matter in which the such Member or Manager has a material conflict of interest.

    b.  A violation of criminal law, unless the Member or Manager had reasonable cause to believe that the conduct was lawful or no reasonable cause to believe that the conduct was unlawful.

    c.  A transaction from which the Member or Manager derived an improper personal profit.

    d.  Willful misconduct.

2.  Every Member and Manager shall account to the LLC and hold as trustee for it any improper personal profit derived by such Member or Manager without the consent of a majority of the disinterested Members or Managers, or other Persons participating in the management of the LLC, from any of the following:

    a.  A transaction connected with the organization, conduct, or winding up of the LLC.

    b.  A use by a Member or Manager of the property of an LLC, including confidential or proprietary information or other matters entrusted to the person as a result of the such Person's status as Member or Manager.

    c.  The Operating Agreement may impose duties on its Members and Managers that are in addition to, but not in abrogation of, those provided in subsection (1) above.

## SECTION 303. LIMITATION OF LIABILITY AND INDEMNIFICATION

1.  In this Section, "expenses" means expenses of defending a lawsuit, including attorneys' fees, and any civil judgment or penalty, or settlement payment in lieu thereof, paid in connection with a lawsuit against a Member or Manager in such capacity.

2. An LLC shall indemnify or allow expenses to each Member and Manager for all reasonable expenses incurred with respect to any proceeding if such Member or Manager was a party to the proceeding in the capacity of a Member or Manager.

3. The Operating Agreement may alter or provide additional rights to indemnification or allowance of expenses to Members and Managers.

4. Notwithstanding subsections (2) and (3) above, an LLC may not indemnify a Member or Manager unless it is determined that such Member or Manager did not breach or fail to perform a duty to the LLC as provided in Section 302.

5. Unless otherwise provided in Operating Agreement:

   a. A Member or Manager shall be conclusively presumed not to have breached or failed to perform a duty to the LLC to the extent that the Member or Manager has been successful on the merits or otherwise in the defense of the proceeding.

   b. In situations not described in paragraph (a) above, the determination of whether a Member or Manager has breached or failed to perform a duty to the LLC shall be made by the vote of a Majority in Interest, excluding any Member who is a party to the same or related proceeding, unless all Members or Managers, as applicable, are parties.

## SECTION 304. VOTING

1. Unless otherwise provided in the Operating Agreement or this Section 304, and subject to subsection (2) below, an affirmative vote, approval, or consent as follows shall be required to decide any matter connected with the business of an LLC:

   a. If management of an LLC is reserved to the Members, an affirmative vote, approval, or consent by a Majority in Interest.

   b. If the management of an LLC is vested in one or more Managers or a Board of Directors, the affirmative vote, consent, or approval of more than fifty percent (50%) of the Managers.

2. Unless otherwise provided in the Operating Agreement or this Act, the affirmative vote, approval, or consent of all Members shall be required to do any of the following:

   a. Amend the Articles of Organization.

   b. Issue an interest in an LLC to any Person.

   c. Adopt, amend, or revoke the Operating Agreement.

   d. Allow an LLC to accept any additional contribution from a Member.

e.  Allow a partial redemption of an interest in an LLC under Section 503.

f.  Value contributions of Members under Section 401.2.

g.  Authorize a Manager, Member, or any other Person to do any act on behalf of the LLC that contravenes the Operating Agreement.

3.  Unless otherwise provided in the Operating Agreement if any Member is precluded from voting with respect to a given matter, the value of the contribution represented by the interest in the LLC with respect to which the Member would otherwise have been entitled to vote shall be excluded from the total contributions made to the LLC for purposes of determining the fifty percent (50%) threshold under Section 105.10 for that matter.

4.  Unless otherwise provided in the Operating Agreement or this Section, if all or part of an interest in the LLC is assigned under Section 604, the assigning Member shall be considered the owner of the assigned interest for purposes of determining the 50% threshold under Section 105.11 until the assignee of the interest in the LLC becomes a Member pursuant to Section 606.

## SECTION 305. RECORDS AND INFORMATION

1.  An LLC shall keep at its principal place of business all of the following:

a.  A list of each past and present Member and, if applicable, Manager.

b.  A copy of the Articles of Organization and all amendments to the articles, together with executed copies of any powers of attorney under which any Articles of Organization or Operating Agreement were executed.

c.  A record of all matters referred to in this Act as maintained in such records which are not otherwise specified in the Operating Agreement.

2.  Upon request, a Member may, at such Member's own expense, inspect and copy during ordinary business hours any LLC record, unless otherwise provided in the Operating Agreement.

3.  Members or, if the management of the LLC is vested in one or more Managers, Managers, shall provide true and full information of all things affecting the Members to any Member or to the legal representative of any Member upon reasonable request of any Member or his, her or its legal representative.

4.  Failure of an LLC to keep or maintain any of the records of information required under this Section shall not be grounds for imposing liability on any person for the debts and obligations of the LLC.

## SECTION 306. ADMISSION OF MEMBERS

1. In connection with the formation of an LLC, a Person acquiring an LLC Interest is admitted as a Member upon formation unless the Operating Agreement otherwise provides.

2. After the formation of an LLC, a Person acquiring an LLC Interest is admitted as a Member of the LLC as specified in the Operating Agreement or, if not so specified, by consent of all the other Members, or, if the Person is an assignee of another Member's LLC Interest, only pursuant to Section 606.

## SECTION 307. DISSOCIATION

1. A person ceases to be a Member of an LLC upon the simultaneous occurrence of and at the same time of any of the following events:

   a. The Member withdraws by voluntary act pursuant to subsection (3).

   b. The Member is removed as a Member in accordance with the Operating Agreement or this Act.

   c. Unless otherwise provided in the Articles of Organization or by the written consent of all Members at the time of the event, the Member does any of the following:

      i. Makes an assignment for the benefit of the creditors.

      ii. Files a petition in bankruptcy.

      iii. Becomes the subject of an order for relief under the federal bankruptcy laws or State or Tribal insolvency laws.

      iv. Fails to gain dismissal of any federal bankruptcy or State or Tribal insolvency proceeding within 120 days of commencement of an involuntary proceeding.

   d. Unless provided in the Operating Agreement or by the written consent of all Members, if the Member is an individual, either of the following occur:

      i. The Member's death.

      ii. The entry of an order by a court of competent jurisdiction adjudicating the Member incompetent to manage the Member's person or estate.

   e. Unless otherwise provided in the Operating Agreement or by written agreement or by the written consent of all Members at the time, if the Member is a Entity, upon the liquidation, dissolution, or termination of such Entity.

2. The Members may provide in the Operating Agreement for other events the occurrence of which would result in a Person ceasing to be a Member of the LLC.

3. Unless the Operating Agreement provides that a Member does not have the power to withdraw by voluntary act from an LLC, the Member may do so at any time by giving written notice to the other Members or as provided in the Operating Agreement. If the Member has the power to withdraw, but the withdrawal is a breach of the Operating Agreement, the LLC may offset the damages against the amount otherwise distributable to the Member, in addition to pursuing any remedies provided for in the Operating Agreement or otherwise available under applicable law.

# PART 4. FINANCE

## SECTION 401. CONTRIBUTIONS

1. A Member's contributions to an LLC may consist of cash, property, or services rendered, or promissory notes or other written obligations to provide cash or property or to perform services.

2. The value of a Member's contribution shall be determined in the manner provided in the Operating Agreement. If the Operating Agreement does not fix a value to a contribution, or if the Members have not adopted an Operating Agreement, the value of a contribution shall be approved by a Majority in Interest, shall be properly reflected in the records and information kept by the LLC pursuant to Section 305.1. The value of contributions so determined shall be binding and conclusive on the LLC and its Members.

## SECTION 402. LIABILITY FOR CONTRIBUTION

1. An obligation of a Member to provide cash or property or to perform services as a contribution to an LLC is not enforceable unless specified in a writing and signed by the Member.

2. Unless otherwise provided in the Operating Agreement, a Member is obligated to an LLC to perform any enforceable promise to provide cash or property or to perform services, even if the Member is unable to perform because death, disability, or any other reason. If a Member does not provide cash, property, or services as promised, such Member is obligated, at the option of the LLC, to provide cash equal to that portion of the value of the stated contribution that has not been fulfilled.

3. Unless otherwise provided in the Operating Agreement, a Member's obligation to provide cash or property or perform services as a contribution to the LLC may be compromised only by the written consent of all of the Members.

**SECTION 403. ALLOCATION OF PROFITS AND LOSSES**

The profits and losses of an LLC shall be allocated among the Members in the manner provided in the Operating Agreement. If the Members do not enter into or the do not provide otherwise, profits and losses shall be allocated on the basis of value of the contributions made by each Member.

# PART 5. NON-LIQUIDATING DISTRIBUTIONS

## SECTION 501. INTERIM DISTRIBUTIONS

Except as provided in this Part, a Member is entitled to receive distributions from an LLC before the Member's dissociation from the LLC and before its dissolution and winding up to the extent to the extent and at the times or upon the events specified in its Articles of Organization, or to the extent and at the times determined by the Members or Managers.

## SECTION 502. ALLOCATION OF DISTRIBUTIONS

Distributions of cash or other assets of an LLC shall be allocated among the Members as provided in the Operating Agreement, or if the Operating Agreement does not so provide, on the basis of the value of the contributions made by each Member.

## SECTION 503. DISTRIBUTION UPON PARTIAL REDEMPTION

Except as provided in this Part, upon the Distribution in partial liquidation of a Member's interest, the redeeming Member is entitled to receive the amount to which the Member is entitled under and, if not otherwise provided in, the fair value of the redeemed interest based on the Member's right to share in distributions from the LLC.

## SECTION 504. DISTRIBUTION UPON DISSOCIATION

Except as otherwise provided in this Part, upon an event of dissociation under Section 307 that does not cause dissolution of the LLC, a dissociating Member is entitled to receive any Distribution to which the Member is entitled under and, if not otherwise provided in, the fair market value of the Member's interest in the LLC based on the Member's rights to share in distributions from the LLC.

## SECTION 505. DISTRIBUTION IN KIND

Unless otherwise provided in the Operating Agreement:

1. A Member may not demand and receive any Distribution from an LLC in any form other than cash.

2. A Member may not be compelled to accept a Distribution of any asset in kind except for a liquidating Distribution made proportionately to all of the Members.

## SECTION 506. RIGHT TO DISTRIBUTION

At the time that a Member becomes entitled to receive a Distribution from an LLC, the Member has the status of and is entitled to all remedies available to a creditor of the LLC with respect to the Distribution.

## SECTION 507. LIMITATIONS OF DISTRIBUTIONS

1. An LLC may not declare or make a Distribution to any of its Members, if after giving effect to the Distribution, any of the following would occur:

   a. The LLC would be unable to pay its debts as they become due in the usual course of business.

   b. The fair market value of the LLC's total assets would be less than the sum of its total liabilities plus, unless the Operating Agreement provides otherwise, the amount that would be needed for the preferential rights upon dissolution of Members, if any.

2. An LLC may base a determination that a Distribution is not prohibited by subsection (1), above, on any of the following:

   a. Financial statements and other financial data prepared on the basis of accounting practices and principles that are reasonable under the circumstances.

   b. A fair market valuation or other method that is reasonable under the circumstances.

3. An LLC's indebtedness to a Member incurred by reason of a Distribution made in accordance with this Section is at parity with the LLC's indebtedness to its general unsecured creditors, except to the extent subordinated by written agreement. This Section does not affect the validity or priority of a security interest in an LLC's property that is created to secure the indebtedness to the Member.

## SECTION 508. LIABILITY FOR WRONGFUL DISTRIBUTION

1. Except as provided in subsection (2) below, a Member (other than the Tribe) or manager who votes or assents to a distribution in violation of Section 507 or is personally liable to the LLC for the amount of the excess distribution, subject to contribution from all other Managers or Members participating in such action.

2. An action to recover under this Section may be brought in the Courts of the Tribe; however a proceeding under this Section is barred unless it is brought within two (2) years after the date of the distribution.

# PART 6. OWNERSHIP AND TRANSFER OF PROPERTY

## SECTION 601. OWNERSHIP OF LLC PROPERTY

1. All property originally transferred to or acquired by an LLC is property of the LLC and not the Members individually.

2. Property acquired with LLC funds is presumed to be LLC property.

3. Property may be acquired, held, and conveyed in the name of the LLC.

## SECTION 602. TRANSFER OF PROPERTY

The property of an LLC may be transferred by an instrument of transfer executed by any Member in the name of the LLC, unless management is vested in Managers, in which case the document of transfer shall be executed by a manager, subject to any limitation that may be imposed by the Articles of Organization or Operating Agreement.

## SECTION 603. NATURE OF INTEREST

An LLC Interest is a general intangible, a type of personal property.

## SECTION 604. ASSIGNMENT OF LLC INTEREST

1. Unless otherwise provided:

   a. An LLC Interest is assignable in whole or in part.

   b. An assignment of an LLC Interest entitles the assignee to receive only the Distributions and to share in the allocations of profits and losses to which the assignee would be entitled with respect to the assigned interest.

   c. An assignment of an LLC Interest does not dissolve the LLC.

   d. Unless and until the assignee becomes a Member of the LLC under Section 606, the assignment of an LLC Interest does not entitle the assignee to participate in the management or exercise rights of a Member.

e. Unless and until the assignee of an LLC Interest becomes a Member of the LLC under Section 606, the assignor continues to be a Member.

f. The assignor of an LLC Interest is not released from any personal liability arising under this Act as a Member of the LLC solely as a result of the assignment.

2. Unless otherwise provided in the Operating Agreement, the granting of a security interest, lien, or other encumbrance in or against any or all of a Member's LLC Interest is not assignable and shall not cause the Member to cease to have the power to exercise any rights or powers of a Member.

## SECTION 605. RIGHTS OF JUDGMENT CREDITOR

Upon application to a court of competent jurisdiction, including a court other than the Tribal Court having valid jurisdiction over the Member, by any judgment creditor of a Member, the court may charge the LLC Interest of any Member (other than the Tribe) with payment of the unsatisfied amount of the judgment. To the extent so charged, the judgment creditor has only the rights of an assignee of the Member's LLC Interest in Distributions made by the LLC to Members and other assigned interest holders in the usual course of business. This Section does not deprive any Member of the benefit of any exemption laws applicable to the LLC Interest. In no event shall the Tribe's interest be attachable in abrogation of its sovereign immunity.

## SECTION 606. RIGHT OF ASSIGNEE TO BECOME A MEMBER

1. Unless otherwise provided in the Operating Agreement, an assignee of an LLC Interest may become a Member only if all of the other Members unanimously consent.

2. An assignee of an LLC Interest who becomes a Member has, to the extent assigned, the rights and powers and is subject to the restrictions and liabilities of the assignor under and this Act.

3. Unless otherwise provided in the Operating Agreement, an assignor of an LLC Interest is not released from any liability to the LLC without the written consent of all the Members, whether or not the assignee becomes a Member.

## SECTION 607. POWERS OF LEGAL REPRESENTATIVE

If a Member who is an individual dies or a court of competent jurisdiction adjudges the Member to be incompetent to manage his or her person or property, the Member's personal representative, administrator, guardian, conservator, trustee, or other legal representative shall have all the rights of an assignee of the Member's interest. If a Member is an Entity and is dissolved or terminated, the powers of such Member may be exercised by its legal representative or successor.

