UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| John R. Shotton, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-241-L |
| | ) | |
| Howard F. Pitkin, in his individual and | ) | |
| Official capacity as the former | ) | |
| Commissioner of the Department of Banking; | ) | |
| And Bruce Adams, in his individual and official | ) | |
| Capacity as Acting Commissioner of the | ) | |
| Department of Banking. | ) | |
| | ) | |
| Defendant(s) | ) | |

# REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF DEFENDANTS PITKIN AND ADAMS

## I. *YOUNGER* ABSTENTION IS NECESSARY AND APPROPRIATE

Plaintiff attempts to avoid *Younger* abstention with myriad quotes reflecting the general rule that federal courts must exercise jurisdiction where it exists, without pointing out that "[i]n *Younger*, [the Supreme Court] recognized a 'far from novel' exception to this general rule," *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013), and that where *Younger* and its progeny apply "federal-court abstention is required." *Id*. at 588. *Younger* abstention applies here and this Court must abstain.

Plaintiff offers several arguments against *Younger* abstention. All of them lack merit. Plaintiff's first argument is that *Younger* abstention should not apply because this is a § 1983 action for damages, while the Connecticut action is an administrative appeal. *Pl's Resp.*, pp.3-4. Plaintiff cites no authority that supports his argument and makes no

1

effort to distinguish the contrary Tenth Circuit authority Defendants cited. Plaintiff's lack of authority is not surprising. The Tenth Circuit has long recognized that *Younger* applies to § 1983 claims for damages brought while a state appeal is pending, even where damages are not sought in the state action. *See, e.g.*, *Parkhurst v. State of Wyo.*, 641 F.2d 775, 777 (10th Cir. 1981).[1]

Plaintiff's second argument against *Younger* abstention is that the Connecticut Action is not a state civil enforcement proceeding. Plaintiff apparently concedes that the Connecticut Department of Banking's proceeding bore all of the hallmarks of such a proceeding; following an investigation, the Department brought the administrative action by formal complaint to sanction Plaintiff, and the entities Plaintiff serves as an officer, for their violations of Connecticut's law limiting the interest that may be charged. *Jacobs*, 134 S. Ct. at 592. But Plaintiff argues that even though the administrative action bore all the hallmarks of an enforcement proceeding, it is not one because the Department concluded that additional court proceedings were necessary to enforce the Department's Order. *Pl's Resp.*, pp.5. Plaintiff's argument lacks any merit. The Tenth Circuit has made clear that the analysis of whether a proceeding is a civil enforcement proceeding under *Younger* focuses on "the dichotomy between remedial and coercive proceedings," rather

---

[1] If this Court concludes that *Younger* abstention applies, it should dismiss Plaintiff's non-monetary claims and stay Plaintiff's monetary claims until after the Connecticut Action is resolved (unless the Court concludes that Plaintiff's monetary claims are subject to dismissal for some, or all, of the other reasons Defendants have raised). *See, e.g.*, *Johnson v. Dash*, 2014 WL 4821551, at *15-16 (D. Colo. Sept. 29, 2014).

than a talismanic focus on the steps needed to execute enforcement. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 n.5 (10th Cir. 2009). Plaintiff apparently does not dispute that the administrative proceeding was coercive.

Plaintiff's third argument against *Younger* abstention is that even though there is an action pending in Connecticut state court in which Plaintiff raises the very challenges to the administrative proceedings he raises here, there is no "ongoing" state proceeding for *Younger* purposes. *Pl's Resp.* at 5-8. Plaintiff is correct that in *Jacobs* the Supreme Court "assume[d] without deciding" that a state administrative proceeding remains "ongoing" for *Younger* purposes when the administrative decision is under state judicial review. *Id.* at 6.

