## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JOHN R. SHOTTON,                         )
                                         )
                    Plaintiff,           )
vs.                                      )          NO. CIV-15-0241-HE
                                         )
HOWARD F. PITKIN, former                 )
Commissioner of the Department of        )
Banking, and BRUCE ADAMS, current        )
Commissioner of the Department of        )
Banking,                                 )
                                         )
                    Defendants.          )

## ORDER

In this case, plaintiff John R. Shotton asserts claims pursuant to 42 U.S.C. § 1983 against current and former officials of the Department of Banking of the State of Connecticut (the "Department"). According to the complaint, Mr. Shotton is the Chairman of the Tribal Council of the Otoe-Missouria Tribe of Indians ("the Tribe"), a federally recognized Indian tribe headquartered in this district. He is also the Secretary and Treasurer of Great Plains Lending, LLC ("Great Plains"), and Clear Creek Lending, d/b/a American Web Loan, Inc. ("Clear Creek"), which are "wholly owned and operated by, and formed and regulated under the laws of, the Otoe-Missouria Tribe." Complaint [Doc. #1] at ¶ 5. The defendant officials of the Department are sued in both their individual and official capacities.

The complaint discusses at length plaintiff's view of the application of principles of tribal sovereignty, but is limited in its description of the companies' business activities either generally or in the State of Connecticut. However, the parties' submissions indicate the primary business activity of these companies is lending small sums to consumers over the

internet.  Some of these loans were made to consumers in Connecticut and, in the view of the Department, were at interest rates substantially in excess of those permitted by the usury laws of Connecticut.  According to the complaint, the Department advised Great Plains by letter that it appeared to be violating Connecticut law as to a particular consumer loan.  After some contact between Great Plains' counsel and the Department, the Department later (on October 24, 2014), through defendant Pitkin (the then Commissioner), issued a temporary cease-and-desist order directing plaintiff and the companies to cease violating Connecticut law and to stop any efforts to collect any illegal loans already made to Connecticut residents.  It further directed them to provide a list of Connecticut residents who had applied for, or who had been granted, loans carrying an interest rate of over 12%, and to make restitution of the excess interest to the (by then) three Connecticut residents identified in the order.  The temporary order gave notice of the Commissioner's intention to issue a permanent cease-and-desist order and to impose monetary penalties unless otherwise ordered after a hearing.  The order advised plaintiff and the companies of their right to a hearing and set out the procedure for requesting a hearing.

It appears the companies and plaintiff did not request a hearing as contemplated by the temporary order, but instead responded by moving to dismiss the enforcement proceeding based on principles of sovereign immunity.  Ultimately, the Commissioner denied the motion to dismiss and entered an order making permanent the cease-and-desist directive and imposing the civil penalties.  This suit followed.

Here, plaintiff asserts claims against defendant Pitkin, the Commissioner who issued

2

the various orders but who has since retired.  He also asserts claims against defendant Adams, who is alleged to be the current acting Commissioner and who was the Presiding Officer in "certain" cases.  Adams is also alleged to have been personally involved in this matter.  The complaint asserts claims alleging that defendants violated his Due Process rights and his entitlement to tribal sovereign immunity.  Defendants have moved to dismiss on numerous grounds, including lack of personal jurisdiction.  Because the court concludes that personal jurisdiction is lacking, it is unnecessary to address the other potential grounds for dismissal.

The burden of establishing personal jurisdiction is on the plaintiff.  Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008).  Where, as here, a motion to dismiss is resolved based on the complaint and affidavits or other written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction.  *Id.* at 1070.

In determining whether a federal court has jurisdiction over a defendant, the court must determine whether an applicable statute confers jurisdiction by authorizing service of process on the defendant and, if so, whether the exercise of jurisdiction is consistent with principles of due process.  Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1209 (10th Cir. 2000).  As 42 U.S.C. § 1983, which is the basis of this suit, does not include any provision authorizing nationwide service of process or otherwise conferring jurisdiction on this court, a federal court looks to the long-arm statute of the state in which its sits for the necessary statutory authorization.  Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006).  Oklahoma's long-arm statute authorizes a court to exercise jurisdiction to the fullest

extent consistent with the U.S. Constitution, so the inquiry becomes a question of whether the exercise of jurisdiction over the defendants here is consistent with principles of due process. Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013) (citing 12 Okla. Stat. § 2004(F)).

In order to satisfy due process requirements, defendants must have sufficient "minimum contacts" with the forum state such that litigating there does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Those contacts may give rise to either general jurisdiction, sufficient to support a claim against the non-resident defendant for any lawsuit, or specific jurisdiction, sufficient to support a lawsuit arising out of the particular forum-state activities. Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1065–66 (10th Cir. 2007)

There is no suggestion here that a basis for general jurisdiction exists at to these defendants. Rather, plaintiff argues that specific jurisdiction is present. For specific jurisdiction to exist (1) defendants must have "purposefully directed" their activities at Oklahoma, (2) plaintiff's claims must "arise out of" defendants' forum-related activities, and (3) exercising personal jurisdiction must not "offend traditional notions of fair play and substantial justice." Id. Those standards of fair play and substantial justice are met if the court's exercise of jurisdiction over the defendant is "reasonable in light of the circumstances surrounding the case." AST Sports Sci. Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1061 (10th Cir. 2008).