## PART 7. DISSOLUTION

### SECTION 701. DISSOLUTION

An LLC is dissolved and its affairs shall be wound up upon the happening of the first of the following:

1. The occurrence of events specified in the Operating Agreement.

2. The written consent of all Members.

3. An event of dissociation of a Member, unless otherwise provided in the Operating Agreement, or continuation is consented to by all remaining Members.

4. Entry of a decree of judicial dissolution under Section 702.

### SECTION 702. JUDICIAL DISSOLUTION

In a proceeding by or for a Member, the Court may order dissolution of an LLC if any of the following is established:

1. That it is not reasonably practicable to carry on the business of the LLC.

2. That the LLC is in a material way not acting in substantial conformity with its Operating Agreement.

3. That one or more Managers are consistently acting or will act in a manner that is illegal, oppressive, or fraudulent.

4. That one or more Members in control of the LLC are consistently acting or will consistently act in a manner that is illegal, unduly oppressive, or fraudulent.

5. That a substantial portion of the LLC assets are being misapplied or wasted.

### SECTION 703. WINDING UP

1. A dissolved LLC continues its legal existence but may not carry on any business except that which is appropriate to wind up and liquidate its business.

2. Unless otherwise provided for in the Operating Agreement:

   a. The business of the LLC may be wound up by any of the following:

   i.   The Members or Managers who have authority to manage the LLC before dissolution.

   ii.  In a judicial dissolution, the Person(s) designated by the Court.

b.  The Persons winding up the business of the LLC may do all of the following in the name of and on behalf of the LLC:

   i.   Collect its assets.

   ii.  Prosecute and defend suits.

   iii. Take any action necessary to settle and close the business of the LLC.

   iv.  Dispose of and transfer the property of the LLC.

   v.   Discharge or make provision for discharging the liabilities of the LLC.

   vi.  Distribute to the Members any remaining assets of the LLC.

3.  Dissolution of an LLC does not do any of the following:

   a.  Transfer title to any property of the LLC's.

   b.  Prevent transfer of all or part of a Member's interest.

   c.  Prevent commencement of a civil, criminal, administrative, or investigatory proceeding by or against the LLC.

   d.  Abate or suspend a civil, criminal, administrative, or investigatory proceeding pending by or against the LLC at the time of dissolution.

   e.  Terminate the authority of the registered agent of the LLC.

   f.  Alter the limited liability of any Member.

## SECTION 704. DISTRIBUTION OF ASSETS

Upon the winding up of an LLC, the assets shall be distributed in the following order:

1.  To creditors, including to the extent permitted by law, Members, and former Members in satisfaction of liabilities of the LLC.

2.  Unless otherwise provided in the Operating Agreement, to Members and former Members in satisfaction of liabilities for Distributions under Sections 501, 503 and 504.

3. Unless otherwise provided in the Operating Agreement, to Members and former Members first for the return of their contributions in proportion to their respective values and, thereafter, in proportion to their respective rights to share in Distributions from the LLC before dissolution.

## SECTION 705. ARTICLES OF DISSOLUTION

After the dissolution of an LLC under Section 701, the LLC may file articles of dissolution with the Secretary, that include the following:

1. The name of the LLC.

2. The date of filing of its Articles of Organization, and the dates of any amendments thereafter.

3. The statutory grounds under Section 701 for dissolution.

4. The delayed effective date of the articles of dissolution under Section 111.4, if applicable.

## SECTION 706. KNOWN CLAIMS AGAINST DISSOLVED LLC

1. A dissolved LLC may notify its known claimants in writing of the dissolution and specify a procedure for making claims.

2. A claim against the LLC is barred if:

   a. A claimant who was given written notice under subsection (1) above, does not deliver the claim, in writing, to the LLC by the deadline specified in the notice; or

   b. A claimant whose claim is rejected by the LLC does not commence a proceeding to enforce the claim within ninety (90) days after receipt of the rejection notice.

## SECTION 707. UNKNOWN OR CONTINGENT CLAIMS

A claim not barred under Section 706 may be enforced:

1. Against the dissolved LLC, to the extent of its undistributed assets.

2. If the dissolved LLC's assets have been distributed in liquidation, against a Member of the LLC, other than the Tribe, to the extent of the Member's proportionate share of the claim or of the assets of the LLC distributed to the Member in liquidation, whichever is less, but a Member's total liability for all claims under this Section may not exceed the total value of assets at the time distributed to the Member.

## PART 8. MERGER

### SECTION 801. MERGER

1.  Unless the context required otherwise, in this Part, LLC includes a Domestic LLC and a Foreign LLC.

2.  Unless otherwise provided in the Operating Agreement, one or more LLCs may merge with or into one or more LLCs or one or more other Foreign LLCs as provided in the plan of merger.

3.  Interests in an LLC that are a party to a merger may be exchanged for or converted into cash, property, obligations, or interest in the surviving LLC.

### SECTION 802. APPROVAL OF MERGER

1.  Unless otherwise provided in the Operating Agreement, an LLC that is a party to a proposed merger shall approve the plan of merger by an affirmative vote by all of the Members.

2.  Unless otherwise provided in the Operating Agreement, the Manager or Managers of an LLC may not approve a merger without also obtaining the approval of the LLC's Members under subsection (1), above.

3.  Each foreign LLC that is a party to a proposed merger shall approve the merger in the manner and by the vote required by the laws applicable to the Foreign LLC.

4.  Each LLC that is a party to the merger shall have any rights to abandon the merger that is provided for in the plan of merger or in the laws applicable to the LLC.

5.  Upon approval of a merger, the LLC shall notify each Member of the approval and of the effective date of the merger.

### SECTION 803. PLAN OF MERGER

Each LLC that is a party to a proposed merger shall enter into a written plan of merger to be provided under Section 804 and approved under Section 802.

### SECTION 804. ARTICLES OF MERGER

1.  The surviving LLC shall deliver to the Secretary articles of merger, executed by each party to the plan of merger, that include all of the following:

    a.  The name and state or jurisdiction of organization for each LLC that is to merge.

    b.  The plan of merger.

    c.  The name of the surviving or resulting LLC.

    d.  A statement as to whether the management of the surviving LLC will be reserved to its Members or vested in one or more Managers.

    e.  The delayed effective date of the merger under Section 111.4, if applicable.

    f.  A statement as to whether the Tribe is the sole Member.

    g.  If the Tribe is sole Member, a statement as to whether the LLC enjoys the Tribe's sovereign immunity.

    h.  A statement that the plan of merger was approved under Section 802.

2. A merger takes effect upon filing with and acceptance by the Secretary, or if applicable, the effective date of the articles of merger.

## SECTION 805. EFFECTS OF MERGER

A merger has the following effects:

1. The LLCs that are parties to the plan of merger must become a single entity, which shall be the entity designated in the plan of merger as the surviving LLC.

2. Each party to the plan of merger, except the surviving LLC, ceases to exist.

3. The surviving LLC possesses all of the rights, privileges, immunities, and powers of each merged LLC (including any rights of sovereign immunity) and is subject to all of the restrictions, disabilities, and duties of each merged LLC.

4. All property and all debts, including contributions, and each interest belonging to or owed to each of the parties to the merger are vested in the surviving LLC without further act.

5. Title to all real estate and any interest in real estate, vested in any party to the merger, does not revert and is not in any way impaired because of the merger.

6. The surviving LLC has all the liabilities and obligations of each of the parties to the plan of merger and any claim existing or action or proceedings pending by or against any merged LLC may be prosecuted as if the merger had not taken place, or the surviving LLC may be substituted in the action.

7. The rights of creditors and any liens on the property of any party to the plan of merger survive the merger.

8. The interests in an LLC that are to be converted or exchanged into interest, cash, obligations, or other property under the terms of the plan of merger are converted and the former interest holders are entitled only to the rights provided in the plan of merger of the rights otherwise provided by law.

9. The Articles of Organization of the surviving LLC are amended to the extent provided in the articles of merger.

## SECTION 806. RIGHT TO OBJECT

Unless otherwise provided in the Operating Agreement, upon receipt of the notice required by Section 802.5, a Member who did not vote in favor of the merger may, within twenty (20) days after the date of the notice, voluntarily dissociate from the LLC under Section 307.3 and receive fair value for the Member's LLC Interest under Section 504.

# PART 9. LIMITED LIABILITY COMPANIES WHOLLY OWNED BY THE TRIBE

## SUBPART 1. GENERAL PROVISIONS FOR TRIBALLY-OWNED LLCS

## SECTION 911. LLCS DIRECTLY OWNED BY THE TRIBE

It is hereby authorized to be created, by a duly adopted resolution of the Tribal Council, LLCs wholly owned by the Tribe. The organizer shall file with the Secretary Articles of Organization and a certified copy of the resolution authorizing the formation of each such LLC.

## SECTION 912. TRIBAL SUBSIDIARY COMPANIES

It is hereby authorized to be created by resolution of the Board of Directors of an LLC wholly owned by the Tribe, or of a wholly-owned subsidiary of such LLC, subsidiary LLCs to be wholly owned by the parent LLC, which shall be instrumentalities and arms of the Tribe. The organizer of such a Tribal subsidiary LLC shall file with the Secretary the Articles of Organization of the Tribal subsidiary LLC and a certified copy of a resolutions of the Board of Directors of the parent LLC authorizing the formation of the subsidiary LLC.

## SECTION 913. PRIVILEGES AND IMMUNITIES

The LLCs established under Sections 911 and 912 shall be considered to be instrumentalities and arms of the Tribe, and their officers and employees considered officers and employees of the Tribe, created for the purpose of carrying out authorities and responsibilities of the Tribe for economic development of the Tribe and the advancement of its citizens. Such LLCs, their directors, officers, and

employees shall, therefore, be entitled to all of the privileges and immunities enjoyed by the Tribe, including, but not limited to, immunities from suit in Federal, State and Tribal courts and from Federal, State, and local taxation or regulation, except that:

1. The LLC may specifically grant limited waivers of its immunity from suit and consent to be sued in Tribal Court or another court of competent jurisdiction; provided, however, that:

   a. any such waiver or consent to suit granted pursuant to the LLC's shall in no way extend to any action against the Tribe, nor shall it in any way be deemed a waiver of any of the rights, privileges and immunities of the Tribe;

   b. any recovery against the LLC shall be limited to the assets of the LLC (or such portion of the LLC's assets as further limited by the waiver or consent), and the Tribe shall not be liable for the payment or performance of any of the obligations of the LLC, and no recourse shall be had against any assets or revenues of the Tribe in order to satisfy the obligations of the LLC; including assets of the Tribe leased, loaned, or assigned to the LLC for its use, without transfer of title, and

   c. any waiver of the LLC's immunities granted pursuant to the LLC's Operating Agreement shall be further limited or conditioned by the terms of such waiver.

2. The sovereign immunity of the LLC shall not extend to actions against the LLC by the Tribe acting as its sole Member, or, in the case of a subsidiary LLC created pursuant to this Part, by the parent LLC acting as its Member, pursuant to Section 912.

3. The special privileges and immunities described in this Section shall only apply to an LLC wholly owned, directly or indirectly, by the Tribe.

## SECTION 914. OWNERSHIP

1. No LLC Interest in any LLC in which the Tribe is the sole Member may be alienated unless approved by a duly adopted resolution of the Tribal Council. Further, no LLC Interest in any Tribally-owned subsidiary LLC may be alienated unless approved by a duly adopted resolution of the Board of Directors of the parent LLC.

2. All LLC Interests in any LLC wholly owned by the Tribe shall be held by and for the Tribe, or in the case of a Tribal subsidiary LLC, by an LLC wholly owned by the Tribe. No individual citizen of the Tribe shall have any personal ownership interest in any LLC organized under this Act and Part, whether by virtue of such person's status as a citizen of the Tribe, as an officer of the government of the Tribe, or otherwise.

## SECTION 915. PROJECT COMPANIES WITH NON-TRIBAL OWNERS

Any LLC created pursuant to this Act and Part, including any subsidiary LLCs, may form or own interests or shares in any Entity with other governmental or non-governmental Persons under the laws of

the Tribe or any other jurisdiction ("Project Companies"); provided, however, that the partial ownership interest in such Project Companies shall not diminish or affect the privileges and immunities of the Tribally-owned LLC or subsidiary LLC created pursuant to this Act.

## SECTION 916. PURPOSE OF LLC'S DIRECTLY AND INDIRECTLY OWNED BY TRIBE

The Operating Agreement for an LLC wholly owned, directly or indirectly, by the Tribe shall state the purpose of the LLC that relates to the overall needs, priorities, goals, and objectives of the Tribe and the Tribe's government, including how the LLC will contribute to tribal economic policy and further the Tribe's goals of self-determination and economic self-sufficiency.

## SUBPART 2. SPECIAL FORMATION REQUIREMENTS FOR LLC'S WHOLLY OWNED BY THE TRIBE

## SECTION 921. FORMATION

1. The Chairman of the Tribal Council shall be the Organizer of any LLC in which the Tribe will be the sole Member.

2. Unless a delayed effective date is specified:

   a. the existence of an LLC directly owned by the Tribe begins when the Articles of Organization have been approved by a resolution enacted by the Tribal Council or approved by the Chairman, and the articles have been filed with the Secretary.

   b. the existence of a Tribal subsidiary LLC owned by a parent LLC that is wholly owned by the Tribe begins when the Articles of Organization have been approved by a resolution of the Board of Directors of the parent LLC, and the Articles of Organization have been filed with the Secretary.

## SECTION 922. ADDITIONAL REQUIREMENTS FOR ARTICLES OF ORGANIZATION

As set forth in Section 913, LLCs established under Sections 911 and 912 may grant a limited waiver of sovereign immunity in order to promote economic development through commercial transactions for which such a waiver is necessary and beneficial to the Tribe. The method for granting a limited waiver of sovereign immunity through the above mentioned entities is as follows:

1. The sovereign immunity of a Tribal entity may be waived only by:

   c. A resolution adopted by the Board of Directors of the Tribal LLC for the specific purpose of granting a waiver; and

   d. the language of the waiver must be explicit; and

e. the waiver must be contained in a written contract or commercial document to which the LLC is a party.

2. Waivers of sovereign immunity by resolution may be granted only when necessary to secure a substantial advantage or benefit to the tribal entity of the Tribe. Waivers of sovereign immunity by resolution may not be general but must be specific and limited as to duration, grantee, transaction, property or funds of the Tribal LLC subject to the waiver, the court having jurisdiction, and any applicable law.

## SUBPART 3. MANAGEMENT OF TRIBALLY-OWNED LLCS

### SECTION 931. BOARD OF DIRECTORS AS MANAGER

1. Any LLC in which a wholly-owned Tribal LLC is the sole Member shall be managed by a Board of Directors.

2. The number, terms, and method for selecting and removing Directors of any LLC in which a Tribally-owned LLC is the sole Member shall be specified in the subsidiary LLC's Articles of Organization.

## SUBPART 4. DISTRIBUTIONS TO TRIBE AS MEMBER

### SECTION 941. DISTRIBUTIONS OF INCOME TO TRIBE AS MEMBER

An LLC in which the Tribe is a Member shall distribute the net income of the LLC as set forth in a dividend plan adopted in accordance with the Articles or Organization and Operating Agreement (if any) and duly approved by the Tribe except that an LLC may retain reserves necessary to carry on the LLC's business in a reasonably prudent manner and as recommended by its Board of Directors, if applicable, subject to further limitations set forth in Section 507 and in its Articles of Organization.