But that does not help Plaintiff because whether *Younger* applies under these circumstances is not an "open question[2]" in the Tenth Circuit. *Pl's Resp.*, at 6. In *Weitzel v. Div. of Occupational & Prof'l Licensing*, 240 F.3d 871 (10th Cir. 2001), the Tenth Circuit faced a situation akin to this one where the federal plaintiff had brought a state court appeal of an agency decision. The Court unanimously held both that "[c]learly the pending state proceeding is an ongoing state action" and that "[i]t is also beyond dispute that the Utah state judiciary provides an adequate forum for [plaintiff] to assert his

---

[2] Plaintiff relies on *Brown ex rel. Brown v. Day*, 555 F.3d 882, 886 n.3 (10th Cir. 2009), for the proposition that the question is open but there—unlike here and in *Weitzel*—the plaintiff had not invoked the available mechanism for state judicial review before bringing a federal suit so no state action was pending. Plaintiff also neglects to mention Judge Tymkovich's detailed and forceful dissent in *Day* arguing that the availability of state judicial review warranted *Younger* abstention, even where it was not invoked and judicial review would have been *de novo*. *Id.* at 898-903 (Tymkovich, J., dissenting).

constitutional claims." *Id.* at 876. The same principles apply here; Plaintiff has a pending appeal before the Connecticut Court in which he has raised his constitutional claims and the Connecticut judiciary provides an adequate forum for Plaintiff to have those claims heard. *See, e.g.*, *Columbian Fin. Corp. v. Stork*, 2014 WL 6472862, at *4-5 (D. Kan. Nov. 18, 2014) (appeal pending) (holding *Younger* abstention appropriate where plaintiffs had sought state judicial review of administrative orders and petition for review by the Kansas Supreme Court was pending); *Russom v. Jimerson*, 2009 WL 2045333, at *3 (D. Colo. July 8, 2009) (holding that *Younger* barred federal due process action where there was a pending state court action seeking review of administrative decision); *Lagueux v. Leonardi*, 2013 WL 2405201, at *3 (D. Conn. May 31, 2013) (holding that there was "clearly an ongoing, state proceeding" where there was a pending Conn. Gen. Stat. § 4-183 appeal).

Plaintiff's above arguments challenge the premise that the state action at issue falls within *Jacobs'*s civil enforcement proceeding category. Those arguments lack merit, and this Court should reject them. But even if state proceedings at issue did not fall within *Jacobs*'s civil enforcement category, they plainly involve state court orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Jacobs*, 134 S. Ct. at 588 (quotation marks omitted). That independently requires abstention here.

There is no question either that "requirement[s] for bond pending appeal" generally fall within that category, or that the Connecticut Court required a bond pending appeal. *Id.* at 592 (citation omitted). At the same time Plaintiff filed his Connecticut

4

administrative appeal, he filed an application to enjoin enforcement of the Department's Order. (Doc. No. 12-1, p. 3, ent. 101.00). Plaintiff's counsel in the Connecticut Action agreed to post an escrow or bond in connection with that Application (Doc. No. 12-3, p. 4, ls. 19-22[3]) and—in light of that agreement—the Connecticut Court granted Plaintiff's Application to enjoin collection of the monetary aspects of the Department's Order. (Doc. No. 12-4). Over a month later, Plaintiff refused to post the bond, despite the open court statement by his counsel that doing so would be acceptable.

During the month while that stay was in place and before Plaintiff had refused to post the bond that the Connecticut Court relied on in granting the stay, Plaintiff filed this action. Now, in response to Defendants' Motion to Dismiss, Plaintiff argues *inter alia* that the existing Connecticut Action is not an enforcement proceeding and that Plaintiff can avoid *Younger* abstention because at the time Plaintiff filed this action the Department— in light of the stay—had not filed "a separate [enforcement] action in Connecticut state courts." *Pl's Resp.*, p.5.[4] That is precisely the type of interference with the state court's "ability to perform its judicial function" that *Younger* abstention is intended to avoid.

---

[3] Plaintiff claims that considering the state court transcript in connection with this Motion to Dismiss would require conversion to summary judgment. *Pl's Resp.*, p.23 n.11. Plaintiff is incorrect. *See, e.g.*, *Tatten v. Bank of Am. Corp.*, 2013 WL 4494305, at *3 n.3 (D. Colo. Aug. 21, 2013), *aff'd*, 562 F. App'x 718 (10th Cir. 2014) (taking judicial notice of state court transcript in granting motion to dismiss).