In determining whether the defendants purposefully directed their activities toward

4

Oklahoma, the court must consider both the quantity and quality of those contacts. <u>OMI Holdings Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1092 (10th Cir. 1998). So far as plaintiff's submissions indicate, the totality of defendants' contacts with the State of Oklahoma involve sending the initial allegation letter to Great Plains and the subsequent cease-and-desist orders to plaintiffs at their headquarters in Oklahoma. Plaintiff says these are sufficient under <u>Calder v. Jones</u>, 465 U.S. 783 (1984), arguing that they satisfy the "effects" test identified there.[1] Under <u>Calder</u>, purposeful direction is shown where the defendant (1) commits an intentional action, (2) that is "expressly aimed at the forum state" and (3) is taken "with the knowledge that the brunt of the injury would be felt in the forum state." <u>Dudnikov</u>, 514 F.3d at 1072. Plaintiff's submissions arguably make out a *prima facie* showing as to elements 1 and 3, in that sending the letters and orders was intentional, defendants plainly knew where plaintiff and the companies resided or were headquartered, and they would presumably have known that a civil penalty imposed on an Oklahoma resident would be paid from there and presumably have its principal financial impact there.[2] However, they do not make out a *prima facie* showing that defendants' actions were

---

[1]*The "effects" test is ordinarily employed in connection with alleged torts. Here, the court assumes, without deciding, that plaintiff's theory—that he has sovereign immunity rights which were violated, that the violation gives rise to a claim against these defendants, and that the violation is in the nature of a tort—is valid.*

[2]*In light of the court's conclusion that sufficient contacts have not been shown to subject Mr. Pitkin to jurisdiction here, it is unnecessary to separately consider whether jurisdiction exists as to Mr. Adams, who had even fewer arguable contacts with Oklahoma—apparently limited to knowing about what Mr. Pitkin, who was the Commissioner at the time of the various departmental actions, was doing.*

5

"expressly aimed at the forum state."  As the description of the underlying circumstances makes clear, defendants' actions were plainly not aimed at the State of Oklahoma.  Rather, they were directed to plaintiff's (and the companies') actions in the State of Connecticut and their alleged violations of Connecticut law.  That the alleged violators lived in, or were based in, Oklahoma was incidental.  The "focal point" of defendants' efforts was Connecticut, not Oklahoma.  *See* Dudnikov, 514 F.3d at 1074 n.9 (noting that "[s]ome courts have held that the 'expressly aimed' portion of Calder is satisfied when the defendant 'individually targets a known forum resident,'" but that "[w]e have taken a somewhat more restrictive approach, holding that the forum state itself must be the 'focal point' of the tort"); *see also,* Newsome v. Gallacher, 722 F.3d at 1268 ("The express aiming element requires Oklahoma to have been the 'focal point' of the tort.").  The defendants' efforts were directed to stopping the alleged violations in Connecticut, involving the companies' dealings with Connecticut residents, rather than to any other activity that might have been originating from their operations in Oklahoma generally.  In these circumstances, the court concludes plaintiffs have not shown the necessary "purposeful direction" of activities by the defendants to Oklahoma.

This conclusion is consistent with the decisions of other federal courts addressing substantially similar circumstances.  In Stroman Realty Inc. v. Wercinski, 513 F.3d 476 (5th Cir. 2008), the Fifth Circuit concluded that the Arizona Department of Real Estate did not expressly aim at the forum in Texas by sole virtue of sending two cease-and-desist orders to a Texas-based business which sold timeshares to Arizona consumers, because the

defendant's intent was merely to uphold and enforce the laws of Arizona.  Similarly, in

United States v. Ferrara, 54 F.3d 825 (D.C. Cir. 1995), the court concluded the chief counsel

of the disciplinary board of the New Mexico Supreme Court could not properly be sued in

the District of Columbia for disciplinary action she took against an attorney licensed by the

board, even though the attorney's alleged misconduct had occurred in the District, because

the chief counsel was merely seeking to enforce New Mexico's ethical standards.  It appears

a majority of courts have reached substantially the same conclusion for circumstances where,

as here, the contacts urged as the sole basis for jurisdiction were "cease-and-desist" letters

or notices issued by regulators or others.  See Tuteur v. Crosley-Corcoran, 961 F. Supp. 2d

333, 338–39 (D. Mass. 2013) (collecting cases); Wise v. Lindamood, 89 F.Supp.2d 1187,

1191–92 (D.Colo.1999) (same).

In any event, the court concludes plaintiff has not made the necessary showing that

defendants' actions were "purposefully directed" at Oklahoma, within the meaning of the

applicable authorities.

In light of that conclusion, it is unnecessary to resolve the additional and substantial

questions presented as to whether plaintiff has met the requirement to show his claims have

arisen out of defendants' forum-related activities, or whether subjecting a state regulator to

suit here in these circumstances would "offend traditional notions of fair play and substantial

justice."   Given the nature and "direction" of defendants' actions, their contacts with

Oklahoma were not such that they "should reasonably anticipate being haled into court

there,"  World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).

7

Defendants' motion to dismiss [Doc. #12] is **GRANTED.**  This case is **DISMISSED** without prejudice.[3]

   **IT IS SO ORDERED**.

   Dated this 28th day of August, 2015.

_____

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[3]*The court concludes there is no reason to transfer, rather than dismiss, the case in these circumstances.  See* Trujillo*, 465 F.3d at 1222–23.  Neither party has requested that relief and, as another proceeding is apparently under way in state court directed to the same issues, as set out in the parties' discussion of* Younger *abstention, there appears to be no compelling reason to transfer this case.*

8