## SUBPART 5. ADDITIONAL REPORTS AND AUDITS

### SECTION 951. AUDIT

In addition to any Member inspection rights provided in the Operating Agreement of an LLC wholly owned by the Tribe, the Tribe may at any time, by process in the manner provided in Section 941, require that any LLC wholly owned by the Tribe or an LLC in which the Tribe owns an LLC Interest be audited by an independent auditor hired by the Tribe who shall have the absolute right to require access to all of the LLC's records and documents necessary for such an audit.

### SECTION 952. FINANCIAL, BUSINESS, AND BUDGET INFORMATION FOR THE TRIBE

In addition to any reports to the Member required by the Operating Agreement, the management of each LLC in which the Tribe or a Tribally-owned LLC is the sole Member shall submit the following information to the Chairman of the Tribal Council and the Tribal Council or their designees (which the Tribal Council may deem confidential and proprietary upon request of the LLC's Board of Directors):

1. Copies of any periodic financial statements (including monthly or quarterly balance sheets, profit and loss statements, and cash flow statements) as may be prepared in the ordinary course of business, promptly after such statements are furnished to the LLC's management;

2. A full report of the business activities of the corporation within 120 days after the close of each fiscal year; and

3. A proposed annual budget for the following Tribal fiscal year, including any proposed funding from the Tribe or anticipated distributions to the Tribe, by May 15 of each year, and the final annual budget adopted by each Board by October 1 of each tribal fiscal year.

## SUBPART 6. ACTIONS AGAINST LLCS WHOLLY OWNED BY THE TRIBE

### SECTION 961. COURT ACTIONS AUTHORIZED

1. The Tribe, as the sole Member of any LLC organized pursuant to this Act, may bring a civil action against the LLC, its Managers or its officers in the Tribal Court only pursuant to this Part to:

   a. enjoin temporarily or permanently any action of the LLC that is an ultra vires act outside the authority of the LLC and that is either:

      i. unlawful; or

      ii. has or could cause material harm to the assets of the LLC or the Tribe if no immediate action is taken.

   b. require the distribution of the LLC's surplus net income, to the extent permitted by Section 507.

2. In accordance with Section 913.2, the sovereign immunity of the LLC shall not extend to actions against the LLC by the Tribe acting in its capacity as a Member of such LLC, or, in the case of a subsidiary LLC created pursuant to this Part, by the parent LLC acting as a Member of such subsidiary LLC.

3. Nothing contained herein shall be construed authorizing actions of any kind whatsoever against the Tribe.

**SECTION 962. APPROVAL OF TRIBE REQUIRED**

The filing of any court action against the LLC pursuant to this Part must be authorized by the Tribe as a Member in the same manner as required for voting on any item properly coming before the Tribe as a Member. The request for consideration of the proposed court action may be made by the Chairman of the Indian Council.

**SECTION 963. RELIEF AVAILABLE**

In any action brought under this Part, the Tribal Court may, based upon a preponderance of the evidence set forth in its findings of fact and conclusions of law:

1. Issue a temporary restraining order, preliminary injunction, and permanent injunctive relief pursuant to the procedures and standards in the Tribe's Rules of Civil Procedure, except that no bond need be posted for any preliminary injunctive relief; or

2. Order that funds of the LLC be distributed to the Tribe to the extent permitted by the Articles of Organization and Section 507.


# PART 10. REGISTRATION OF FOREIGN LIABILITY COMPANIES
**[RESERVED.]**


# PART 11. SEVERABILITY CLAUSE

If any provision of this Act or the application of such provision to any Person or circumstance is found to be unenforceable by a court of competent jurisdiction, such provision shall be of no force or effect; but the remainder of the Act shall continue in full force and effect.


[Enacting language and any approval signature to follow]

# EXHIBIT D





STATE OF CONNECTICUT

DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800



**Howard F. Pitkin**
Commissioner

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | |
| * | **TEMPORARY ORDER TO** |
| **IN THE MATTER OF:** * | **CEASE AND DESIST** |
| * | |
| **GREAT PLAINS LENDING, LLC** * | **ORDER TO MAKE RESTITUTION** |
| **("Great Plains")** * | |
| * | **NOTICE OF INTENT TO ISSUE** |
| **JOHN R. SHOTTON** * | **ORDER TO CEASE AND DESIST** |
| **("Shotton")** * | |
| * | **NOTICE OF INTENT TO IMPOSE** |
| **CLEAR CREEK LENDING** * | **CIVIL PENALTY** |
| **("Clear Creek")** * | |
| * | **AND** |
| (collectively, **"Respondents"**) * | |
| * | **NOTICE OF RIGHT TO HEARING** |
| * * * * * * * * * * * * * * * * * * * * * * * * | |

### APPEARANCE AND REQUEST FOR HEARING

Please enter the appearance of:

_____
(Attorney/Pro Se Respondent)

_____

_____
(Mailing Address)

_____

E-mail Address: _____
Telephone Number: _____ Facsimile Number: _____

The above-named individual is qualified as provided in Section 36a-1-32 of the Regulations of Connecticut State Agencies and authorized to represent and accept service in the above-entitled case for:

( ) The Respondent        ( ) All Respondents        ( ) The following Respondent(s) only

_____

Signed: _____ Date: _____
         (Attorney/Pro Se Respondent)

By returning this form, you can expect to receive a telephone call with the hearing officer and the prosecuting attorney approximately two weeks prior to the scheduled hearing date to discuss issues related to the number of anticipated witnesses, possibility of settlement and anticipated length of the hearing, and other related issues.

TEL: (860) 240-8299
FAX: (860) 240-8178
*An Affirmative Action/Equal Opportunity Employer*
website: http://www.ct.gov/dob



STATE OF CONNECTICUT

## DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800



**Howard F. Pitkin**
Commissioner

<table>
<tr><td>

* * * * * * * * * * * * * * * * * * * * * * * *

IN THE MATTER OF:

GREAT PLAINS LENDING, LLC
("Great Plains")

JOHN R. SHOTTON
("Shotton")

CLEAR CREEK LENDING
("Clear Creek")

    (collectively, "Respondents")

* * * * * * * * * * * * * * * * * * * * * * * *
</td><td>

TEMPORARY ORDER TO
CEASE AND DESIST

ORDER TO MAKE RESTITUTION

NOTICE OF INTENT TO ISSUE
ORDER TO CEASE AND DESIST

NOTICE OF INTENT TO IMPOSE
CIVIL PENALTY

AND

NOTICE OF RIGHT TO HEARING
</td></tr>
</table>

## I.  LEGAL AUTHORITY AND JURISDICTION

The Banking Commissioner ("Commissioner") is charged with the administration of Part III of

Chapter 668, Sections 36a-555 to 36a-573, inclusive, of the Connecticut General Statutes, "Small Loan

Lenders", and the regulations adopted thereunder, Sections 36a-570-1 to 36a-570-17, inclusive, of the

Regulations of Connecticut State Agencies ("Regulations").

Pursuant to the authority granted by Section 36a-17 of the Connecticut General Statutes, as

amended by Public Acts 14-7 and 14-89, the Commissioner, through the Consumer Credit Division of the

Department of Banking ("Department"), has investigated the activities of Respondents to determine if

they have violated, are violating or are about to violate the provisions of the Connecticut General Statutes

or Regulations within the jurisdiction of the Commissioner.

TEL: (860) 240-8299
FAX: (860) 240-8178
*An Affirmative Action/Equal Opportunity Employer*
website: http://www.ct.gov/dob

Section 36a-17(a) of the Connecticut General Statutes, as amended, provides, in pertinent part, that:

> The commissioner, in the commissioner's discretion, may, subject to the provisions of section 36a-21 and the Freedom of Information Act, as defined in section 1-200, (1) make such public or private investigations . . . within or outside this state, concerning any person subject to the jurisdiction of the commissioner, as the commissioner deems necessary to carry out the duties of the commissioner, (2) require or permit any person to testify, produce a record or file a statement in writing, under oath, or otherwise as the commissioner determines, as to all the facts and circumstances concerning the matter to be investigated or about which an action or proceeding is pending . . . .

Section 36a-52 of the Connecticut General Statutes provides, in pertinent part, that:

> (a) Whenever it appears to the commissioner that any person has violated, is violating or is about to violate any provision of the general statutes within the jurisdiction of the commissioner, or any regulation . . . adopted . . . thereunder, the commissioner may send a notice to such person by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt. The notice shall be deemed received by the person on the earlier of the date of actual receipt, or seven days after mailing or sending. Any such notice shall include: (1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the general statutes, [or] regulations . . . alleged to have been violated; (4) a short and plain statement of the matters asserted; and (5) a statement indicating that such person may file a written request for a hearing on the matters asserted within fourteen days of receipt of the notice. If a hearing is requested within the time specified in the notice, the commissioner shall hold a hearing upon the matters asserted in the notice, unless the person fails to appear at the hearing. After the hearing, the commissioner shall determine whether an order to cease and desist should be issued against the person named in the notice. If the person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner shall issue an order to cease and desist against the person. No such order shall be issued except in accordance with the provisions of chapter 54.

> (b) If the commissioner finds that the public welfare requires immediate action, the commissioner may incorporate a finding to that effect in the notice sent in accordance with subsection (a) of this section and issue a temporary order requiring the person to cease and desist from the activity which constitutes such alleged violation and to take or refrain from taking such action as in the opinion of the commissioner will effectuate the purposes of this section. Such temporary order shall become effective on receipt and, unless set aside or modified by a court, shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in the notice.

Section 36a-50 of the Connecticut General Statutes provides, in pertinent part, that:

(a) (1)  Whenever the commissioner finds as the result of an investigation that any person has violated any provision of the general statutes within the jurisdiction of the commissioner, or any regulation . . . adopted . . . thereunder, the commissioner may send a notice to such person by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt.  The notice shall be deemed received by the person on the earlier of the date of actual receipt or seven days after mailing or sending.  Any such notice shall include:  (A) A statement of the time, place, and nature of the hearing; (B) a statement of the legal authority and jurisdiction under which the hearing is to be held; (C) a reference to the particular sections of the general statutes, [or] regulations . . . alleged to have been violated; (D) a short and plain statement of the matters asserted; (E) the maximum penalty that may be imposed for such violation; and (F) a statement indicating that such person may file a written request for a hearing on the matters asserted not later than fourteen days after receipt of the notice.

(2)  If a hearing is requested within the time specified in the notice, the commissioner shall hold a hearing upon the matters asserted in the notice unless such person fails to appear at the hearing.  After the hearing, if the commissioner finds that the person has violated any such provision, [or] regulation, . . . the commissioner may, in the commissioner's discretion and in addition to any other remedy authorized by law, order that a civil penalty not exceeding one hundred thousand dollars per violation be imposed upon such person.  If such person does not request a hearing within the time specified in the notice or fails to appear at the hearing, the commissioner may, as the facts require, order that a civil penalty not exceeding one hundred thousand dollars per violation be imposed upon such person.

(3)  Each action undertaken by the commissioner under this subsection shall be in accordance with the provisions of chapter 54. . . .

(c)  Whenever the commissioner finds as the result of an investigation that any person has violated any provision of the general statutes within the jurisdiction of the commissioner, or any regulation . . . adopted . . . under such provisions, the commissioner may, in addition to any other remedy authorized by law, order such person to (1) make restitution of any sums shown to have been obtained in violation of any such provision, [or] regulation . . . plus interest at the legal rate set forth in section 37-1 . . . .  After the commissioner issues such an order, the person named in the order may, not later than fourteen days after the receipt of such order, file a written request for a hearing.  The order shall be deemed received by the person on the earlier of the date of actual receipt or seven days after mailing or sending.  Any such hearing shall be held in accordance with the provisions of chapter 54.

- 3 -

## II. MATTERS ASSERTED

1. Great Plains is a limited liability company organized under the laws of the Otoe-Missouria Tribe of Indians with an address of 8151 Highway 177, Red Rock, Oklahoma, which allegedly operates within the boundaries of the Otoe-Missouria Reservation ("Reservation").

2. Clear Creek is an entity with an address of 3910 W. 6th Avenue, Box 242, Stillwater, Oklahoma, which allegedly operates within the boundaries of the Reservation.

3. At all relevant times hereto, Shotton served as Chairman of both the Otoe-Missouria Tribe of Indians ("Tribe") and its Tribal Council, the Tribe's supreme governing body ("Tribal Council"). Shotton also approved the Operating Agreement of Great Plains and serves as Great Plains' Secretary/Treasurer.

4. At all relevant times hereto, Ted Grant ("Grant") served as Vice-Chairman of the Tribe and its Tribal Council. Grant also serves as an officer of Great Plains and on its Board of Directors.

5. The Tribal Council developed, approved and enacted the Otoe-Missouria Consumer Finance Services Regulatory Ordinance ("Ordinance") to govern all consumer finance business activity occurring within the Tribe's jurisdiction, and established the Otoe-Missouria Consumer Financial Services Regulatory Commission.

6. On May 4, 2011, the Tribal Council passed Resolution OMTC# 54293 creating Great Plains, granting to Great Plains the consumer lending license required under Section 104 of the Ordinance and waiving the fees, application and renewal requirements of Sections 105, 106, 107, 108 and 109 of the Ordinance.

7. From at least September 2013 to the present, Great Plains offered, via US mail, e-mail and its website at www.greatplainslending.com, unsecured consumer loans in amounts of $100 to $2,000 with annual interest rates of 199.44% to 448.76% ("Consumer Loans"). In particular, consumers received Consumer Loan solicitations at their Connecticut residences, and Great Plain's website solicited consumers, including Connecticut residents, via a drop-down list of state abbreviations, to "Apply Now" or to call 1-877-836-1506 to receive a Consumer Loan.

- 4 -

8. Consumer Loans are funded by tribal-owned bank accounts held at banks located off the Reservation, including, but not limited to, Missouri Bank in Kansas City, Missouri. As Chairman of the Tribe and Secretary/Treasurer of Great Plains, Shotton has direct knowledge of the contents of the Tribe's bank accounts, including how such bank accounts are used and funded.

9. On or about September 16, 2013, a Connecticut resident entered into a "Consumer Loan Agreement" with Great Plains ("Agreement") agreeing to pay interest at a rate of 199.44% on a Consumer Loan in the amount of $1,500. Shortly thereafter, the loan amount was electronically deposited into the Connecticut resident's bank account.

10. On or about October 16, 2013, another Connecticut resident entered into an Agreement agreeing to pay interest at a rate of 349.05% on a Consumer Loan in the amount of $1,000. Shortly thereafter, the loan amount was electronically deposited into such resident's bank account. To date, such resident has made payments from this state to Great Plains totaling in excess of $2,134.

11. On or about October 22, 2013, a third Connecticut resident entered into an Agreement agreeing to pay interest at rate of 398.20% on a Consumer Loan in the amount of $800. Shortly thereafter, the loan amount was electronically deposited into such resident's bank account. To date, such resident has made payments from this state to Great Plains totaling in excess of $2,278.

12. All Agreements were electronically signed via the Internet by Connecticut residents while physically present in this state. At no time did Connecticut residents leave the physical boundaries of this state or enter the physical boundaries of the Reservation to receive a Consumer Loan.

13. From at least July 2014 to the present, Clear Creek offered, via its website at clearcreeklending.com, unsecured small loans in amounts of $1,500 to $2,500 with annual interest rates of 390% to 420%. In particular, Clear Creek's website solicited consumers, including Connecticut residents via a drop-down list of states, to "Apply Now".

14. At no time relevant hereto were Respondents licensed as small loan lenders in Connecticut, nor are Respondents exempt from such licensure requirements.