[4] Plaintiff's agreement to post a bond to obtain a stay may have been an (again misguided) attempt to completely avoid *Younger* in the event that the Connecticut Court granted Defendants' Motion to Dismiss the Connecticut Action, leaving no Connecticut action pending. But the Connecticut Court denied Defendants' Motion to Dismiss the Connecticut Action on April 21, 2015, and has set a schedule for briefing on the merits.

*Jacobs*, 134 S. Ct. at 592. This Court should not condone Plaintiff's attempt to represent to the state court that he is willing to post bond to obtain a stay in an apparent (misguided) attempt to obtain a federal tactical benefit, only to turn around and refuse to comply with his obligations under the agreement[5] once he has taken the opportunity to file his federal suit without a state enforcement proceeding in place.[6]

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff and the entities he serves as an officer issued loans to Connecticut residents that flagrantly violated Connecticut law. All of the actions Defendants are alleged to have taken in this case were in response to Plaintiff's apparently unlawful actions directed at Connecticut residents and were taken in furtherance of Defendants' responsibilities as the government officials charged with enforcing Connecticut law to protect Connecticut residents. Defendants' actions did not expose them to personal jurisdiction in Oklahoma, in either their official or individual capacities.

The Tenth Circuit's decision in *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006), as well as the Fifth Circuit's decisions in *Stroman Realty, Inc. v. Wercinski*,

---

[5] Plaintiff has since retained new additional counsel in his Connecticut Action, who has *inter alia* withdrawn Plaintiff's injunction Application in an effort to moot out the Connecticut Court's bond Order and argued that despite his statements on the record Plaintiff's original arguing counsel did not intend to agree to post a bond or escrow. The Connecticut Court has ordered briefing on those issues, which both concern statements made to, and proceedings before, that Court and are governed by Connecticut law.

[6] To the extent this case falls within the ambit of *Younger* abstention, Plaintiff makes no argument that it falls within any of the narrow exceptions to that doctrine. *See Defs' Br.*, pp. 7-9 (discussing exceptions).

513 F.3d 476 (5th Cir. 2008), and *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386-87 (5th Cir. 2008), speak to the issue of personal jurisdiction over government officials from other states engaged in their official duties and are discussed extensively in Defendants' earlier briefing. *Defs' Br.*, pp. 12-14. They are dispositive.

Plaintiff argues that none of the cases Defendants cite "deal with the exact situation here," but Defendants' cases are much closer to this one than any of the cases Plaintiff cites. *Pl's Resp.*, p.5. Plaintiff primarily relies on *Calder v. Jones*, 465 U.S. 783 (1984), and *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), which relied extensively on *Calder*. Both involved non-governmental defendants engaged in commercial activity.

Plaintiff ignores the authority establishing that *Calder* applies differently to governmental defendants who are not engaged in commercial activity directed into the forum state. In *Trujillo*, the Tenth Circuit dealt with *Calder*'s applicability to government defendants and held that the forum court lacked personal jurisdiction over out-of-state defendants. *Trujillo*, 465 F.3d at 1217-22. Similarly, in *Wercinski*, the Fifth Circuit carefully analyzed *Calder*'s applicability to government defendants and held that it would violate due process to force an Arizona regulator to defend a suit in Texas that was based on the regulator's efforts to enforce Arizona law to protect Arizona residents, even though the effects of the regulator's conduct were felt in Texas. *Wercinski*, 513 F.3d at 483-89. That analysis applies with equal, if not greater, force here.

Plaintiff fails to even cite—let alone attempt to distinguish—the Tenth Circuit's

decision in *Trujillo*. Plaintiff also makes no meaningful attempt to distinguish *Wercinski* or the other government defendant authority Defendants cited in their brief. That is because Plaintiff cannot distinguish that authority. Due process does not allow state regulators to be hauled into distant forums to defend themselves from suits based on contacts resulting from actions they took in furtherance of their duty to enforce the law and protect individuals in their home states.

Plaintiff cannot establish that Defendants have minimum contacts with Oklahoma, so this Court need not proceed to the reasonableness analysis. *See, e.g.*, *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999). In any event, that analysis makes clear that it would be unreasonable to force Defendants to defend this suit in Oklahoma. The *Wercinski* Court analyzed the issue in detail in an analogous context, and Plaintiff makes no effort to rebut that analysis. *Wercinski*, 513 F.3d at 487-89.