### III. STATUTORY BASIS FOR ORDER TO CEASE AND DESIST, ORDER TO MAKE RESTITUTION AND IMPOSITION OF CIVIL PENALTY

Section 36a-555 of the Connecticut General Statutes provides, in pertinent part, that:

> No person shall (1) engage in the business of making loans of money or credit; (2) make, offer, broker or assist a borrower in Connecticut to obtain such a loan; . . . through any method, including, but not limited to, mail, telephone, Internet or any electronic means, in the amount or to the value of fifteen thousand dollars or less for loans made under section 36a-563 or section 36a-565, and charge, contract for or receive a greater rate of interest, charge or consideration than twelve per cent per annum therefor, unless licensed to do so by the commissioner pursuant to sections 36a-555 to 36a-573, inclusive. . . .

Section 36a-573 of the Connecticut General Statutes provides, in pertinent part, that:

> (a) No person, except as authorized by the provisions of sections 36a-555 to 36a-573, inclusive, shall, directly or indirectly, charge, contract for or receive any interest, charge or consideration greater than twelve per cent per annum upon the loan, use or forbearance of money or credit of the amount or value of . . . (2) fifteen thousand dollars or less for any such transaction entered into on and after October 1, 1997. . . . No loan for which a greater rate of interest or charge than is allowed by the provisions of sections 36a-555 to 36a-573, inclusive, has been contracted for or received, wherever made, shall be enforced in this state, and any person in any way participating therein in this state shall be subject to the provisions of said sections . . . .

> (b) The provisions of subsection (a) of this section shall apply to any loan made or renewed in this state if the loan is made to a borrower who resides in or maintains a domicile in this state and such borrower (1) negotiates or agrees to the terms of the loan in person, by mail, by telephone or via the Internet while physically present in this state; (2) enters into or executes a loan agreement with the lender in person, by mail, by telephone or via the Internet while physically present in this state; or (3) makes a payment of the loan in this state. As used in this subsection, "payment of the loan" includes a debit on an account the borrower holds in a branch of a financial institution or the use of a negotiable instrument drawn on an account at a financial institution, and "financial institution" means any bank or credit union chartered or licensed under the laws of this state, any other state or the United States and having its main office or a branch office in this state.

> (c) Whenever it appears to the commissioner that any person has violated the provisions of subsection (a) of this section or offered a loan that violates the provisions of subsection (a) of this section, the commissioner may investigate, take administrative action or assess civil penalties and restitution in accordance with the provisions of sections 36a-50 and 36a-52.

- 6 -

1. Great Plains' engaging in the business of making loans of money or credit without obtaining the required license, as more fully described in paragraphs 1, 3 through 12, inclusive, and 14 of the Matters Asserted, constitutes at least one violation of Section 36a-555(1) of the Connecticut General Statutes. Such violation forms the basis to issue an order to cease and desist against Great Plains pursuant to Section 36a-52(a) of the Connecticut General Statutes, issue an order to make restitution against Great Plains pursuant to Section 36a-50(c) of the Connecticut General Statutes, and impose a civil penalty upon Great Plains pursuant to Section 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

2. Shotton's participating in Great Plains' violation of Section 36a-555(1) of the Connecticut General Statutes, as more fully described in paragraphs 3, 5 through 12, inclusive, and 14 of the Matters Asserted, which pursuant to Section 36a-573(a) of the Connecticut General Statutes, subjects Shotton to the provisions of said section. Such violation forms the basis to issue an order to cease and desist against Shotton pursuant to Section 36a-52(a) of the Connecticut General Statutes and impose a civil penalty upon Shotton pursuant to Section 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

3. Great Plains' making, offering or assisting Connecticut borrowers to obtain Consumer Loans in Connecticut, as more fully described in paragraphs 1, 3 through 12, inclusive, and 14 of the Matters Asserted, constitutes at least three violations of Section 36a-555(2) of the Connecticut General Statutes. Such violations form the basis to issue an order to cease and desist against Great Plains pursuant to Section 36a-52(a) of the Connecticut General Statutes, issue an order to make restitution against Great Plains pursuant to Section 36a-50(c) of the Connecticut General Statutes, and impose a civil penalty upon Great Plains pursuant to Section 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

4. Shotton's participating in Great Plains' violation of Section 36a-555(2) of the Connecticut General Statutes, as more fully described in paragraphs 3, 5 through 12, inclusive, and 14 of the Matters Asserted, which pursuant to Section 36a-573(a) of the Connecticut General Statutes, subjects Shotton to the provisions of said section. Such violation forms the basis to issue an order to cease and desist against Shotton pursuant to Section 36a-52(a) of the Connecticut General Statutes and impose a civil penalty upon Shotton pursuant to Section 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

5. Great Plains' charging, contracting for and receiving interest at a rate greater than 12% on at least three Consumer Loans to Connecticut residents in amounts less than $15,000, as more fully described in paragraphs 9 through 12, inclusive, and 14 of the Matters Asserted, constitutes at least three violations of Section 36a-573(a) of the Connecticut General Statutes. Such violations form the basis to issue an order to cease and desist against Great Plains pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes, issue an order to make restitution against Great Plains pursuant to Sections 36a-573(c) and 36a-50(c) of the Connecticut General Statutes and impose a civil penalty upon Great Plains pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

6. Shotton's participating in Great Plains' violation of Section 36a-573(a) of the Connecticut General Statutes, as more fully described in paragraphs 3, 5, 6, 8 through 12, inclusive, and 14 of the Matters Asserted, which pursuant to Section 36a-573(a) of the Connecticut General Statutes, subjects Shotton to the provisions of said section. Such violation forms the basis to issue an order to cease and desist against Shotton pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes and impose a civil penalty upon Shotton pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the

- 8 -

Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

7. Clear Creek's offering or assisting Connecticut borrowers to obtain small loans in Connecticut, as more fully described in paragraphs 2, 13 and 14 of the Matters Asserted, constitutes at least one violation of Section 36a-555(2) of the Connecticut General Statutes. Such violation forms the basis to issue an order to cease and desist against Clear Creek pursuant to Section 36a-52(a) of the Connecticut General Statutes and impose a civil penalty upon Clear Creek pursuant to Section 36a-50(a) of the Connecticut General Statutes. Section 36a-50(a) of the Connecticut General Statutes authorizes the Commissioner to impose a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation.

## IV. FINDING AND STATUTORY BASIS FOR
## TEMPORARY ORDER TO CEASE AND DESIST

The Commissioner finds that the public welfare requires immediate action to issue a temporary order requiring Great Plains to cease and desist from violating subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, Shotton to cease and desist from participating in said violations, and Clear Creek to cease and desist from violating Section 36a-555(2) of the Connecticut General Statutes. Further, Respondents shall take such action as set forth herein to effectuate the purposes of Section 36a-52(b) of the Connecticut General Statutes in that the interests of Connecticut residents are being materially prejudiced by: (1) Great Plains' continuing to offer and make loans in amounts less than $15,000 with annual interest rates greater than 12%, and receive interest in excess of 12% on such loans, while not being duly licensed as a small loan lender in Connecticut and complying with the restrictions imposed on such licensees pursuant to Sections 36a-555 to 36a-573, inclusive, of the Connecticut General Statutes; (2) Shotton's participation in such activity; and (3) Clear Creek's continuing to offer loans in amounts less than $15,000 with annual interest rates greater than 12%, while not being duly licensed as a small loan lender in Connecticut and complying with the

restrictions imposed on such licensees pursuant to Sections 36a-555 to 36a-573, inclusive, of the Connecticut General Statutes.

### V. TEMPORARY ORDER TO CEASE AND DESIST, ORDER TO MAKE RESTITUTION, NOTICE OF INTENT TO ISSUE ORDER TO CEASE AND DESIST, NOTICE OF INTENT TO IMPOSE CIVIL PENALTY, AND NOTICE OF RIGHT TO HEARING

**WHEREAS,** the Commissioner has reason to believe that Great Plains has engaged in acts or conduct which forms the basis to issue an order to cease and desist pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes, issue an order to make restitution pursuant to Sections 36a-573(c) and 36a-50(c) of the Connecticut General Statutes, and impose a civil penalty pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes;

**WHEREAS,** the Commissioner has reason to believe that Shotton has engaged in acts or conduct which forms the basis to issue an order to cease and desist pursuant to Sections 36a-573(c) and 36a-52(a) of the Connecticut General Statutes and impose a civil penalty pursuant to Sections 36a-573(c) and 36a-50(a) of the Connecticut General Statutes;

**WHEREAS,** the Commissioner has reason to believe that Clear Creek has engaged in acts or conduct which forms the basis to issue an order to cease and desist pursuant to Section 36a-52(a) of the Connecticut General Statutes and impose a civil penalty pursuant to Section 36a-50(a) of the Connecticut General Statutes;

**AND WHEREAS,** the Commissioner has made the finding required under Section 36a-52(b) of the Connecticut General Statutes.

**THE COMMISSIONER THEREFORE ORDERS,** pursuant to Section 36a-52(b) of the Connecticut General Statutes, that Great Plains Lending, LLC immediately **CEASE AND DESIST** from violating subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, including but not limited to, enforcing Consumer Loans by any means. This Temporary Order to Cease and Desist shall become effective upon receipt by Great Plains Lending, LLC, and, unless set

aside or modified by a court, shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Temporary Order to Cease and Desist.

**THE COMMISSIONER FURTHER ORDERS,** pursuant to Section 36a-52(b) of the Connecticut General Statutes, that John R. Shotton immediately **CEASE AND DESIST** from participating in violations of subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, including but not limited to, enforcing Consumer Loans by any means. This Temporary Order to Cease and Desist shall become effective upon receipt by John R. Shotton and, unless set aside or modified by a court, shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Temporary Order to Cease and Desist.

**THE COMMISSIONER FURTHER ORDERS,** pursuant to Section 36a-52(b) of the Connecticut General Statutes, that Clear Creek Lending immediately **CEASE AND DESIST** from violating Section 36a-555(2) of the Connecticut General Statutes. This Temporary Order to Cease and Desist shall become effective upon receipt by Clear Creek Lending and, unless set aside or modified by a court, shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Temporary Order to Cease and Desist.

**THE COMMISSIONER FURTHER ORDERS,** pursuant to Section 36a-17(a) of the Connecticut General Statutes, as amended, and Section 36a-52(b) of the Connecticut General Statutes, that: Not later than fourteen (14) days from receipt of this Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing, Great Plains Lending, LLC and John R. Shotton, shall provide to Carmine Costa, Director, Consumer Credit Division, Department of Banking, 260 Constitution Plaza, Hartford, Connecticut 06103-1800, or carmine.costa@ct.gov, a list of all Connecticut residents who, on or after October 1, 2009, have: (1) applied for a Consumer Loan from Great Plains Lending, LLC; or (2) contracted with Great Plains Lending, LLC to pay interest at a rate in excess of 12% on a Consumer Loan. For each Consumer Loan consummated by a Connecticut resident, such submission shall include: (a) a copy of each loan agreement specifying the amount and annual interest rate of the loan, and (b) a list

- 11 -

of each Connecticut resident's name and address and full itemization of payments made pursuant to the loan agreement, specifying the dates and amounts of such payments.

**THE COMMISSIONER FURTHER ORDERS,** pursuant to Section 36a-17(a) of the Connecticut General Statutes, as amended, and Section 36a-52(b) of the Connecticut General Statutes, that: Not later than fourteen (14) days from receipt of this Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing, Clear Creek Lending shall provide to Carmine Costa, Director, Consumer Credit Division, Department of Banking, 260 Constitution Plaza, Hartford, Connecticut 06103-1800, or carmine.costa@ct.gov, a list of all Connecticut residents who, on or after October 1, 2009, have: (1) applied for a small loan from Clear Creek Lending; or (2) contracted with Clear Creek Lending to pay interest at a rate in excess of 12% on a small loan. For each small loan consummated by a Connecticut resident, such submission shall include: (a) a copy of each loan agreement specifying the amount and annual interest rate of the loan, and (b) a list of each Connecticut resident's name and address and full itemization of payments made pursuant to the loan agreement, specifying the dates and amounts of such payments.

**THE COMMISSIONER FURTHER ORDERS,** pursuant to Sections 36a-573(c) and 36a-50(c) of the Connecticut General Statutes, that Great Plains Lending, LLC **MAKE RESTITUTION** of any sums obtained as a result of Great Plains Lending, LLC violating subdivisions (1) and (2) of Section 36a-555 of the Connecticut General Statutes and Section 36a-573(a) of the Connecticut General Statutes plus interest at the legal rate set forth in Section 37-1 of the Connecticut General Statutes. Specifically, the Commissioner **ORDERS** that: Not later than thirty (30) days from the date this Order to Make Restitution becomes permanent, Great Plains Lending, LLC shall:

1. Repay any interest received by Great Plains Lending, LLC on or after October 1, 2009, from the Connecticut residents identified in Exhibit A or any other Connecticut resident in connection with a Consumer Loan, plus interest. Payments shall be made by cashier's check, certified check or money order; and

2. Provide to Carmine Costa, Director, Consumer Credit Division, Department of Banking, 260 Constitution Plaza, Hartford, Connecticut 06103-1800, or carmine.costa@ct.gov, evidence of such repayments.

**NOW THEREFORE,** notice is hereby given to Great Plains that the Commissioner intends to issue an order requiring Great Plains to **CEASE AND DESIST** from violating subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, including, but not limited to, enforcing such loans by any means, and impose a **CIVIL PENALTY** upon Great Plains as set forth herein, subject to Great Plains' right to a hearing on the allegations set forth above.

**FURTHER,** notice is hereby given to Shotton that the Commissioner intends to issue an order requiring Shotton to **CEASE AND DESIST** from participating in the violation of subdivisions (1) and (2) of Section 36a-555, and Section 36a-573(a) of the Connecticut General Statutes, and impose a **CIVIL PENALTY** upon Shotton as set forth herein, subject to Shotton's right to a hearing on the allegations set forth above.

**FURTHER,** notice is hereby given to Clear Creek that the Commissioner intends to issue an order requiring Clear Creek to **CEASE AND DESIST** from violating Section 36a-555(2) of the Connecticut General Statutes and impose a **CIVIL PENALTY** upon Clear Creek as set forth herein, subject to Clear Creek's right to a hearing on the allegations set forth above.

A hearing will be granted to each Respondent if a written request for a hearing is received by the Department of Banking, Consumer Credit Division, 260 Constitution Plaza, Hartford, Connecticut 06103-1800 within fourteen (14) days following each Respondent's receipt of this Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing as set forth in Sections 36a-50(a) and 36a-52(a) of the Connecticut General Statutes. This Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing shall be deemed received on the earlier of the date of actual receipt, or seven days after mailing or sending. The enclosed Appearance and Request for Hearing Form

- 13 -

must be completed and mailed to the above address. If any Respondent will not be represented by an attorney at the hearing, please complete the Appearance and Request for Hearing Form as "pro se". Once a written request for a hearing is received, the Commissioner may issue a notification of hearing and designation of hearing officer that acknowledges receipt of a request for a hearing, designates a hearing officer and sets the date of the hearing in accordance with Section 4-177 of the Connecticut General Statutes and Section 36a-1-21 of the Regulations of Connecticut State Agencies. If a hearing is requested, the hearing will be held on December 18, 2014, at 10 a.m., at the Department of Banking, 260 Constitution Plaza, Hartford, Connecticut.