Indeed, the reasonableness factors weigh even more heavily against Plaintiff here. Plaintiff's claims of burden, convenience and efficiency ring hollow. Plaintiff is already voluntarily litigating the underlying issues in Connecticut. The Connecticut Court has entered a briefing schedule that will allow Plaintiff to reach the merits, and it is difficult to see how Plaintiff's claimed burden will be reduced by parallel litigation on this front.

Plaintiff's claim of reasonableness relies heavily on Oklahoma's tribal history and Oklahoma's claimed interest in "seeing that other States do not bully tribal members." *Pl's Resp.*, pp.13-15. Leaving aside Plaintiff's rhetoric and whether Plaintiff or the Connecticut residents that enter into Plaintiff's unlawful loans at rates from 199.44% to

398.20% are the victims, Plaintiff's claim to be acting on behalf of the Otoe-Missouria Tribe of Indians, Oklahoma ("the Tribe") begs the very question at issue in both the Connecticut Action and this case. Much as Plaintiff seeks to paint it otherwise, this is not a case that necessarily involves the Tribe. The Tribe was not a respondent in the Connecticut administrative action, is not involved in the Connecticut Court Action and is not a party here. This is explicitly an action by Plaintiff as "an individual." (Doc. No. 1, caption). Plaintiff claims that his underlying actions were on behalf of the Tribe, but that is an issue to be litigated.

Moreover, even assuming *arguendo* that it was clear that this case implicates tribal interests (which it is not), Plaintiff cites no authority for his argument that this Court can exercise personal jurisdiction based on Plaintiff's apparent belief that Connecticut Courts cannot be trusted to protect tribal interests. Plaintiff's argument lacks legal merit and has no factual basis. Legally, a "foundational principle of our federal system" is that "State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). Reflecting that principle, the Supreme "Court has refused to sanction any decision that would reflec[t] negatively upon [a] state court's ability to" safeguard federal constitutional and statutory rights. *Id*. (quotation marks omitted). Factually, Connecticut has federal tribes of its own and Connecticut courts have acted many times to protect tribal sovereign immunity where it is implicated, including in instances where the Oklahoma courts had held tribal sovereign immunity inapplicable. *See, e.g.*, *Beecher v. Mohegan Tribe of Indians of Connecticut*, 282 Conn. 130, 131 (2007) (dismissing

action against tribe on sovereign immunity grounds); *Durante v. Mohegan Tribal Gaming Auth.*, 2012 WL 1292655, at *4 (Conn. Super. Ct. Mar. 30, 2012) (ruling in favor of tribal entity and rejecting argument based on *Bittle v. Bahe*, 192 P.3d 810 (Okla. 2008), in which the Oklahoma Supreme Court held that tribal sovereign immunity did not bar dram shop actions, and citing other Connecticut cases also rejecting the *Bittle* argument); *see also Absentee Shawnee Tribe of Oklahoma v. Combs*, 2009 WL 1752412, at *3 (W.D. Okla. June 18, 2009) (Friot, J.) (agreeing with *Bittle v. Bahe*).

### III. PLAINTIFF'S DUE PROCESS CLAIM IS NOT RIPE

Plaintiff's attempt to argue that his procedural due process claim is ripe even though Plaintiff is presently engaged in obtaining process in the Connecticut Court requires little discussion. Plaintiff relies heavily on *Williamson County Reg. Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) ("*Williamson*"), and lower courts applying that decision. *Pl's Resp.*, pp. 18-20. But *Williamson* actually harms Plaintiff's argument. The Court held that the takings claim at issue was not ripe and based its decision, in part, on the plaintiff's failure to "seek compensation through the procedures the State has provided for doing so." *Williamson*, 473 U.S. at 194. That failure rendered the claim unripe because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation" and such a taking would not exist unless and until the state failed to provide just compensation. *Id*.