The hearing will be held in accordance with the provisions of Chapter 54 of the Connecticut General Statutes, unless any Respondent fails to appear at the requested hearing. At such hearing, Respondents will have the right to appear and present evidence, rebuttal evidence and argument on all issues of fact and law to be considered by the Commissioner.

If Great Plains does not request a hearing within the time prescribed or fails to appear at any hearing, the Order to Make Restitution shall remain in effect and become permanent, and the Commissioner will issue an order that Great Plains cease and desist from violating subdivisions (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, including but not limited to, enforcing such loans by any means, and may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Great Plains.

If Shotton does not request a hearing within the time prescribed or fails to appear at any hearing, the Commissioner will issue an order that Shotton cease and desist from participating in the violation of subdivisions (1) and (2) of Section 36a-555, and Section 36a-573(a) of the Connecticut General Statutes and may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Shotton.

If Clear Creek does not request a hearing within the time prescribed or fails to appear at any hearing, the Commissioner will issue an order that Clear Creek cease and desist from violating Section 36a-555(2) of the Connecticut General Statutes and may order a civil penalty in an amount not to exceed One Hundred Thousand Dollars ($100,000) per violation be imposed upon Clear Creek.

So ordered at Hartford, Connecticut
this _____ day of October 2014.

Howard F. Pitkin
Banking Commissioner

- 15 -

## CERTIFICATION

I hereby certify that on this <u>24th</u> day of October 2014, the foregoing Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing was sent by certified mail, return receipt requested, to John R. Shotton, 8151 Highway 177, Red Rock, Oklahoma 74651, certified mail no. 70120470000147896794; Great Plains Lending, LLC, 8151 Highway 177, Red Rock, Oklahoma 74651, certified mail no. 70120470000147896800; Great Plains Lending, LLC, 1050 East 2nd Street, Box 500, Edmond, Oklahoma 73034, certified mail no. 70121010000172646981; Great Plains Lending, LLC, P.O. Box 42906, Philadelphia, Pennsylvania 19101, certified mail no. 70121010000172646998; Clear Creek Lending, 3910 W 6th Avenue, Box 242, Stillwater, Oklahoma 74074, certified mail no. 70120470000147896817; and to Saba Bazzazieh, Esq., Rosette, LLP, 565 West Chandler Boulevard, Suite 212, Chandler, Arizona 85225, certified mail no. 70121010000172647001.

Stacey L. Serrano
Prosecuting Attorney

- 16 -

Exhibit A

Chris B. Cavanaugh          109 Rose Circle, Middletown, CT 06457

Linda Jean Orlomoski      85 Oneco Street, Norwich, CT 06360

Crystal Willoughby          277 Chapel St, #3D, New Haven, CT 06513



STATE OF CONNECTICUT

DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800



**Howard F. Pitkin**
Commissioner

## INSTRUCTIONS

You, <u>Great Plains Lending, LLC</u>, are a Respondent in the enclosed Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing ("Order"). Under Connecticut law, you have been afforded an opportunity for hearing after reasonable notice. Please read the following instructions carefully.

1.  Temporary Order to Cease and Desist – Upon your receipt of this Order, you shall cease and desist from participating in the violations of subdivision (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, and take or refrain from taking such actions as prescribed by the Commissioner herein and, unless set aside or modified by a court, the Temporary Order to Cease and Desist shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Order.

2.  Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Impose Civil Penalty – If you wish to request a hearing on the Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Impose Civil Penalty, you or your attorney *must* complete and return the enclosed Appearance and Request for Hearing Form. You have the right to be represented by an attorney at such hearing. In order to preserve your right to a hearing, the Department of Banking must receive the Appearance and Request for Hearing Form no later than fourteen (14) days after the date you received the Order. (The Order is deemed received on the date you received it or seven days after mailing or sending, whichever date is earlier.) The Appearance and Request for Hearing Form should be mailed to the Department of Banking, Consumer Credit Division, 260 Constitution Plaza, Hartford, Connecticut 06103-1800. If you request a hearing within the time specified, the hearing will be held on December 18, 2014, at 10 a.m., at the Department of Banking, 260 Constitution Plaza, Hartford, Connecticut. The prosecuting attorney assigned to this case is Attorney Stacey Serrano; her telephone number is (860) 240-8202. *If you fail to return the Appearance and Request for Hearing Form requesting a hearing, the Order to Make Restitution shall remain in effect and become permanent, and an order to cease and desist and an order imposing a civil penalty not to exceed One Hundred Thousand Dollars ($100,000) per violation will be issued against you.*

3.  You have the right to resolve or settle this case. Please contact the prosecuting attorney to make arrangements.

4.  If you have any additional questions or issues related to this case, or to the date, time or place of the hearing, please contact the prosecuting attorney.

5.  If you return the Appearance and Request for Hearing Form, you can expect to receive a telephonic conference call with the hearing officer and the prosecuting attorney approximately two weeks prior to the scheduled hearing date to discuss issues related to the number of anticipated witnesses, possibility of settlement and anticipated length of the hearing.

. TEL: (860) 240-8299
FAX: (860) 240-8178
*An Affirmative Action/Equal Opportunity Employer*
website: http://www.ct.gov/dob





STATE OF CONNECTICUT

DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA ∘ HARTFORD, CT 06103-1800

**Howard F. Pitkin**
Commissioner

## INSTRUCTIONS

You, <u>John R. Shotton</u>, are a Respondent in the enclosed Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing ("Order"). Under Connecticut law, you have been afforded an opportunity for hearing after reasonable notice. Please read the following instructions carefully.

1. Temporary Order to Cease and Desist – Upon your receipt of this Order, you shall cease and desist from violating subdivision (1) and (2) of Section 36a-555 and Section 36a-573(a) of the Connecticut General Statutes, and take or refrain from taking such actions as prescribed by the Commissioner herein and, unless set aside or modified by a court, the Temporary Order to Cease and Desist shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Order.

2. Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Impose Civil Penalty – If you wish to request a hearing on the Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Impose Civil Penalty, you or your attorney *must* complete and return the enclosed Appearance and Request for Hearing Form. You have the right to be represented by an attorney at such hearing. In order to preserve your right to a hearing, the Department of Banking must receive the Appearance and Request for Hearing Form no later than fourteen (14) days after the date you received the Order. (The Order is deemed received on the date you received it or seven days after mailing or sending, whichever date is earlier.) The Appearance and Request for Hearing Form should be mailed to the Department of Banking, Consumer Credit Division, 260 Constitution Plaza, Hartford, Connecticut 06103-1800. If you request a hearing within the time specified, the hearing will be held on December 18, 2014, at 10 a.m., at the Department of Banking, 260 Constitution Plaza, Hartford, Connecticut. The prosecuting attorney assigned to this case is Attorney Stacey Serrano; her telephone number is (860) 240-8202. *If you fail to return the Appearance and Request for Hearing Form requesting a hearing, an order to cease and desist and an order imposing a civil penalty not to exceed One Hundred Thousand Dollars ($100,000) per violation will be issued against you.*

3. You have the right to resolve or settle this case. Please contact the prosecuting attorney to make arrangements.

4. If you have any additional questions or issues related to this case, or to the date, time or place of the hearing, please contact the prosecuting attorney.

5. If you return the Appearance and Request for Hearing Form, you can expect to receive a telephonic conference call with the hearing officer and the prosecuting attorney approximately two weeks prior to the scheduled hearing date to discuss issues related to the number of anticipated witnesses, possibility of settlement and anticipated length of the hearing.



STATE OF CONNECTICUT

DEPARTMENT OF BANKING

260 CONSTITUTION PLAZA • HARTFORD, CT 06103-1800



Howard F. Pitkin

Commissioner

## INSTRUCTIONS

You, <u>Clear Creek Lending</u>, are a Respondent in the enclosed Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing ("Order"). Under Connecticut law, you have been afforded an opportunity for hearing after reasonable notice. Please read the following instructions carefully.

1.   Temporary Order to Cease and Desist – Upon your receipt of this Order, you shall cease and desist from violating Section 36a-555(2) of the Connecticut General Statutes, and take or refrain from taking such actions as prescribed by the Commissioner herein and, unless set aside or modified by a court, the Temporary Order to Cease and Desist shall remain in effect until the effective date of a permanent order or dismissal of the matters asserted in this Order.

2.   Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Impose Civil Penalty – If you wish to request a hearing on the Notice of Intent to Issue Order to Cease and Desist and Notice of Intent to Impose Civil Penalty, you or your attorney *must* complete and return the enclosed Appearance and Request for Hearing Form. You have the right to be represented by an attorney at such hearing. In order to preserve your right to a hearing, the Department of Banking must receive the Appearance and Request for Hearing Form no later than fourteen (14) days after the date you received the Order. (The Order is deemed received on the date you received it or seven days after mailing or sending, whichever date is earlier.) The Appearance and Request for Hearing Form should be mailed to the Department of Banking, Consumer Credit Division, 260 Constitution Plaza, Hartford, Connecticut 06103-1800. If you request a hearing within the time specified, the hearing will be held on December 18, 2014, at 10 a.m., at the Department of Banking, 260 Constitution Plaza, Hartford, Connecticut. The prosecuting attorney assigned to this case is Attorney Stacey Serrano; her telephone number is (860) 240-8202. *If you fail to return the Appearance and Request for Hearing Form requesting a hearing, an order to cease and desist and an order imposing a civil penalty not to exceed One Hundred Thousand Dollars ($100,000) per violation will be issued against you.*

3.   You have the right to resolve or settle this case. Please contact the prosecuting attorney to make arrangements.

4.   If you have any additional questions or issues related to this case, or to the date, time or place of the hearing, please contact the prosecuting attorney.

5.   If you return the Appearance and Request for Hearing Form, you can expect to receive a telephonic conference call with the hearing officer and the prosecuting attorney approximately two weeks prior to the scheduled hearing date to discuss issues related to the number of anticipated witnesses, possibility of settlement and anticipated length of the hearing.

**EXHIBIT E**

Saba Bazzazieh (Pro Hac Vice Pending)
Rosette, LLP
1100 H St., NW, Suite 400
Washington, D.C. 20005
(480) 240-0238
sbazzazieh@rosettelaw.com

Anthony Jannotta (CT Bar No. 411982)
Dentons US LLP
1301 K. Street, NW
Suite 600, East Tower
Washington, D.C. 20005
(202) 408-5546
anthony.jannotta@dentons.com

Attorneys for Specially-Appearing Respondents

## STATE OF CONNECTICUT
## DEPARTMENT OF BANKING

In the Matter of:

Great Plains Lending, LLC
("Great Plains")

John R. Shotton
("Shotton")

Clear Creek Lending
("Clear Creek")

(collectively, "Respondents")

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY APPEARING RESPONDENTS' MOTION TO DISMISS TEMPORARY ORDER TO CEASE AND DESIST, ORDER TO MAKE RESTITUTION, NOTICE OF INTENT TO ISSUE ORDER TO CEASE AND DESIST, NOTICE OF INTENT TO IMPOSE CIVIL PENALTY, AND NOTICE OF RIGHT TO HEARING, FOR LACK OF PERSONAL AND SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

INTRODUCTION............................................................................................................1

FACTUAL BACKGROUND...........................................................................................2

ARGUMENT..................................................................................................................4

    I.      The Department Lacks Personal and Subject Matter Jurisdiction Over
          Respondents Absent A Congressional Abrogation Or Unequivocal Waiver Of
          Sovereign Immunity.......................................................................................4

             A.     As a Sovereign Nation, the Otoe-Missouria Tribe is Protected
                    By Sovereign Immunity From All Judicial Processes, Including
                    State Administrative Proceedings ...............................................5

             B.     The Tribe's Sovereign Immunity Extends to its Wholly
                    Owned Business Entities..............................................................7

             C.     The Tribe's Sovereign Immunity Extends to Tribal Officers.....................8

             D.     State Courts and Administrative Fora Have Appropriately
                    Recognized the Lack of Jurisdiction In Cases Involving Facts
                    Identical to Those at Hand. .........................................................9

              E.     In the Absence of a Tribal Waiver, Only Congress Can Abrogate
                    Tribal Sovereign Immunity.  It Has Not Done So Here ...........................12

              F.     Sovereign Immunity Precludes the Exercise of Personal
                    Jurisdiction by the Department Over the Respondents.............................13

    CONCLUSION .........................................................................................14

# TABLE OF AUTHORITIES

## Case Law

*Adams v. Murphy*, 165 F. 304 (8th Cir. 1908) ...................................................................5,6

*Beecher v. Mohegan Tribe of Indians of Conn.*, 918 A.2d 880 (Conn. 2007) ...............................6

*Bassett v. Mashantucket Pequot Museum & Research Ctr., Inc.*,
221 F. Supp. 2d 271 (D. Conn. 2002) .............................................................................8,9

*Beers v. Arkansas*, 61 U.S. 527 (1857) ...............................................................................6

*C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,
532 U.S. 411 (2001) ........................................................................................................6

*California ex rel. California Dep't of Fish and Game v. Quechan Tribe of Indians*,
595 F.2d 1153 (9th Cir. 1979) ..........................................................................................5

*Cash Advance & Preferred Cash Loans v. State of Colorado, ex. rel. Suthers*,
242 P.3d 1099 (Colo.2010) ..........................................................................................10,11

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78
(S.D.N.Y. 2002) ..............................................................................................................6

*Chayoon v. Chao*, 355 F.3d 141 (2d Cir. 2004) ...................................................................7

*Chayoon v. Sherlock*, 877 A.2d 4 (Conn. Ct. App. 2005) .......................................................9

*Fed. Maritime Comm'n v. South Carolina St. Ports Authority*, 535 U.S. 743 (2002) ...................6

*Davidson v. Mohegan Tribal Gaming Authority*, 903 A.2d 228
(Conn. Ct. App. 2006) .....................................................................................................7

*Garcia v. Akwesasne Housing Authority*, 268 F.3d 76 (2d Cir. 2001) ......................................4

*Hamilton v. Nakai*, 453 F.2d 152 (9th Cir. 1971) ...............................................................13

*High Desert Recreation, Inc. v. Pyramid Lake Paiute Tribe of Indians*,
341 F. App'x 325 (9th Cir. 2009) ......................................................................................7

*Kennerly v. United States*, 721 F.2d 1252 (9th Cir. 1983) .................................................5,13

*Kiowa Tribe of Okla. v. Manufacturing Techs, Inc.*, 523 U.S. 751 (1998) ...................6,7,12,13,

*Kizis v. Morse Diesel Int'l, Inc.*, 794 A.2d 498 (Conn. 2002) ............................................4,6,9

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ...........................................4

*Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024 (2014) ..............................5,7,12,13

*Morgan v. Colorado River Indian Tribe*, 103 Ariz. 425, 428, 443 P.2d 421 (1968) .....................13

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,
498 U.S. 505 (1991) ......................................................................................................12

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*,
No. 13-3769-cv, Slip Op. at *16 (2d Cir. Oct. 1, 2014) ........................................................1

*Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416 (9th Cir. 1989) .............5,13

*Parks v. Ross*, 52 U.S. 362 (1850) .....................................................................................

*People v. Miami Nation Enters.*, 166 Cal. Rptr. 3d 800 (2014)......................................................10

*Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165 (1977) .............................................................