That is a direct analogue to Plaintiff's procedural due process claim; the *Williamson* Court recognized as much. *Id*. at 194-200. Unless and until Connecticut's

review procedures—including the pending appeal seeking judicial review—are complete, any due process claim Plaintiff may make is not ripe. Put differently, where—as here—a state brings a coercive administrative enforcement proceeding[7] subject to judicial review, the decision is not final for purposes of a due process claim unless and until judicial review is either abandoned or completed. Only then can the court assess whether the state failed to provide due process and whether any failure resulted in harm.

## IV. DEFENDANTS HAVE ABSOLUTE IMMUNITY

The Tenth Circuit has made clear that absolute immunity protects both administrative prosecutors and administrative adjudicators from individual capacity claims for money damages. *Defs' Br.*, pp. 17-18. Plaintiff apparently acknowledges as much, but claims—without explanation—that "Defendants performed no such role." *Pl's Resp.*, p. 22. That is puzzling. Plaintiff's claims against Defendant Pitkin are based on his

---

[7] In both his *Younger* abstention argument and his ripeness argument, Plaintiff relies heavily on the general principle that exhaustion is not required before bringing a § 1983 action, recognized in *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982). *See Pl's Resp.*, pp.2, 7-8, 17-19. But the *Patsy* exhaustion principle does not apply to coercive state proceedings such as this one. *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986) (distinguishing *Patsy* because "[u]nlike Patsy, the administrative proceedings here are coercive rather than remedial"); *Brown ex rel. Brown*, 555 F.3d at 890-92 (holding that "[a] state's enforcement of its laws or regulations in an administrative proceeding constitutes a coercive action, exempt from *Patsy* and entitled to *Younger* deference," and relying on *O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994)); *O'Neill*, 32 F.3d at 791 (holding *Younger* applicable "where a coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action").

11

actions in connection with the initiation of the Connecticut administrative proceedings and issuance of rulings and Orders as a presiding Officer. (Doc. No. 1, ¶¶ 6, 25-26, 30, 36). Those are typical actions of an administrative prosecutor and adjudicator. Similarly, Plaintiff's claims against Defendant Adams involve his failure to reverse Defendant Pitkin's prior actions. *Id.* at ¶¶ 7, 40-42. Those too are protected by absolute immunity. *See, e.g.*, *Horwitz v. State Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508, 1515 (10th Cir. 1987) (holding that "under the *Butz* court rationale, the defendant Board members, who performed statutory functions both adjudicatory and prosecutorial in nature, are entitled to absolute immunity from damages liability under 42 U.S.C. § 1983").

Plaintiff also claims that Defendants acted "in the complete absence of all jurisdiction" and "with a complete and clear absence of authority" and therefore are not protected by absolute immunity. *Pl's Resp.*, p. 22. Plaintiff cites no authority holding that an official was stripped of immunity in an analogous circumstance. Indeed, the only case Plaintiff cites held that the defendant *had* absolute immunity. *Id.* Again, Plaintiff's lack of authority to support his argument is not surprising. Much as Plaintiff may wish that simply saying Connecticut lacks jurisdiction to enforce its laws to Plaintiff's loans to Connecticut citizens made it so, that is not the case. Plaintiff does not dispute that Defendants generally have the authority to enforce Connecticut's banking laws, and Defendants acted in an attempt to exercise that authority. Even if a court ultimately determines that Defendants exercised that authority incorrectly, they would still be

entitled to absolute immunity from claims for damages. *See, e.g.*, *Whitesel v. Sengenberger*, 222 F.3d 861, 868-69 (10th Cir. 2000) (holding that pretrial service officers were protected by absolute immunity even though court held they followed improper procedure).

## V. PLAINTIFF'S DUE PROCESS CLAIM LACKS MERIT

Plaintiff's attempt to salvage the merits of his procedural due process claim requires little discussion. Plaintiff apparently acknowledges that he received notice of the Department's temporary order and the instructions that made clear that if he wanted a hearing all he needed to do was timely request one. Plaintiff also apparently acknowledges that he made no timely request, and also failed to take advantage of his option to seek immediate court review of the temporary order or to seek reconsideration of the Order by the Department. As Defendants discussed in their Brief, that notice and those opportunities to be heard amply satisfied due process. But Plaintiff received much more—he is presently raising his arguments before the Connecticut Court.[8]