*Romanella v. Hayward*, 933 F. Supp. 163 (D. Conn. 1996)..........................................................8,9

*Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978)......................................................................5

*Snow v. Quinault Indian Nation*, 709 F.2d 1319 (9th Cir. 1983) ......................................................5

*State of Colorado, et al v. Cash Advance, et al.* (Case No. 05CV1143)
   (Order dated February 13, 2012) ..........................................................................................11

*Thebo v. Choctaw Tribe*, 66 F. 372 (8th Cir. 1895)..........................................................................4

*Turner v. United States*, 248 U.S. 354 (1908) ................................................................................5

*U.S. v. James*, 980 F.2d 1314 (9th Cir. 1992)...............................................................................6

*United States v. Mazurie*, 419 U.S. 544 (1975) .............................................................................5

*United States v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506 (1940) ..............................................5

*United States v. Wheeler*, 435 U.S. 313 (1978) .............................................................................5

*Weeks Constr. Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668 (8th Cir. 1986) ..........................7

*Worall v. Mashantucket Pequot Gaming Enters.*, 131 F. Supp. 2d 328 (D. Conn. 2001)...............7

## State Regulations

Connecticut Regulation 36a-1-29 .....................................................................................................1

## INTRODUCTION

Pursuant to Section 36a-1-29 of the Regulations of Connecticut State Agencies, Specially Appearing Respondents Great Plains Lending, LLC ("Great Plains"), Clear Creek Lending, LLC ("Clear Creek"), and Chairman John Shotton ("Shotton" and, together with Great Plains and Clear Creek, the "Respondents"), respectfully submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the Temporary Order to Cease and Desist, Order to Make Restitution, Notice of Intent to Issue Order to Cease and Desist, Notice of Intent to Impose Civil Penalty, and Notice of Right to Hearing ("Order"), initiated by the Connecticut Department of Banking ("Department") on October 24, 2014.

Under well-settled principles of federal Indian law, Respondent Shotton, as Chairperson of the Otoe-Missouria Tribe of Indians ("Tribe"), and Respondents Great Plains and Clear Creek, as wholly owned and operated tribal entities, are immune from the Department's enforcement action. This administrative proceeding must therefore be dismissed because Respondents have sovereign immunity from the judicial process. That is, unless there is a clear, express and unequivocal waiver of immunity by the Tribe, or an abrogation of that immunity by Congress, the Department lacks subject matter and personal jurisdiction over Respondents.

The United States Court of Appeals for the Second Circuit recently recognized that "tribes are independent nations, and [state] regulatory efforts may hinder the tribes' ability to provide for their members and manage their own internal affairs." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, No. 13-3769-cv, Slip Op. at *16 (2d Cir. Oct. 1, 2014). In this case, the State of Connecticut has unlawfully ignored the Tribe's independent status, and in doing so, has hindered the Tribe's ability to provide for its members and manage its own internal affairs. These unlawful actions are barred by the Tribe's sovereign immunity. Because no waiver or congressional abrogation of the Tribe's immunity exists—indeed, the Department has not even alleged their existence—Respondents' sovereign immunity remains

intact. Moreover, the attempted service of the Notice upon Respondents was deficient insofar as it was not made pursuant to the Tribe's consent or by an Act of Congress. For these reasons, the Department lacks and cannot obtain subject matter and personal jurisdiction over Respondents. Accordingly, Respondents' Motion to Dismiss should be granted.

## FACTUAL BACKGROUND

Great Plains and Clear Creek[1] are wholly owned and operated entities of the Otoe-Missouria Tribe of Indians, a federally-recognized Indian tribe.[2]   By way of historical background, both the Otoe and Missouria originally lived in the Great Lakes region, but by 1804 had migrated to the region along the Missouri River bordering Missouri and Nebraska. There, just after the turn of the nineteenth century, both tribes participated in the first formal meeting between representatives of the United States and western Indian tribes. By the time the United States signed the first of many treaties stripping the tribes of their land in 1830, the Otoe and Missouria tribes had combined.   In 1854, a treaty established a reservation for the Otoe-Missouria Tribe on the Kansas–Nebraska border. By 1881, however, Congress had sold all of the Tribe's reservation land, forcing the Tribe to relocate to its present-day location in northern Oklahoma, a state in which the majority of Otoe-Missouria members still live. The Curtis Act of 1898 disbanded the Otoe-Missouria's traditional tribal government, and it was not until 1984 that the Tribe's federal recognition was restored.

As with other sovereigns, the Tribe has governed itself according to Tribal laws, regulations and norms since its inception.   As a federally-recognized Tribe maintaining all inherent attributes of sovereignty, the Tribe enacted the Constitution and Bylaws of the Otoe-

Missouria Tribe of Indians as the supreme law governing all affairs of the Tribe ("Constitution"). The Constitution specifically appointed the Otoe-Missouria Tribal Council as the supreme governing body of the Tribe with the authority to enact laws and ordinances on behalf of the Tribe. *See* Declaration of Vice-Chairman Ted Grant filed concurrently herewith ("Grant Decl."), ¶¶ 3-4.

Great Plains and Clear Creek were created as arms of the Tribe pursuant to the Otoe-Missouria Tribe of Indians Limited Liability Company Act ("LLC Act") and the Otoe-Missouria Tribe of Indians Corporation Act ("Corporation Act"). *Id.* at ¶¶ 5-9. They are wholly owned entities of the Tribe and are regulated by the Tribe pursuant to the Tribe's Consumer Finance Services Regulatory Commission Ordinance. *Id.* at ¶ 14; Exhibits F,G, and H thereto. The Tribe's LLC Act and Corporation Act provide that all companies wholly owned by the Tribe shall be considered to be instrumentalities and arms of the Tribe, and their officers and employees considered officers and employees of the Tribe. It was contemplated and intended that these companies would be created for the purpose of Tribal economic development and to aid in addressing issues of public health, safety, and welfare. *Id.* at ¶¶ 6, 12-13. The Tribe created Great Plains and Clear Creek specifically to advance tribal economic development to aid in addressing issues of public safety, health and welfare. *Id.* The Tribe retains full control over Great Plains' and Clear Creek's operations: the directors, charged with managing the companies, may be removed at any time by the Tribal Council, with or without cause. *Id.* at ¶ 15. Pursuant to Tribal law as well as state and federal precedent, as wholly owned Tribal entities, Great Plains and Clear Creek are entitled to all of the privileges and immunities enjoyed by the Tribe, including, but not limited to, immunity from suit, except to the extent that the Tribe has unequivocally waived that immunity. *Id.* at ¶¶ 12-17.

On October 27, 2014, counsel for Respondents received the Order at issue in these proceedings.[3]  The Order alleges violations of various provisions of the Connecticut General Statutes.  In doing so, the Order also acknowledges that Respondents Great Plains and Clear Creek were formed under Tribal law, and it acknowledges that Chairman Shotton is a Tribal official.  Yet, the Order does not (because the Department cannot) make any allegation that the Tribe has waived Respondents' immunity or that Congress has abrogated that immunity.

**ARGUMENT**

### I.  THE DEPARTMENT LACKS PERSONAL AND SUBJECT MATTER JURISDICTION OVER RESPONDENTS ABSENT A CONGRESSIONAL ABROGATION OR UNEQUIVOCAL WAIVER OF SOVEREIGN IMMUNITY.

Tribal sovereign immunity is a matter of subject matter jurisdiction "and is therefore a basis for granting a motion to dismiss." *Kizis v. Morse Diesel Int'l, Inc.*, 794 A.2d 498, 502 (Conn. 2002).  Upon a motion to dismiss on the basis of tribal sovereign immunity, the burden of proof shifts to the party invoking the forum's jurisdiction.  *Garcia v. Akwesasne Housing Authority*, 268 F.3d 76, 84 (2d Cir. 2001) ("On a [tribe's] motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists.").  Moreover, the party asserting jurisdiction must allege all facts necessary to establish it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In this case, because neither the Tribe nor Respondents waived their immunity from judicial process, and because such immunity has not been expressly abrogated by an Act of Congress, the Department is barred from proceeding with the instant administrative action and the Respondents' Motion to Dismiss must be granted.

...

————————————————

...

A. <u>As a Sovereign Nation, the Otoe-Missouria Tribe is Protected By Sovereign Immunity From All Judicial Processes, Including State Administrative Proceedings.</u>

Indian tribes possess common-law immunity from suit that predates the United States Constitution. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *United States v. Wheeler*, 435 U.S. 313, 322-23 (1978); *United States v. Mazurie*, 419 U.S. 544, 557 (1975); *United States v. U.S. Fidelity & Guaranty Co.*, 309 U.S. 506, 512 (1940); *Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989); *Kennerly v. United States*, 721 F.2d 1252, 1258 (9th Cir. 1983). Indeed, as the Supreme Court just recently affirmed, immunity is among the "core aspects" of tribal sovereignty. *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2030 (2014). As such, "[a]bsent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants." *Sycuan Band of Mission Indians*, 884 F.2d at 418; *see also Santa Clara Pueblo*, 436 U.S. at 58-59; *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 173 (1977); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1321 (9th Cir. 1983); *United States v. Oregon*, 657 F.2d 1009, 1013 (9th Cir. 1981); *California ex rel. California Dep't of Fish and Game v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979). Indeed, a long line of Supreme Court precedent, dating back over a century, holds that because preserving tribal autonomy and tribal resources are matters of vital importance, a waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58-59; *see also, e.g., U.S. Fidelity & Guaranty Co.*, 309 U.S. at 512 ("Indian Nations are exempt from suit without Congressional authorization"); *Turner v. United States*, 248 U.S. 354, 357-58 (1908) (Creek Nation is "a distinct political community" that, like other governments, is immune from liability from suit); *Parks v. Ross*, 52 U.S. 362, 374 (1850) (U.S. courts lack jurisdiction over public

representatives or officials of Indian nations); *Adams v. Murphy*, 165 F. 304, 307 (8th Cir. 1908) (recognizing Creek Nation's immunity from suit as an "exemption which at the outset is conceded as a legal right"); *Thebo v. Choctaw Tribe*, 66 F. 372, 375 (8th Cir. 1895) (Tribe is an "independent state" and "it is a well-established principle . . . that the sovereign cannot be sued . . . without its consent and permission") (quoting *Beers v. Arkansas*, 61 U.S. 527 (1857)).

Tribal immunity is broad. It extends to suits against tribes in both state and federal court, *see Kiowa Tribe of Okla. v. Manufacturing Techs, Inc.*, 523 U.S. 751, 756 (1998), to off-reservation activities, *id.*, and even "to suits on off-reservation commercial contracts" entered into by Tribes, *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001). And, as dispositive in this case, it extends to all aspects of the judicial process, including administrative proceedings. *See United States v. James*, 980 F.2d 1314, 1319 (9th Cir. 1992); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002). To that end, the Supreme Court has recognized that a sovereign may invoke its immunity in an administrative tribunal. *Fed. Maritime Comm'n v. South Carolina St. Ports Authority*, 535 U.S. 743, 760 (2002). In accordance with these precedents, Connecticut state courts have also consistently recognized tribal sovereignty and the immunity that flows from it. *E.g.*, *Kizis*, 794 A.2d 498, 502; *Beecher v. Mohegan Tribe of Indians of Conn.*, 918 A.2d 880, 884 (Conn. 2007).

As a federally recognized Indian tribe, it is undisputed that the Otoe-Missouria Tribe of Indians retains sovereign immunity from state judicial and administrative processes, including the instant action. And as explained below, this immunity extends to tribal businesses—including Great Plains and Clear Creek—and to tribal officials acting in their official capacities—including Chairman John Shotton. Because the Tribe has not provided any waiver whatsoever in relation to this proceeding, this action must be dismissed as the Department lacks both subject matter and personal jurisdiction.

B.  The Tribe's Sovereign Immunity Extends to its Wholly Owned Business Entities.

It is well established that tribal sovereign immunity extends to and shields a tribe's agencies, instrumentalities and enterprises from suit absent a clear and unequivocal waiver or congressional abrogation of that immunity. *Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004) (holding that a tribal casino is immune from suit); *Worall v. Mashantucket Pequot Gaming Enters.*, 131 F. Supp. 2d 328, 331 (D. Conn. 2001).  These principles have been applied to entities such as tribally chartered housing authorities, *Weeks Constr. Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670-71 (8th Cir. 1986), as well as tribally owned businesses, *Worall*, 131 F. Supp. 2d at 331 (finding that a tribal gaming enterprise "is entitled to the same tribal sovereign immunity that protects the Tribe itself").  The Supreme Court has made it clear that this immunity encompasses a Tribe's commercial activity even when that commercial activity occurs off-reservation. *Bay Mills*, 134 S. Ct. at 2036; *Kiowa*, 523 U.S. at 754; *accord High Desert Recreation, Inc. v. Pyramid Lake Paiute Tribe of Indians*, 341 F. App'x 325, 327 (9th Cir. 2009) ("[B]oth Supreme Court precedent and that of this court hold that Indian tribes enjoy sovereign immunity from suits on commercial contracts, whether made on or off a reservation, so long as the subject business activity functions as an arm of the tribe.").  These principles apply equally in Connecticut state courts. *See Davidson v. Mohegan Tribal Gaming Authority*, 903 A.2d 228, 231 (Conn. Ct. App. 2006).

Here, it is clear that the sovereign powers and protections of the Tribe necessarily extend to its wholly owned business entities, Great Plains and Clear Creek.  First, the Tribe created Great Plains and Clear Creek for the specific purpose of advancing tribal economic development to aid in addressing issues of public safety, health and welfare. Grant Decl. ¶ 12.  Further, Great Plains and Clear Creek are wholly owned by the Tribe as a governmental unit—unlike businesses organized under the laws of Connecticut, whose ownership is typically vested in private citizens, for their personal benefit.  The members of the Board of Directors for Great

Plains and Clear Creek are appointed by the Tribal Council and serve at the Tribal government's discretion. *Id.* at ¶ 15. Further, pursuant to Tribal law, the Tribe conferred upon Great Plains and Clear Creek the right of sovereign immunity, to the same extent as that enjoyed by the Tribe, and required that any waiver of such immunity by Great Plains or Clear Creek be in explicit conformance with Tribal law. *Id.* at ¶¶ 13, 16. Moreover, the Tribal LLC Act and Corporation Act, the laws under which Great Plains and Clear Creek were formed, provide that tribal entities may only waive sovereign immunity pursuant to a written resolution from the Board of Directors, with explicit language of waiver, and that waiver must be limited as to duration, scope, transaction, and applicable law. *Id.* at ¶ 16. No such waiver was provided in this instance by either the Tribe, Great Plains, or Clear Creek that would allow this action to proceed.

Thus, as entities created pursuant to the authority of the Tribal government, with the consent of the Tribal Council, and under the ultimate control of the Tribal government, Great Plains and Clear Creek are undoubtedly instrumentalities of the Tribe. As such, their immunity from the instant action is coextensive with that of the Tribe. Because Respondents have not waived their sovereign immunity, the Department lacks jurisdiction to proceed with this matter and, accordingly, Respondents' Motion to Dismiss must be granted.

C.    The Tribe's Sovereign Immunity Extends to Tribal Officers.

Tribal officials acting within their official capacity are likewise protected by the doctrine of tribal sovereign immunity against all aspects of the judicial process, including administrative enforcement actions. *See Romanella v. Hayward*, 933 F. Supp. 163, 167 (D. Conn. 1996). This immunity is not only for high-level policymakers or those "performing governmental functions and exercising discretion." *Bassett v. Mashantucket Pequot Museum & Research Ctr., Inc.*, 221 F. Supp. 2d 271, 277–78 (D. Conn. 2002); *see Romanella*, 933 F. Supp. at 167 (holding that a tribal member in charge of maintaining a parking lot was immune from suit). Indeed, both federal and Connecticut courts firmly adhere to the principle that "tribal immunity extends to *all*

tribal employees acting within their representative capacity and within the scope of their official authority." *Bassett*, 221 F. Supp. 2d at 278 (emphasis added); *see also Kizis*, 794 A.2d at 505.