The procedures Connecticut law offered Plaintiff amply satisfied due process, and Plaintiff makes no meaningful argument to the contrary. Plaintiff chose not to invoke

---

[8] Plaintiff argues that "Tenth Circuit precedent does not favor Defendants' technical approach and rejects their position that non-compliance with the strict letter of state regulations automatically precludes a procedural due process claim," but cites no precedent that actually supports his argument and makes no meaningful attempt to distinguish the precedent that rejects it. *Pl's Resp.*, p. 22-23. It is true that a state's failure to comply with a state law or regulation does not necessarily give rise to a due process claim, but it does not follow that Plaintiff can refuse to comply with available state procedures and then successfully sue the state for not giving him process. *See, e.g.*, *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004).

many of those available procedures but "[a] party cannot create a due process claim by ignoring established procedures. The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure." *Santana*, 359 F.3d at 1244 (quotation marks omitted).

Plaintiff apparently now seeks to excuse his failure to request an administrative hearing or invoke available state court remedies by claiming he somehow feared it would waive his claimed tribal sovereign immunity or the Tribe's actual sovereign immunity. Plaintiff does not explain how that would be, or why—if that is true—Plaintiff believes he did not waive his claimed sovereign immunity and that of the Tribe by bringing the Connecticut Action.

Plaintiff also claims that the imposition of individual capacity claims against him is "blatantly illegal" but conveniently neglects to mention here, or anywhere else in his Response, the Supreme Court's recent decision "analogizing to *Ex Parte Young*" and holding that "tribal immunity does not bar . . . a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2035 (2014) (emphasis in the original). Nor does Plaintiff mention the precedent from both the Tenth Circuit and this Court holding that "claims for money damages from [tribal] individual defendants, sued in their individual capacities, are not barred, so long as it is clear plaintiffs seek money damages from the individual defendants personally and not from the Tribe." *Nahno-Lopez v.*

14

*Houser*, 627 F. Supp. 2d 1269, 1285 (W.D. Okla. 2009) (Friot, J.), *aff'd on other grounds*, 625 F.3d 1279 (10th Cir. 2010) (relying on *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297 (10th Cir. 2008)). Ultimately, Plaintiff's due process claim utterly lacks merit.

## VI. VENUE IS NOT PROPER IN OKLAHOMA

Plaintiff apparently claims that the 1990 amendment to the venue statue undermined *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979), by making clear that venue could arise in more than one district. Plaintiff is incorrect. The Court expressly declined to "decid[e] whether" the statute's then-existing "language adopts the occasionally fictive assumption that a claim may arise in only one district" but went on to hold that Idaho—the locus of the enforcing state—was "obvious[ly]" the only proper venue in that case in part because to conclude otherwise "would subject the Idaho officials to suit in almost every district in the country." *Id.* at 185-86. The Court's logic still applies with equal force to this case, notwithstanding the statutory change.

## VII. CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Opening Brief,[9] Defendants respectfully request that this Court grant Defendants' Motion to Dismiss and dismiss this action in its entirety.

---

[9] Defendants do not believe that Plaintiff's responses to Defendants' arguments as to the Eleventh Amendment and the invalidity of Plaintiff's putative § 1983 claim for violation of tribal officer immunity—or any other arguments not addressed in this Reply—require additional briefing beyond that Defendants have already provided. Therefore, Defendants respectfully rely on their existing briefing as to those issues.

Respectfully submitted,

s/ Amy J. Pierce
JOE M. HAMPTON, OBA No. 11851
AMY J. PIERCE, OBA No. 17980
**Corbyn Hampton, PLLC**
One Leadership Square, Suite 1910
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 239-7055
Facsimile: (405) 702-4348
jhampton@corbynhampton.com
apierce@corbynhampton.com

s/ Robert J. Deichert
Robert J. Deichert (ctdc24956)
Assistant Attorney General
Connecticut Attorney General's Office
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
860-808-5020 (phone)
860-808-5347 (fax)
Robert.Deichert@ct.gov
(*pro hac vice* granted)

**ATTORNEYS FOR CLAIMANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2015, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Amy J. Pierce
Amy J. Pierce