In view of these precedents, Chairman Shotton is clearly immune from the Department's instant enforcement action. As the Tribal Chairman and the Secretary/Treasurer of Great Plains and Clear Creek, he is undeniably a tribal official. The Department does not—and could not—allege otherwise. Nor does the Department allege that Chairman Shotton was somehow acting outside of his official capacity in overseeing the activities of Great Plains and Clear Creek. Moreover, even to the extent that the Department's allegations may be construed as charges that Chairman Shotton personally violated state law, such would be an insufficient basis for stripping him of immunity. In fact, a tribal official can only be stripped of immunity "when he acts manifestly or palpably beyond his authority" as vested in him through tribal law. *Chayoon v. Sherlock*, 877 A.2d 4, 10 (Conn. Ct. App. 2005). Indeed, at all times relevant to this action, Chairman Shotton has acted in furtherance of the responsibilities delegated to him under tribal law; therefore, he is clearly immune from the Department's enforcement action and, accordingly, this action must be dismissed against Chairman Shotton, in addition to the remaining Respondents.

D. <u>State Courts and Administrative Fora Have Appropriately Recognized the Lack of Jurisdiction In Cases Involving Facts Identical to Those at Hand.</u>

The State of Connecticut's efforts to overreach into the province of a sovereign Nation are not unique with regard to the subject matter at issue, and state courts and administrative agencies in other jurisdictions have resoundingly and appropriately recognized that, absent a clear and unequivocal waiver or congressional abrogation of sovereign immunity, such attempts by states to exercise jurisdiction are impermissible.

In *People v. Miami Nation Enters.*, 166 Cal. Rptr. 3d 800 (2014), the California Department of Corporations brought suit against five companies providing short-term loans to

California citizens over the Internet.  Miami Nation Enterprises, Inc. ("MNE"), an economic subdivision of the Miami Tribe of Oklahoma ("Miami Tribe") and owner of the five companies in question, specially appeared in the action and filed a motion to quash, challenging the court's subject matter jurisdiction and claiming that as business entities wholly owned by the Miami Tribe, the defendants were immune from the state enforcement action under the doctrine of sovereign immunity.  *Id.* at 803–04.  The California Court of Appeal agreed with the Miami Tribe, expressly holding that the Tribe's lending entities were protected by sovereign immunity, as they were "formed by tribal resolution and according to tribal law, for the stated purpose of tribal economic development and with the clearly expressed intent by the sovereign tribe to convey its immunity to that entity, and [have] a governing structure both appointed by and ultimately overseen by the tribe." *Id.* at 817.  Because that immunity had not been waived or abrogated by Congress, the tribal lending entities were not subject to suit by the State of California. *Id.*

In a similar state enforcement action, the State of Colorado, acting through the Attorney General, attempted to enforce administrative subpoenas issued in connection with an investigation into the short term consumer loan operations of tribal corporations of the Miami Tribe (again, MNE) and the Santee Sioux Nation ("SFS"). *Cash Advance & Preferred Cash Loans v. State of Colorado, ex. rel. Suthers*, 242 P.3d 1099 (Colo.2010).  Following remand from the Colorado Supreme Court, the trial court granted the tribes' motion to dismiss, holding that as wholly owned entities of the tribes created pursuant to tribal law, MNE and SFS were entitled to sovereign immunity, which had not been waived or congressionally abrogated with respect to the State's enforcement actions. *State of Colorado, et al v. Cash Advance, et al.* (Case No. 05CV1143) (Order dated February 13, 2012).  The trial court noted that state enforcement actions were equivalent to "suits," to which federally recognized tribes are immune. *Id.* at *9.

Finally, in an administrative enforcement action nearly identical to the present proceedings, in July 2012, the Minnesota Department of Commerce issued against Great Plains a "Notice of an Order for Hearing, Order for Prehearing Conference and Statement of Charges" alleging that Great Plains violated a Minnesota statute regarding consumer loans, Minn. Stat. § 47.60, subd. 3 (2010). After the Tribe advised the Minnesota Department of Commerce that it was immune from such an enforcement action due to its sovereign immunity, the charges were thereafter dismissed. *See* Grant Decl. at ¶ 17.

The present enforcement action is no different than those brought by California, Colorado, and Minnesota. In fact, the grounds for dismissal of this action have already been recognized by this very Department. In proceedings against CashCall, Inc. and Western Sky Financial, LLC, entities which were concededly *not* owned by a sovereign tribal government, the Department expressly held: "Neither CashCall, Inc. nor Western Sky Financial, LLC could legally claim the immunity extended to an Indian tribe. *To conclude otherwise would do a disservice to legitimate Native American lending entities.*" *In the Matter of: CashCall, Inc.*, Findings of Fact, Conclusions of Law and Order at *17 (Conn. Dept. of Banking Feb. 4, 2014) (emphasis added).

Therefore, for the same reasons the enforcement actions in California, Colorado, and Minnesota were dismissed, Connecticut's enforcement action should also be dismissed. It is abundantly clear that Great Plains and Clear Creek (as companies wholly owned and operated by the Tribe) and Chairman Shotton (as a tribal official acting in his official capacity) are vested with the privileges and immunities of the Tribe. It is equally clear that neither Respondents nor the Tribe have in any way, shape, or form, waived their sovereign immunity from the state enforcement action at issue, and there has been no Act of Congress abrogating that immunity. Accordingly, the Department lacks jurisdiction to proceed in this matter and is mandated not only pursuant to well-established federal and state precedent but also pursuant to precedent *as*

***applied to the very subject matter at issue*** to grant Respondents' Motion to Dismiss and dispose of the current state administrative action.

      E.  <u>In the Absence of a Tribal Waiver, Only Congress Can Abrogate Tribal Sovereign Immunity.  It Has Not Done So Here.</u>

Just last Term, the U.S. Supreme Court again affirmed that any change to the established doctrine of tribal sovereign immunity must come from Congress. *E.g.*, *Bay Mills*, 134 S. Ct. at 2039.  While "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers," the Court has explained that tribal immunity "is subject to the *superior and plenary control of Congress*." *Santa Clara Pueblo*, 436 U.S. at 48 (emphasis added).  Accordingly, when asked to abrogate tribal sovereign immunity in some new way, the Court defers to Congress. *See Bay Mills*, 134 S. Ct. at 2037 ("[I]t is fundamentally Congress's job, not [the Court's], to determine whether or how to limit tribal immunity."); *Kiowa*, 523 U.S. at 758-59; *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. at 510, 514 (1991).  Courts defer to Congress in part because Congress has "consistently reiterated its approval of the immunity doctrine" as necessary to advance "its 'overriding goal' of encouraging tribal self-sufficiency and economic development." *Okla. Tax Comm'n*, 498 U.S. at 510 (citations omitted).  The Supreme Court has observed that "Congress has always been at liberty to dispense with such tribal immunity or to limit it.  Although Congress has occasionally authorized limited classes of suits against Indian tribes, . . . Congress has consistently reiterated its approval of the immunity doctrine." *Id.* at 509-10.

Because "[i]t is clear that Congress alone must determine the extent to which immunities afforded tribal status are to be withdrawn," *Morgan v. Colorado River Indian Tribe*, 443 P.2d at 424, the Department should adhere to the settled practice and "defer [to Congress] in this important judgment." *Kiowa Tribe of Okla.*, 523 U.S. at 759; *see also Bay Mills*, 134 S. Ct. at

2037–38. Thus, as Congress has not acted in any way to abrogate the sovereign immunity of the Tribe or Respondents, the Department lacks jurisdiction to proceed with the instant action.

      F.   <u>Sovereign Immunity Precludes the Exercise of Personal Jurisdiction by the Department Over the Respondents.</u>

In addition to lacking subject matter jurisdiction over this action, the Department also lacks personal jurisdiction over Respondents because Respondents have not consented to, and Congress has not authorized, the right of action alleged in the Notice to be enforceable against the Tribe. The Department has failed to demonstrate any facts establishing Respondents' consent or congressional authority allowing for the Department's jurisdiction over the person of Respondents' or the subject matter of the allegations contained in the Notice.

Respondents are not subject to service of process made pursuant to the laws of the State of Connecticut. It has been consistently maintained that tribal sovereign immunity is "coextensive with [that] enjoyed by other sovereign powers including the United States." *Sycuan Band of Mission Indians*, 884 F.2d at 418; *see Kennerly v. United States*, 721 F.2d at 1258; *Hamilton v. Nakai*, 453 F.2d 152, 158-59 (9th Cir. 1971). Therefore, proper service of process (or consent) is a necessary prerequisite to the Department's exercise of personal jurisdiction over Respondents.

Respondents, like the United States, by virtue of their sovereign immunity, are not subject to State law governing service of process and may only be served subject to their consent. Proper service of process has not occurred upon the Respondents because they have not consented to judicial action—administrative or otherwise—in the State of Connecticut. Through the sovereign immunity of the Tribe, which is coextensive with that of the United States, Respondents herein are not subject to State law governing service of process. The attempted service of process upon Respondents was thus deficient because service was not made pursuant

to the Tribe's or Respondents' consent and, as a result, service of process is insufficient as a matter of law and therefore void.

Therefore, because the Department has not and cannot provide evidence that the Respondents clearly, unequivocally, and explicitly consented to this action, or that there is congressional authorization allowing the Department to take judicial action against Respondents, the Department is barred by sovereign immunity, thus rendering service ineffective. The Department therefore lacks personal and subject matter jurisdiction over Respondents and the Motion to Dismiss must be granted.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the instant action be dismissed as Respondents retain and have not waived their sovereign immunity from the current administrative enforcement proceeding. Nor has Congress authorized such action to proceed. Accordingly, the Department lacks jurisdiction to preside over this matter and this action must appropriately be dismissed.

Dated:   November 10, 2014                RESPECTFULLY SUBMITTED,

ROSETTE, LLP

By:    /s/ Saba Bazzazieh
       Saba Bazzazieh (*Pro Hac Vice Pending*)
       Rosette, LLP
       1100 H St., NW, Suite 400
       Washington, D.C. 20005
       (480) 240-0238
       sbazzazieh@rosettelaw.com


       /s/ Anthony Jannotta
       Anthony Jannotta (CT Bar No. 411982)
       Dentons US LLP
       1301 K. Street, NW
       Suite 600, East Tower
       Washington, D.C. 20005
       (202) 408-5546
       anthony.jannotta@dentons.com

## CERTIFICATE OF SERVICE

I, Leigh Davis, certify and declare as follows:

I am over the age of 18 years and not a party to this action.

My business address is 565 W. Chandler Boulevard, Suite 212, Chandler, Arizona 85225, which is located in the city, county and state where the mailing described below took place.

On November 10, 2014, I caused to be deposited in the United States Mail at Chandler, Arizona, postage pre-paid, copies of the above-entitled document to the following individuals:

Mr. Howard F. Pitkin
Banking Commissioner
Department of Banking
260 Constitution Plaza
Hartford, CT 06103-1800

Carmine Costa, Director
Consumer Credit Division
Department of Banking
260 Constitution Plaza
Hartford, CT 06103-1800

Stacey L. Serrano
Prosecuting Attorney
Connecticut Department of Banking
260 Constitution Plaza
Hartford, CT 06103-1800

I certify under penalty of perjury that the foregoing is true and correct.

Leigh Wink

**EXHIBIT F**

Saba Bazzazieh (*Pro Hac Vice Pending*)
Rosette, LLP
1100 H St., NW, Suite 400
Washington, D.C. 20005
(480) 240-0238
sbazzazieh@rosettelaw.com

Anthony Jannotta (CT Bar No. 411982)
Dentons US LLP
1301 K. Street, NW
Suite 600, East Tower
Washington, D.C.  20005
(202) 408-5546
anthony.jannotta@dentons.com

Attorney for Specially-Appearing Respondents

**STATE OF CONNECTICUT**
**DEPARTMENT OF BANKING**

| | |
|---|---|
| In the Matter of: | **REPLY IN SUPPORT OF MOTION TO DISMISS ADMINISTRATIVE PROCEEDINGS** |
| Great Plains Lending, LLC ("Great Plains") | |
| John R. Shotton ("Shotton") | |
| Clear Creek Lending ("Clear Creek") | |
| (collectively, "Respondents") | |

## I.  INTRODUCTION

The Supreme Court recently reaffirmed a fundamental tenet of federal Indian law: absent a clear waiver or unequivocal abrogation by Act of Congress, tribes have immunity from the judicial process.  *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2039 (2014). Nothing contained in the Objection to Respondents' Motion to Dismiss ("Objection"), filed by the Connecticut Department of Banking ("Department") on November 19, 2014, demonstrates that Respondents in this action have waived said immunity, nor has Congress authorized the instant administrative proceeding.  For this reason, the action must be dismissed.

Despite the Department's baseless assertions to the contrary, this case very clearly is an adversarial action brought in a judicial forum.  It is an administrative enforcement proceeding initiated by the Department against an elected official of the Otoe-Missouria Tribe of Indians ("Tribe"), a federally recognized Indian tribe, Chairman Shotton, as well as two business entities wholly owned and operated by the Tribe—Great Plains Lending, LLC ("Great Plains") and Clear Creek Lending ("Clear Creek") (collectively "Respondents").  Neither these Respondents nor the Tribe have consented to this action and, because there has been no Act of Congress abrogating their immunity, it remains intact and an absolute defense to the instant action.

Nevertheless, in direct conflict with well settled federal and Connecticut precedent—not to mention the Department's own prior decisions—the Department contends in its Objection that this action is *not* barred by tribal sovereign immunity.  Importantly, nowhere in the Objection does the Department allege that immunity has been waived by the Respondents or abrogated by Congress.  Instead, its theory is that an agency adjudication is not a "suit" for the purposes of tribal sovereign immunity.  Because this attempt to circumvent the protections of tribal sovereign immunity is contrary to controlling precedent and an affront to tribal sovereignty, Respondents' Motion to Dismiss must be granted.

1

## II. ARGUMENT

Earlier this year, in a proceeding against CashCall, Inc. ("CashCall"), the Banking Commissioner rejected a tribal immunity defense because there was no evidence of any actual tribal involvement. *See In re CashCall, Inc.*, Findings of Fact, Conclusions of Law and Order (Ct. Dept. of Banking Feb. 4, 2014) ("There is no evidence in the record that . . . the Cheyenne River Sioux Tribe sanctioned or was otherwise involved with these loans."). Lacking any proof of tribal ownership, the Commissioner ruled that allowing CashCall to claim immunity "would do a disservice to legitimate Native American lending operations." *Id.* Unlike CashCall, Respondents Great Plains and Clear Creek *are* legitimate Native American lending operations. Additionally, Respondent Shotton is a tribal official acting in his official capacity. Accordingly, all Respondents are undeniably protected by tribal sovereign immunity. *See* Declaration of Vice-Chairman Grant filed in support of Respondent's Motion to Dismiss ("Grant Decl."), ¶ 11.

### I. The Administrative Proceedings are Plainly Judicial in Nature.

In the Department's view, immunity from "suits" encompasses only the most formal litigation, i.e., proceedings in state or federal court. In making this argument, the Department grossly misinterprets language from the Supreme Court's decision in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies*, 523 U.S. 751, 755 (1988)—specifically, the Court's acknowledgement that "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." The instant administrative proceeding, the Department claims, is not "akin to a lawsuit," but is merely a "demand for compliance." Objection at 2. Controlling precedent, the Department's Rules of Practice in Contested Cases, and common sense, however, all readily belie this argument.

In *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743 (2002), the Supreme Court made it clear that whether an action is a "suit" for the purposes of

2

sovereign immunity does not depend on whether the action begins with a complaint filed in a formally ordained state or federal court. Recognizing that "the similarity between [agency] proceedings and civil litigation are overwhelming," the Court held that sovereign immunity precluded the adjudication by a federal agency of a private party's complaint for a state's alleged violations of federal admiralty law. *See id.* at 768–69.

To be sure, like the agency adjudication at issue in *Federal Maritime Commission*, proceedings before the Department bear striking similarity to civil litigation. In the parlance of Connecticut administrative law, the proceeding against Respondents is considered a "contested case," plainly indicating the adversarial nature of the proceeding. *See* Conn. Gen. Stat. Ann. § 4-177b; Conn. Admin. Code § 36a-1-19. Contested cases are, in many respects, just as formal as litigation in state or federal court. They are overseen by an administrative law judge, referred to as the "presiding officer." *See* Conn. Admin. Code § 36a-1-27. The presiding officer has the power to, *inter alia*, administer oaths and affirmations, issue subpoenas, regulate the course of the hearing and make findings of fact and conclusions of law. *Id.*; § 36a-1-52; *cf. Crowell v. Benson*, 285 U.S. 22, 46–48 (1932) (acknowledging that the U.S. Employees' Compensation Commission engages in fact-finding similar to federal courts). Indeed, a review of the Department's Rules of Practice for contested cases confirms that agency adjudications are governed by procedures that bear a strong resemblance to civil litigation. Matters such as briefing, motion practice and hearing procedures are all set forth in detail. *See* Conn. Admin. Code §§ 36a-1-19 thru 36a-1-57; *see also Fed. Maritime Comm'n*, 535 U.S. at 756–58 (explaining the similarities between the procedural rules of agency adjudication and civil litigation).

Besides the detailed procedures set forth in the Rules of Practice, the Department's own pleadings demonstrate that contested cases are truly an aspect of the judicial process. Beginning

3

its Objection with the "Standard for Motion to Dismiss," the Department quotes Connecticut case law explaining that "[a] motion to dismiss . . . properly attacks the jurisdiction of the court." Objection at 1. Quite clearly, in this contested case, the Department is essentially a court, and these proceedings are part of the judicial process. If the Department was simply making a "demand for compliance," there would be no need for adversary proceedings before a presiding officer and, therefore, no need to recite the standard for a motion to dismiss. Moreover, the Department's purported "demand for compliance" cannot be properly asserted, recognized or enforced if the Commissioner lacks subject matter and personal jurisdiction over Respondents, as he does here.

## II. As Part of the Judicial Process, Respondents Are Immune From These Proceedings.

For the purposes of sovereign immunity analysis, courts have consistently held that the term "suit" embodies a "broad principle." *E.g.*, *Bonnet v. Harvest (U.S.) Holdings*, 741 F.3d 1155, 1159 (10th Cir. 2014). Indeed, immunity from suit means that a sovereign government is "not subject to legal proceedings, at law or in equity, or *judicial process* without its consent." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The judicial process includes more than just classic litigation in state or federal court. *See id.* In *Bonnet*, for example, the Tenth Circuit held that a subpoena duces tecum served on a non-party tribe was a "suit" against the tribe, and therefore the tribe could raise sovereign immunity as a defense to the subpoena. *Id.* at 1160. An almost identical result was obtained from the Eighth Circuit in *Alltel Communications, LLC v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012). And similarly, in *United States v. James*, the Ninth Circuit held that tribal immunity protected the Quinault Indian Nation against a subpoena issued by a federal district court in connection with a crime committed on the Tribe's reservation. 980 F.2d 1314, 1319 (9th Cir. 1992).

4

The case of *Cash Advance & Preferred Cash Loans v. State of Colorado ex rel. Suthers*, 242 P.3d 1099 (Colo. 2010) is instructive. The Colorado Attorney General and Administrator of the Uniform Consumer Credit Code issued *administrative* subpoenas to two tribal lending entities, ordering the production of certain documents. *Id.* at 1103. After the businesses failed to comply, Colorado initiated a subpoena enforcement action. *Id.* Holding that the subpoenas could not be enforced against the lending entities, the Colorado Supreme Court expressly noted that under U.S. Supreme Court precedent, "tribal sovereign immunity applies to state law enforcement actions." *Id.* at 1108.

As in *Cash Advance*, this case began as a result of a state administrative agency's attempt to enforce state consumer credit laws against a tribal lending entity. The Department cannot credibly characterize this proceeding as anything other than a "state law enforcement action." As such, this proceeding is barred by the doctrine of tribal sovereign immunity, and the Motion to Dismiss must be granted. *See Kanj v. Viejas Band of Kumeyaay Indians*, 2007 WL 1266963, at *1 (U.S. Dept. of Labor Admin. Review Bd., April 27, 2007) ("Nothing in existing sovereign immunity jurisprudence indicates that tribes cannot invoke sovereign immunity in administrative adjudications . . . .").

### III. The Distinctions Set Forth By the Department In Its Objection Are Irrelevant.

The Department accepts that, under *Federal Maritime Commission*, state agencies are immune to agency adjudications absent their consent. Nonetheless, notwithstanding the fact that contested cases before the Department are plainly judicial in nature, the Department persists with the view that tribal immunity does not apply to such proceedings. The Department makes four arguments in support of its position, none of which have any merit; in fact, each is entirely irrelevant.

5

First, the Department points out that tribal sovereign immunity, unlike state sovereign immunity, is not enshrined in the Constitution. Objection at 3. That may be true, as the Eleventh Amendment concerns only state sovereign immunity. However, the only meaningful consequence of that distinction relates to limits on Congress's power to alter tribal sovereign immunity. Regarding the states, generally speaking, Congress cannot abrogate sovereign immunity. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 60 (1996). In contrast, as to tribes, Congress exercises "plenary power." *Cotton Petrol. Corp. v. New Mexico*, 490 U.S. 163, 192 (1989). This includes the power to set limits on tribal sovereign immunity. *See Bay Mills*, 134 S. Ct. at 2039. But until Congress exercises such power, tribal sovereign immunity remains intact. *Id.* The fact that tribal sovereign immunity has not been "constitutionalized" to the same extent as state sovereign immunity, *see Seminole Tribe*, 517 U.S. at 109 n.7 (Stevens, J., dissenting), has no impact on whether tribal immunity extends to agency adjudications.

Second, the Department states it has "limited means to enforce an adverse order by the Commissioner against a tribal entity." Objection at 3. The Department fails to explain how this is relevant at all. To the extent the Department is acknowledging that tribal sovereign immunity precludes it from bringing suit against Respondents or the Tribe in court, of course, the Department would be correct. But it does not follow that, just because the Department is unable to sue the Tribe in court, the Tribe should be subject to an agency adjudication. That is, immunity to one type of enforcement action does not diminish immunity to another type of enforcement action.

Third, the Department asserts that the "administrative adjudicatory process commences upon the request of a hearing," and "[i]f the Tribe does not wish to consent to such jurisdiction and participate in the adjudicative process due to a claim of sovereign immunity, it can do so by not requesting a hearing." Objection at 3. This is also irrelevant. The Tribe is permitted to raise

6

the issue of its immunity however it wishes to do so. Nothing requires the argument to be raised in a passive, roundabout manner, i.e., by "not requesting a hearing." Indeed, the reason that Respondents have not and will not request a hearing is the very reason why it filed its Motion to Dismiss in the first instance – because the Department lacks jurisdiction to initiate the instant administrative proceeding against them.

Finally, the Department argues that there are "alternative mechanisms" under Connecticut law by which the Tribe can challenge the Department's jurisdiction. Objection at 3. Again, this is irrelevant. The availability of alternative procedural mechanisms for raising the issue of sovereign immunity does nothing to negate the propriety of raising the issue in a motion to dismiss. There is no basis in logic, policy, or law to require the Tribe to raise the issue through an application to the Superior Court for an injunction,—especially when the Connecticut Administrative Code expressly permits the filing of motions to dismiss. *See* Conn. Admin. Code § 36a-1-27(5).

## IV. As A Tribal Official Acting in His Official Capacity, Chairman Shotton is Immune From These Proceedings.

The same tribal immunity that protects Respondents Great Plains and Clear Creek equally protects Chairman Shotton. The Department's three-sentence argument on this issue fails to prove otherwise.

The Department first asserts that "[t]he Supreme Court has repeatedly stated that sovereign immunity may be inapplicable to tribal members' actions occurring off the reservation." Objection at 4 (citing *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 171–72 (1977)). To begin with, even if Chairman Shotton's conduct was off-reservation—which it was

not[1]—the Department fails to acknowledge that *Puyallup* only addressed the immunity of individual tribal members acting in their individual capacity.

However, it is uncontested that when a tribal *official* is acting in his *official* capacity, he or she is fully protected by sovereign immunity. *See Bassett v. Mashantucket Pequot Museum & Research Ctr., Inc.*, 221 F. Supp. 2d 271, 277 (D. Conn. 2002). In fact, tribal immunity extends to "*all* tribal employees acting within their representative capacity and within the scope of their official authority." *Id.* at 278. To lose the protections of sovereign immunity, the tribal official must act "manifestly or palpably beyond his authority" under tribal law. *Id.* at 280 (citation omitted). Connecticut state courts have likewise held that a tribal official loses immunity "only where the complaint pleads—and it is shown—that [the] tribal official acted beyond the scope of his authority to act on behalf of the tribe." *E.g., Chayoon v. Sherlock*, 877 A.2d 4, 9 (Conn. Ct. App. 2005). Because at all relevant times Chairman Shotton was acting as a tribal official pursuant to tribal law, he is shielded by tribal sovereign immunity. *See* Grant Decl. at ¶ 11.

The Department further posits that "tribal immunity does not bar suits for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct." Objection at 4. This is false. Although some circuits have held that *Ex parte Young* actions are available against tribal officials, each has made it clear that such a cause of action must allege an ongoing violation of federal law. *See, e.g., Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 (9th Cir. 2007). No court has ever held that a bare allegation that a tribal official has violated state law is sufficient to support an *Ex parte Young* claim. In fact, in one of the very cases cited by the Department, *Santa Clara Pueblo v. Martinez*, the Supreme Court stated that "Congress clearly has power to authorize civil actions against tribal officers . . . ." 426 U.S. 49, 60 (1978). This, of course, is true; Congress has plenary power over Indian affairs and therefore

---

[1] As explained *infra*, the Department's arguments pertaining to matters such as where the lending activity takes place and whether state law applies to Respondents' lending activity are outside the scope of the Motion to Dismiss. Respondents reserve the right to confront these arguments in the event the Motion to Dismiss is denied.

8

may authorize civil actions against tribal officers if it wishes to do so. But Congress has *not* done so, and therefore, the Department's theory of liability for Chairman Shotton must be rejected and all claims against him must be dismissed.[2]

## V. Respondents Did Not Consent to Service of Process, and Therefore This Forum Lacks Personal Jurisdiction Over Them.

As already explained, Respondents retain their sovereign immunity from suit, thus depriving the Department of subject matter jurisdiction over them. But additionally, as a matter of *personal* jurisdiction, the action must be dismissed because Respondents have not consented to service of process.

It makes no difference whether the Department's service of process complied with Connecticut state law. The bottom line is that while "[a] defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it," in this case, Respondents never consented to service of process, and therefore the Department has no personal jurisdiction over them. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990); *see also City of N.Y. v. Mickalis Pawn Shop*, 645 F.3d 114, 133 (2nd Cir. 2011).

## VI. The Department's Remaining Arguments Exceed the Scope of Respondents' Motion to Dismiss.

The remainder of the Department's Objection centers on arguments that Connecticut's Small Loan Act applies to Respondents' lending activity. The Department sets forth three theories for this assertion: (a) the lending activity takes place in Connecticut, (b) Connecticut law extends to all small-loan transactions made with Connecticut residents over the Internet, and

---

[2] Additionally, the Department's own Notice and Order indicates an intent to seek money damages from Chairman Shotton. Order at 13 ("[T]he Commissioner intends to . . . impose a CIVIL PENALTY upon Shotton . . . .") (capitalization in original). Even assuming, *arguendo*, that an *Ex parte Young* action were available against Chairman Shotton, such an action would only be available for prospective injunctive relief, not money damages. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (noting that a claim for "equitable restitution" against a state official was barred by the Eleventh Amendment because "it is in practical effect indistinguishable in many aspects from an award of damages against the State").

9

(c) even if the activity took place on Indian land, Connecticut has regulatory jurisdiction under *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980).

These arguments exceed the scope of the present Motion to Dismiss, which was premised on the Department's lack of personal and subject matter jurisdiction due to Respondents' sovereign immunity. That is, these arguments relate to the Department's *regulatory* jurisdiction, not its *adjudicatory* jurisdiction. Respondents reserve their right to rebut these arguments at a later stage of proceedings, if and when necessary, to the extent the Commissioner fails to apply the law and grant Respondents' Motion to Dismiss.[3]

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Department grant Respondents' Motion to Dismiss.

Dated:    November 26, 2014                    RESPECTFULLY SUBMITTED,

                                               ROSETTE, LLP

                                  By:    /s/ Saba Bazzazieh
                                         Saba Bazzazieh (*Pro Hac Vice Pending*)
                                         Rosette, LLP
                                         1100 H St., NW, Suite 400
                                         Washington, D.C. 20005
                                         (480) 240-0238
                                         sbazzazieh@rosettelaw.com

                                         DENTONS US LLP
                                         /s/ Anthony Jannotta
                                         Anthony Jannotta (CT Bar No. 411982)
                                         Dentons US LLP
                                         1301 K. Street, NW
                                         Suite 600, East Tower
                                         Washington, D.C. 20005
                                         (202) 408-5546
                                         anthony.jannotta@dentons.com

---

[3] To rule on the merits at the Motion to Dismiss stage, based solely on the fact that the Department has made merits arguments in their Objection, would be a clear violation of Respondents' procedural due process rights. *See generally Mathews v. Eldgridge*, 424 U.S. 319, 335 (1976); *State v. Sunrise Herbal Remedies, Inc.*, 2 A.2d 843, 855 n.15 (Conn. 2010).

## CERTIFICATE OF SERVICE

I, Leigh Wink, certify and declare as follows:

I am over the age of 18 years and not a party to this action.

My business address is 565 W. Chandler Boulevard, Suite 212, Chandler, Arizona 85225, which is located in the city, county and state where the mailing described below took place.

On November 26, 2014, I caused to be deposited in the United States Mail at Chandler, Arizona, postage pre-paid, copies of the above-entitled document to the following individuals:

Mr. Howard F. Pitkin
Banking Commissioner
Department of Banking
260 Constitution Plaza
Hartford, CT 06103-1800

Carmine Costa, Director
Consumer Credit Division
Department of Banking
260 Constitution Plaza
Hartford, CT 06103-1800

Stacey L. Serrano
Prosecuting Attorney
Connecticut Department of Banking
260 Constitution Plaza
Hartford, CT 06103-1800

I certify under penalty of perjury that the foregoing is true and correct.

/s/ Leigh Wink
Leigh Wink

- 11 -